# United States Court of Appeals

*for the*

# Third Circuit

Case No. 24-2565

MARTIN J. WALSH, Secretary of Labor,
United States Department of Labor,

*Petitioner,*

— v. —

WICARE HOME CARE AGENCY, LLC; LUIS D. HERNANDEZ,

*Appellants.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA IN NO. 1-22-CV-00224,
HONORABLE YVETTE KANE, U.S. DISTRICT JUDGE

## BRIEF AND APPENDIX FOR APPELLANTS
### Volume I of IV (Pages Appx1 to Appx53)

GRACE MILLER, ESQ.
JOHN M. NOLAN III, ESQ.
MARGOLIS EDELSTEIN
*Attorney for Defendants-Appellants*
The Curtis Center
170 South Independence Mall West,
  Suite 400E
Philadelphia, Pennsylvania 19106
(215) 922-1100

CP COUNSEL PRESS    (800) 4-APPEAL • (332951)

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and
### Statement of Financial Interest

No. 24-2565
_____

Martin Walsh

v.

Wicare Home Care Agency, LLC
&
Luis D. Hernandez

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

**Wicare Home Care Agency, LLC**
(Name of Party)

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:
None.

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:
None.

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.
N/A

_(Signature of Counsel or Party)_

Dated: 9/20/24

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

SUBJECT MATTER AND APPELLATE JURISDICTION ................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................ 2

STATEMENT OF THE ISSUES ................................................................. 3

STATEMENT OF THE CASE .................................................................. 5

    I.     INTRODUCTION ................................................................ 5

    II.    STATEMENT OF FACTS ................................................... 6

    III.   PROCEDURAL HISTORY ................................................. 8

SUMMARY OF ARGUMENT ................................................................. 9

STANDARD OF REVIEW ...................................................................... 10

ARGUMENT ........................................................................................ 11

    I.     The Third-Party Regulation Fails both *Chevron* Step One and the *Loper Bright* Analysis ................................................ 11

         A.    *Chevron* Step One ................................................ 11

             1.    Section 213 of the Act unambiguously expresses Congress's intent to include Third-Party employers under the Act's exemptions ........................... 12

         B.    *Loper Bright* ......................................................... 15

    II.    Defendants do not Engage in Interstate Commerce ............ 23

    III.   Defendants are not third party employers within the meaning of the Third Party Regulation ....................................... 27

    IV.   Liquidated damages are inappropriate ............................. 28

    V.    Acting Secretary of Labor Julie A. Su, and agents acting on her behalf and under the cloak of her authority do not have standing nor the ability to deviate from the liquidated damages procedures promulgated under former Secretary Martin J. Walsh ................................................... 30

VI.    Acting Secretary of Labor Julie A. Su, and agents acting on
her behalf and under the cloak of her authority do not have
standing nor the ability to bring any enforcement action
against Defendants ................................................................................33

CONCLUSION ...........................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
  475 U.S. 574 (1986) ........................................................10

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ...........................................................34

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................10

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
  468 U.S. 837 (1984) ................................................ *passim*

*Covington & Cincinnati Bridge Co. v. Kentucky*,
  154 U.S. 204 ..................................................................26

*Doe v. Luzerne Cnty.*,
  660 F.3d 169 .............................................................10, 11

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 ............11

*Hines v. CONRAIL*,
  926 F.2d 262 (3d Cir. 1991)............................................10

*Home Care Ass'n of Am. v. Weil*,
  76 F. Supp. 3d 138 (D.D.C. Dec. 22, 2014) .....................14

*Home Care Ass'n of Am. v. Weil*,
  799 F.3d. 1084 (D.C. Cir. 2015) .....................................14

*Katz v. DNC Servs. Corp.*,
  2018 U.S. Dist. LEXIS 17002 (E.D. Pa. Feb. 1, 2018)................................ 23, 24

*Llanes v. Zalewski*,
  412 F. Supp. 3d 1266 (D. Or. 2019) ................................25

*Long Island Care at Home, Ltd. v. Coke*,
  551 U.S. 158, 127 S. Ct. 2339 (2007) ......................... 13, 16

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024)............................................. *passim*

*Lynn v. ARC of Fayette Cnty.*,
   2018 U.S. Dist. LEXIS 155536 (W.D. Pa. Sept. 11, 2018) .............. 21, 22, 27, 28

*Marbury v. Madison*,
   5 U.S. 137 (1803) ........................................................................36

*Martin v. Cooper Elec. Supply Co.*,
   940 F.2d 896 (3d Cir. 1991) ........................................................32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ....................................................................10

*McLeod v. Threlkeld*,
   319 U.S. 491 (1943) ....................................................................25

*Mitchell v. C.W. Vollmer & Co.*,
   349 U.S. 427, 75 S. Ct. 860, 99 L. Ed. 1196 (1955) ..........................25

*Mitchell v. Lublin*,
   358 U.S. 207 (1959) ....................................................................26

*Overstreet v. North Shore Corp.*,
   318 U.S. 125 (1943) ....................................................................26

*Razak v. Uber Techs., Inc.*,
   2016 U.S. Dist. LEXIS 139668 (E.D. Pa. Oct. 7, 2016) ....................23

*Secretary United States Dep't of Labor v. American Future Systems, Inc.*,
   873 F.3d 420 (3d Cir. 2017) .................................................. 17, 29

*Skidmore v. Swift & Co.*,
   323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ......... 15, 16, 17, 22

*Thorne v. All Restoration Servs., Inc.*,
   448 F.3d 1264 (11th Cir. 2006) ....................................................24

*Wayman v. Southard*,
   23 U.S. (10 Wheat.) 1, 6 L. Ed. 253 (1825) ...................................15

**Statutes & Other Authorities:**

U.S. Const. art. II, § 2 ....................................................................34

U.S. Const. art. III ........................................................................36

5 U.S.C. § 3345 ............................................................................30

5 U.S.C. § 3345(a)(1)...................................................................35

5 U.S.C. § 3346.................................................................30, 35

5 U.S.C. § 3346(a)(2)...................................................................35

5 U.S.C. § 3346(b)...................................................................35

5 U.S.C. § 3347...................................................................30

5 U.S.C. § 3348(b)...................................................................30

5 U.S.C. § 3348(d)(1)...................................................................30

5 U.S.C. § 3349...................................................................30

5 U.S.C. § 3349a...................................................................30

5 U.S.C. § 3349b...................................................................30

5 U.S.C. § 3349c...................................................................30

28 U.S.C. § 1291...................................................................1

28 U.S.C. § 1331...................................................................1

29 U.S.C. § 201...................................................................5

29 U.S.C. § 203.................................................................24, 27

29 U.S.C. § 203(b)...................................................................25

29 U.S.C. § 203(s)(1)(A)...................................................................24

29 U.S.C. § 206...................................................................12

29 U.S.C. § 206(a)(1)(C)...................................................................8

29 U.S.C. § 207...................................................................12

29 U.S.C. § 207(a)(1).................................................................8, 23, 24

29 U.S.C. § 207(a)(15)...................................................................9

29 U.S.C. § 211(c)...................................................................8

29 U.S.C. § 213(a)...................................................................12

29 U.S.C. § 213(a)(15)...................................................................*passim*

29 U.S.C. § 259...................................................................29

29 U.S.C. § 260...................................................................29

v

29 U.S.C. § 552 ...................................................................... 33, 34, 35, 36

29 C.F.R § 552.109 ........................................................... 9, 12, 14

Fed. R. Civ. P. 56(a) ..........................................................................10

S. Rept. 105-250 – FEDERAL VACANCIES REFORM ACT OF 1998,
    S.Rept.105-250, 105th Cong. (2024) ........................................ 34, 35

## SUBJECT MATTER AND APPELLATE JURISDICTION

The underlying lawsuit was originally filed in the United States District Court for the Middle District of Pennsylvania on February 15, 2022. (Appx7, 55) The underlying lawsuit complaint alleging that Defendants violated the following Fair Labor Standards Act provisions: Section Six (6), the minimum wage provision; Section Seven (7), the overtime provision; Section Eleven (11), the recordkeeping provision; and Sections Fifteen (15)(a)(2) and (a)(5), the anti-retaliation provisions.

The District Court had original jurisdiction because the underlying lawsuit arose under the federal laws of the United States and set forth matters of federal question. 28 U.S. Code § 1331.

Plaintiff/Appellee – Julie A Su, Acting Secretary of Labor, The United States Department of Labor – is a political nominee for the head of a federal administrative agency. (Appx983). Defendant/Appellant WiCare HomeCare Agency, LLC is a Pennsylvania corporation with its principal place of business in Lebanon, Pennsylvania. (Appx97). Defendant/ Appellant Luis Hernandez is the owner and sole officer of WiCare HomeCare Agency, LLC.

This Honorable Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 - final decisions of district courts. This is an appeal from a final order or judgment that disposes of all parties' claims that was entered on July 31, 2024. (Appx1-51). The Notice of Appeal was filed on August 20, 2024. (Appx52).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

None.

# STATEMENT OF THE ISSUES

**A.** WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF AND REFUSING TO VACATE THE DEPARTMENT OF LABOR THIRD-PARTY REGULATION THAT PURPORTS TO DICTATE THAT "THIRD-PARTY EMPLOYERS" MUST PAY OVERTIME TO EMPLOYEES THAT PROVIDE COMPANIONSHIP SERVICES?

*Suggested Answer: Yes*

**B.** WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF ON THE ISSUE OF WHETHER DEFENDANTS ENGAGE IN INTERSTATE COMMERCE AS A MATTER OF FACT AND/OR OF LAW?

*Suggested Answer: Yes*

**C.** WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT DEFENDANTS ARE "THIRD PARTY" EMPLOYERS?

*Suggested Answer: Yes*

**D.** WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT DEFENDANTS OWED A PENALTY IN THE FORM OF LIQUIDATED DAMAGES?

*Suggested Answer: Yes*

**E.** WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT ACTING SECRETARY OF LABOR, JULIE A. SU, AND AGENTS ACTING ON HER BEHALF HAD STANDING OR ABILIT TO DEVIATE FROM LIQUIDATED DAMAGES PROCEDURES PROMULGATED UNDER FORMER SECRETARY WALSH?

*Suggested Answer: Yes*

**F.** WHETHER THE DISTRICT COURT ERRED IN HOLDING ACTING SECRETARY SU, AND AGENTS ACTING ON HER BEHALF AND UNDER THE CLOAK OF HER AUTHORITY, HAD STANDING OR ABILITY TO

BRING ANY ENFORCEMENT ACTION AGAINST DEFENDANTS WHEN SU WAS NOT CONFIRMED BY THE SENATE?

*Suggested Answer: Yes*

# STATEMENT OF THE CASE

## I.    INTRODUCTION

This appeal arises from a suit initially filed by Martin J. Walsh, Secretary of Labor, of the United States Department of Labor (hereinafter the "Plaintiff or "DOL") against WiCare Home Care Agency, LLC, and Luis D. Hernandez (hereinafter "WiCare" and "Hernandez" and collectively the "Defendants") alleging violations of the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, hereinafter referred to as "the FLSA". The DOL alleged that Defendants "willfully" violated the FLSA by failing to pay minimum wage, failing to pay overtime, and failing to keep accurate timekeeping records.

The DOL further applied a 3-year look back period for the unpaid overtime, seeking $529,770.09 in back wages and an equal amount of liquidated damages for the period of January 1, 2019 through May 5, 2021, along with an award of civil money penalties ("CMPs") for the same period, for a total of $1,181,136.18.

Defendants' employees perform "companionship services" and the statutory text of the FLSA exempts them from overtime. Further, Defendants did not willfully violate the FLSA, and therefore cannot be subject to liquidated damages, nor can the DOL utilize the 3-year look back period. Further, Acting Secretary Julie Su lacks the necessary authority to alter, interpret and enforce the law where it is the Congress's

publicly stated intent to never confirm her for the Secretary position. A multitude of decisions were made under Ms. Su's cloak of authority throughout this litigation, including whether to continue to prosecute it, whether to seek liquidated damages as a matter of internal DOL policy, and whether to entertain Defendants' offers of settlement. Ms. Su has no authority, nor do her agents charged with litigating against Defendants on her behalf. The District Court's grant of summary judgment for Plaintiff should be reversed.

## II. STATEMENT OF FACTS

WiCare was founded by Hernandez in 2018 following Hernandez and his family's care for his elderly father-in-law in their family home until his unfortunate passing. (Appx1047, 1048). During the time Hernandez and his family were caring for Hernandez's father-in-law, they experienced a significant language barrier with companionship companies and caregivers. (Appx1048). As a result of his family's experience as well as his experience as a Pastor in a community with a large Spanish-speaking local community Hernandez opened WiCare. Hernandez intended for WiCare to provide services to his church members and local Spanish-speaking community, offering a much-needed service that was previously unavailable to large population of local people. (Appx1048).

Since WiCare's inception, its employees have been providing home companionship services to clients exclusively within and around the locality of

Lebanon, Pennsylvania. (Appx1048, 1049). WiCare's clients primarily include elderly and infirm individuals, sometimes with mental incapacity, who require some level of supervision, companionship, and the occasional assistance with tasks of daily living. (Appx1049). WiCare's employees are not medical professionals, nurses, nor household cleaners. (Appx1049). WiCare's employees primarily provide clients with social and emotional support while promoting the client's safety and well-being, and occasionally assist clients with average household tasks. (Appx1049). However, WiCare employees are ultimately with clients to provide them with company, akin to a daily welfare check. (Appx1049).

Approximately 70-75% of WiCare's employees are direct family members of WiCare clients, with 30-40% of those employees with family relationships residing in the same household as their client. (Appx1049). Of the employees who do not reside in the same household as a WiCare client, none of those employees drive more than twenty (20) minutes to reach their client(s). (Appx1049). Further, in a good faith effort to ensure WiCare's compliance with the law, Hernandez reviewed DOL fact sheets discussing companionship exemptions and concluded based on their language that his companionship services employees were exempt from overtime. (Appx1051-1052).

## III. PROCEDURAL HISTORY

The DOL filed this action on or about February 15, 2022. Defendants waived service and filed their answer on or about April 9, 2022. (Appx55). The initial Case Management Order was filed on May 2, 2022. (Appx55-56). Parties engaged in extensive discovery until the eventual close of discovery on August 21, 2023. (Appx58). The Parties also engaged in a failed Settlement Conference on November 8, 2023. (Appx59). Following this failed Settlement Conference both parties filed Motions for Summary Judgment. Both Plaintiff and Defendants filed their Motions for Summary Judgment on or around April 15, 2024. (Appx60).

The District Court provided their decision on or about July 31, 2024. (Appx1-51). The District Court found that WiCare and its employees are covered under the FLSA; Hernandez is liable as an employer under the FLSA; Defendants violated the FLSA minimum wage provision, 29 U.S.C. §206(a)(1)(C); Defendants violated the FLSA overtime provision, 29 U.S.C. § 207(a)(1); Defendants violated the FLSA recordkeeping provision, 29 U.S.C. § 211(c); Defendants' conduct was willful; Defendants are liable for $1,059,540.18 split in half for back wages and liquidated damages respectively; and permanently enjoined Defendants from violating the FLSA. (Appx1-51). The District Court summarily denied Defendants' Motion for Summary Judgment. This timely appeal followed. (Appx52).

## SUMMARY OF ARGUMENT

The DOL's removal of Third-Party employers of employees engaged in companionship services from the companionship services exemption via 29 C.F.R § 552.109, hereinafter the "Third-Party Regulation", is unlawful and must be vacated. Not only does the Third-Party Regulation fail at the first step of the analysis under the now defunct *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 468 U.S. 837 (1984), it also fails the new under *Loper Bright Enters. V. Raimondo*, 144 S. Ct. 2244 (2024).

First, the Third-Party Regulation fails at *Chevron* Step One because Congress has spoken to the question at issue with unambiguous statutory text, as not only does 29 U.S.C. § 213(a)(15) provides that "**any employee employed in domestic service employment** to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves . . ." 29 U.S.C. § 207(a)(15), are exempt from the minimum wage and maximum hours requirements. The statutory language is clear, any employee employed to provide companionship services is exempt from the minimum wage and maximum hours requirements regardless of who their employer is, there is no room for ambiguity.

The Third-Party Regulation then fails under the new *Loper-Bright* analysis as the Third-Party Regulation as the Third-Party Regulation clearly conflicts with the plain language of the statute. Further, the DOL's interpretation of the companionship

exemption does not fill in the details in the statutory scheme as the DOL may be empowered to do at times, but rather an attempt to frustrate both the plain language of the statute, but also Congress's clear intent.

## STANDARD OF REVIEW

The Third Circuit Court of Appeals' "standard for review of the entry of summary judgment is plenary" and "appl[ies] the same standard as that employed by the district court." *Hines v. CONRAIL*, 926 F.2d 262, 267 (3d Cir. 1991).

The district court standard request that the court "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). All inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Asserted disputes of fact are "material" if their resolution could affect the outcome of the case under the applicable substantive law and are "genuine" if the evidence bearing on the disputed facts is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 475 U.S. 574, 587 (1986).

Importantly, "[t]he non-moving party cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings." *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "To defeat a motion for summary judgment, the non-

moving party must raise more than some metaphysical doubt as to the material facts,

. . . and the court must determine that a fair-minded jury could return a verdict for

the [non-moving party] on the evidence presented." *Id.* (internal citations and

quotations omitted).

Of particular and potent note in this case, Appellee requested a jury trial

during the District Court proceedings. (Appx54, 94).

## ARGUMENT

**I.    The Third-Party Regulation Fails both *Chevron* Step One and the *Loper***

**    *Bright* Analysis.**

### A.    *Chevron* Step One[1]

It is well settled that if a statute unambiguously expresses Congress's intent,

the courts must give effect to that intent. *See* e.g., *FDA v. Brown & Williamson*

*Tobacco Corp.*, 529 U.S. 120, 120 S. Ct. 1291, 1297, 146 L. Ed. 2d 121 (citing

*Chevron*, 467 U.S. 837, 842-43 (1984)). The Third-Party Regulation fails at *Chevron*

Step One because Section 213 of the Act unambiguously expresses Congress's intent

to include Third-Party employers under the Acts exemptions.

---

[1] Appellants recognize that *Chevron* was overturned by the United States Supreme
Court with their decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244
(2024), however due to this matter's history living through both decisions and the
novelty of the *Loper Bright* decision Appellants will first provide analysis under the
old *Chevron* test first.

**1.    Section 213 of the Act unambiguously expresses Congress's intent to include Third-Party employers under the Act's exemptions.**

Section 213 of the Act unambiguously expresses Congress's intent to include Third-Party employers under the Act's exemptions. Congress passed a clear and unambiguous statute mandating that companionship employees be exempt from overtime. Section 213 of the Act – titled "Exemptions – states, in relevant part:

(a) Minimum wage and maximum hour requirements – The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to . . .

(b) any employee employed on a casual basis in domestic service employment to provide babysitting services or **any employee** **employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves** (as such terms are defined and delimited by regulations of the Secretary)

*See* 29 U.S.C. § 213(a)(15) (emphasis added). "Section 207 of this title" referenced in Section 213(a) refers to 29 U.S.C. § 207. Section 207 is the statute that requires "one and one-half times the regular rate of pay" for employees who work more than 40 hours in a week – or "overtime". Taken together, this means that the companionship services employees are exempt from overtime. However, the DOL took it upon themselves to change that with 29 C.F.R. § 552.109, which became effective on January 1, 2015.[2]

---

[2] § 552.109 Third party employment.

In fact, for a period of approximately 41-years between 1974 and 2015, companionship services employees like WiCare's employees were not entitled to overtime pay – because Congress exempted them by passing 29 U.S.C. § 213(a)(15) and the DOL, at that time, agreed with Congress's exemption. The Supreme Court of the United States even went so far as to find the previous DOL Regulation stating that the statutory exemption in 29 U.S.C. § 213(a)(15) included all third-party employed companionship workers to be valid and binding. *See Long Island Care at Home, Ltd. V. Coke*, 551 U.S. 158, 127 S. Ct. 2339 (2007).

And yet, here we are now approximately half a century later, arguing over a topic that was previously settled by not only Congress, but also the Supreme Court of the United States, *and* the previous iterations of the DOL. Interestingly, the only one out of those three who have changed their minds on the topic is the one with the least amount of authority to do so, the DOL. An Agency's legislative interpretation should not substantially alter legislation enacted by duly elected officials. *Id*. at 175.

---

(a) Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. However, the individual or member of the family or household, even if considered a joint employer, is still entitled to asse4rt the exemption, if the employee meets all of the requirements of §552.6.

Appellants acknowledge that the arguments it brings here are strikingly similar to the arguments the Plaintiff of *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d. 138 (D.D.C. Dec. 22, 2014). In that case, the District Court granted summary judgment in favor of plaintiff, finding that Congress really meant it when it said "any employee" who provides companionship services is exempt from overtime, and vacated 29 C.F.R. § 552.109. The basis for the District Court's decision in that case was that the regulation failed at step one of the *Chevron* test.

The District Court's decision was reversed and remanded by the United States Court of Appeals for the District of Columbia. *Home Care Ass'n of Am. v. Weil*, 799 F.3d. 1084 (D.C. Cir. 2015). The Court of Appeals found that 29 C.F.R. § 552.109 passed both step one and step two of the *Chevron* test.

Defendants re-raise these arguments set forth in an overturned case not only because Defendants believe that the Court of Appeals erred in finding that 29 C.F.R. § 552.109 fails at step one of *Chevron*, but also because *Chevron* deference has been rejected by the Supreme Court. Defendants do not ask this Court to find for Defendants only because *Chevron* has been rejected as the Supreme Court advised in *Loper Bright* that "[m]ere reliance on *Chevron* cannot constitute a 'special justification' for overruling such holding." *Loper Bright*, 144 S. Ct. 2244, 2253. Instead, Defendants look to demonstrate that regardless of the fact that *Chevron* is no longer precedent, the Third-Party regulation still fails the first step of *Chevron*.

**B.** *Loper Bright*

Under the newly decided *Loper Bright* rule, "when ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given to the agency. Congress expects courts to handle technical statutory questions." *Id.* at 2267. The Supreme Court found that the courts must exercise "their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 2273.

However, the Supreme Court did acknowledge that "the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 2263. The Supreme determined that one of many ways statutes may express their meaning is when they "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Id.* (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43, 6 L. Ed. 253 (1825)). Notably, the Supreme Court left the deference afforded in *Skidmore* alone with its decision in *Loper Bright*, finding that the courts have long exercised their "independent judgment in determining the meaning of a statute" by seeking "aid from the interpretations of those responsible for implementing particular statutes." *Id.* at 2249. (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)).

Here, again, the plain language of the exemption statute is clear, "**any employee** employed in domestic service employment to provide companionship

services for individuals who (because of age or infirmity) are unable to care for themselves. . ..." 29 U.S.C. § 213(a)(15). This language was understood as including third-party employers from the time it was passed in 1974 until 2015 when the DOL decided to engage in laborious and politically motivated interpretation of the statute - resulting in the Third-Party Regulation which reversed the plain language and the will of the Supreme Court. *See Long Island Care at Home, Ltd. V. Coke*, 551 U.S. 158, 127 S. Ct. 2339 (2007).

The DOL has acted well outside its agency discretion in its attempts to enforce this Third-Party Regulation while acting under the guise of filling in the details. What the DOL has done instead is promulgate not only the inapposite Third Party Regulation, but also muddy the waters further by circulating alleged "guidance" with respect to the companionship services exemption in the form of Fact Sheets. The DOL provided the following related Fact Sheets: (1) Fact Sheet # 79A: Companionship Services Under the Fair Labor Standards Act (FLSA), and; (2) Fact Sheet #25: Home Health Care and the Companionship Services Exemption Under the Fair Labor Standards Act (FLSA).

The Fact Sheets represent the DOL's administrative interpretation of the Third-Party Regulation and are entitled to significant deference. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944). (holding that the interpretations of the Wage and Hour administrator as to the FLSA constitute a body

of experience and judgment upon which courts and litigants may properly rely; *see also Secretary Untied States Dept. of Labor v. American Future Systems, Inc.*, 873 F.3d 420, 426-27 (3d Cir. 2017). The problem here is that the Fact Sheets and Final Rule are an incoherent mess – a question which should have been left to the jury in the underlying proceedings in this matter.

We will examine excerpts from the Fact Sheets which will demonstrate their incoherent nature and emphasize the proper reading of the plain language of 29 U.S.C. § 213(a)(15). Under the guide of *Skidmore*, these Fact Sheers are supposed to *aid* the public and the courts in their understanding of the language by looking to the interpretations of those who implemented it. Unfortunately, the Fact Sheets are incomprehensible as the Court will see. According to Fact Sheet #25:

> Employers who provide home health care services for individuals who (because of age or infirmity) are unable to care for themselves may or may not be required to pay minimum wage and/or overtime premium pay depending upon the type of services provided and the nature of the working relationship. <u>Employees providing 'companionship services' as defined by the FLSA need not be paid the minimum wage or overtime.</u>

(Appx1055). This excerpt from Fact Sheet #25 appears to be saying exactly what the plain language of 29 U.S.C. § 213(a)(15) says already. Additionally, this demonstrates how easily someone like Hernandez could understandably conclude that his employees "need not be paid the minimum wage or overtime." Fact Sheet #25 goes on to define "companionship services" as:

17

> Services for the care, fellowship, and protection of persons who because of advanced age or physical or mental infirmity cannot care for themselves. Such services include household work for aged or infirm persons including meal preparation, bed making, clothes, washing and other similar personal services. General household work is also included, as long as it does not exceed 20 percent of the total weekly hours worked by the companion.

(Appx1055). This describes exactly what WiCare employees do, and again follows the plain language of 29 U.S.C. § 213(a)(15). Additionally, Fact Sheet #79A offers guidance on the exemption, and leads with the following:

> In 1974, Congress extended the FLSA coverage to workers who perform ' domestic service.' Domestic service employment means services of a household nature performed by a worker in or about a private home (permanent or temporary). . . . <u>The law also exempts certain domestic service workers from the FLSA's minimum wage and overtime provisions. . . workers employed to provide 'companionship services' for an elderly person or a person with illness, injury, or disability are not required to be paid the minimum wage or overtime pay</u> . . ..

(Appx1056) (emphasis added). Once more, the Fact Sheets remain consistent with the plain language text of 29 U.S.C. § 213(a)(15). However, after describing companionship services versus "Tasks That are Not Companionship Services" at length, Fact Sheet #79A concludes with two (2) confusing paragraphs, addressing "Who Can Claim the Exemption," the first states:

> Under the revised regulations, the exemption is only available to the individual, family, or household solely or

> jointly employing the worker, and only if the companionship services duties test set forth above is met.

(Appx1056). Clearly, this is where the DOL falls away from the plain language of 29 U.S.C. § 213(a)(15) ("any employee") and the "guidance" on which the Court may rely to lead its own interpretation is clouded significantly. The first line "the exemption is only available to the individual, family, or household solely or jointly employing the worker" is world salad. Is the individual the companionship services employee? Is a family a form of corporate entity that can be an employer? Similarly, is it the physical house itself that can be an employer? What does household mean? Can any of these entities be the "sole" employer or "joint" employer? Perhaps the individual, family, and household can all jointly employ an individual at the same time.

The second problem is that "the exemption is <u>only</u> available" directly conflicts with the plain language of 29 U.S.C. § 213(a)(15), which stats with "<u>any employee employed</u>" and has not mention of "sole" or "joint". Fact Sheet #79A then concludes with:

> Third party employers of direct care workers (such as home care staffing agencies) are not permitted to claim the exemption for companionship services. Third Party employers may not claim the exemption even when the employee performs companionship services and is jointly employed by the third party employer and the individual family, or household using the services.

(Appx1057). Once again, we see "individual, family, or household" but this time they are described as "using the services", not as "sole" or "joint" employers. In the excerpt prior one could interpret what the DOL is preparing available to those individuals employed in companionship services. Yet in the next breath, the DOL contradicts not only itself in its prior Fact Sheet interpretations, but also the plain language of 29 U.S.C. § 213(a)(15) by advising that the companionship exemption is now suddenly inapplicable to the newly bifurcated third party employers. Not only that, but the third party employers are specifically notated as "[t]hird party employers of direct care workers (such as home care staffing agencies)" which WiCare is not. Thus, Fact Sheet 79A provides little "guidance" to this Court, but rather hazes the very clear, plain language of 29 U.S.C. § 213(a)(15).

The DOL issued "Fact Sheet: Application of the Fair Labor Standards Act to Domestic Service, Final Rule" in September 2014. This Fact Sheet address "Third Party Employer" in its own section:

> Under the Final Rule, third party employers of direct care workers (such as home care staffing agencies) are not permitted to claim either the exemption for companionship services or the exemption for live-in domestic service employees. Third party employers may not claim either exemption even when the employee is jointly employed by the third party employer and the individual, family, or household using the services. However, the individual family, or household may claim any applicable exemption. Therefore, even if there is another third party employer the individual, family, or household will not be liable for

> unpaid wages under the FLSA provided the requirements
> of an applicable exemption are met.

(Appx1057). This excerpt references "third party employer" along with "individual, family, or household' again but then references "<u>another</u> third party employer". How many third party employers can there be? Is there now a previously unknown fourth party employer waiting in the wings to join the fray? Further, in the closing sentence, apparently it is possible for someone to be "liable" for unpaid wages "even if" the requirements of an applicable exemption are met – which is nonsensical.

Really the only thing that this final fact sheet tells us with any certainty is that "home care staffing agencies" cannot claim exemption. Defendants are grateful for this as WiCare is not a "home care staffing agency". Other cases have dealt with instances of overtime lawsuits directed to *actual* staffing agencies, one such relatively recent case is *Lynn v. ARC of Fayette Cty.*, 2018 U.S. Dist. LEXIS 155536 (W.D.Pa. Sept. 11, 2018). In *Lynn*, plaintiffs alleged, among other things, failure to pay overtime against Arc of Fayette County ("Arc") and Fayette County Behavior Health Administration. Plaintiffs were "Family Support Persons" who provided companionship services in the form of supervising persons with developmental disabilities. *Id.* at *9-10. Families in need of such services would contact Fayette County Behavioral Health Administration ("FCBHA"), a government unit which administered regulations under the Pennsylvania Department of Human Services. *Id.*

at *8. FCBHA had a contract with Arc, along with other "care facilitating agenc[ies], to place 'Family Support Persons' with families seeking same through FCBHA." *Id.* at *9. Family Support Persons placed with a family through ARC and the FCBHA were compensated as independent contracts. *Id.* at *14.

Plaintiffs and Arc both filed motions for summary judgment on the issue of whether Plaintiffs were employees or independent contractors of Arc. Both motions were denied. *Id.* at *35. FCBHA filed a motion to dismiss or, alternatively, for summary judgment on the basis that it was not an employer, which was denied. *Id.* The Court could not readily conclude whether plaintiffs were employees, or by whom they were employed – based on DOL guidance. *Id.*

It should also be noted that the Magistrate's report and recommendation in *Lynn* took 36 pages to apply the DOL's revised definition of companionship services and still no decision could be made. The *Lynn* Court acknowledged there was/were "litigation, inquiries, and uncertainties regarding aspects of the companionship services exemption" and that the DOL's revisions thereto were open to a "less-than-entirely-unambiguous interpretation." *Id.* at *27. Defendants respectfully request this Court find the same, and due to the incoherent nature of the interpretations on which *Skidmore* deference may apply find the DOL's purported "guidance" not only useless when attempting to understand the point of the Third Party Regulation, but also clearly at odds with the plain language of 29 U.S.C. § 213(a)(15). The DOL

22

created an incoherent mess of word salad and relied on *Chevron* deference to "interpret" their way towards a result that is incompatible with 29 U.S.C. § 213(a)(15). The DOL can no longer rely on *Chevron* deference.

Thus, Defendants respectfully request this court to find the only reading of 29 U.S.C. § 213(a)(15) is the plain language reading as intended by Congress and as agreed upon by the DOL for approximately 41 years prior to 2015, vacating the Third Party Regulation.

## II. Defendants do not Engage in Interstate Commerce.

Defendants' participation in interstate commerce is a requisite element for WiCare employees to be "covered" by the FLSA. *See Katz v. DNC Servs. Corp.*, 2018 U.S. Dist. LEXIS 17002 (E.D.Pa. Feb. 1, 2018), (citing *Razak v. Uber Techs., Inc.,* 2016 U.S. Dist. LEXIS 139668, [WL] at *1, *14 (E.D.Pa. October 7, 2016)), (finding that, an FLSA claim cannot proceed absent a showing that either the employees' or the employer's activities fall within the Act's protection).

An employee may be covered by the FLSA by either: (1) enterprise coverage, where any employee of an enterprise covered by the FLSA is covered by the provisions of the FLSA, and; (2) individual coverage, where even if the enterprise is not covered, individual employees whose work engages the employees in interstate commerce or in the production of goods for commerce is covered by the FLSA. 29 U.S.C. § 207(a)(1).

Individual coverage is limited to employees "who in any workweek [are] engaged in commerce or in production of goods for commerce." *Katz*, 2018 U.S. Dist. LEXIS 17002, citing, 29 U.S.C. § 207(a)(1). To demonstrate eligibility for individual coverage under the FLSA, the employee(s) at issue "must be <u>directly participating in the actual movement of persons or things in interstate commerce</u>." *Id.*, (quoting, *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)). (emphasis added). This strict requirement contributes to the [FLSA's] legislative purpose, which is in part to leave local business to the protection of the state. *Id.*

Section 203 of the FLSA provides that "enterprise coverage" applies to an enterprise "engaged in commerce or in the production of goods for commerce", specifically:

> (A)
> (i) has employees <u>engaged in commerce or in the production of goods for commerce</u>, or that has employees handling, selling, or otherwise working on goods or materials that have been <u>moved in or produced for commerce by any person</u>; **<u>and</u>**
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)
> . . ..

*See* 29 U.S.C. § 203(s)(1)(A). The DOL argues that Defendants fall under the FLSA solely because their annual gross business done is not less than $500,000. However, the DOL fails to see that while the $500,000 requirement forces some

under the umbrella of the FLSA, those who are forced are those who "engaged in commerce or in the production of goods for commerce, or . . . [work on goods or materials] that have been moved in or produced for commerce by any person; **and** . . .." The DOL has apparently (and incorrectly) presumed, without investigation, that WiCare engages in "commerce," as defined by the Act. Under the Act, "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *See* 29 U.S.C. § 203(b). (Appx1052, 1053).

To determine whether an employee is engaged in commerce pursuant to the FLSA, "[t]he test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Mitchell v. C.W. Vollmer & Co.,* 349 U.S. 427, 429, 75 S. Ct. 860, 99 L. Ed. 1196 (1955). Additionally, the Supreme Court has held that "employees do not engage in interstate commerce by handling goods that were previously interstate commerce." *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943); *see also Llanes v. Zalewski*, 412 F. Supp. 3d 1266, 1270 (D. Or. 2019) ("[C]ourts have consistently held that an employee cannot establish individual coverage simply by buying or handling goods locally, even if the goods originated out of state.").

There is also the practical test applied by the courts, which asks "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be in practical effect, a part of it, rather than isolated, local activity." *Mitchell v. Lublin*, 358 U.S. 207 (1959). The Supreme Court in *Overstreet* provided the following example:

> Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. *Cf. Covington & Cincinnati Bridge Co. v. Kentucky*, 154 U.S. 204, 218. Those persons who are engaged in maintaining and repairing such facilities should be considered as "engaged in commerce" even as was the bolt-carrying employee in the Pedersen case, supra, because without their services these instrumentalities would not be open to the passage of goods and persons across state lines.

*Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943).

WiCare is not in the business of distributing, purchasing, nor selling goods. (Appx1053, 1054). WiCare employees *may* handle some soap or gloves that have travelled interstate, but the DOL has no evidence of this and handling mere products that previously moved in interstate commerce is insufficient. (Appx1054). Hernandez testified that WiCare's employees provide home companionship services to clients exclusively in Pennsylvania, with 95% of clients and caregivers living in the Lebanon, Pennsylvania area, which is also where WiCare's bank account and

sole office is located. (Appx1053, 1054). Any products or materials that WiCare employees may require to provide companionship services to their clients are provided by the client in the client's own household. (Appx1053). All products or materials provided by clients would have been purchased by clients regardless of WiCare employees' presence or services. (Appx1053, 1054).

Accordingly, Defendants do not engage in interstate commerce as defined by the Act and Plaintiff cannot proceed as a matter of law where neither Defendants, nor their employees are covered by the FLSA.

## III. Defendants are not third party employers within the meaning of the Third Party Regulation

Defendants are not third party employers within the meaning of the Third Party Regulation, and therefore do not fall within its purview. As the DOL issued "Fact Sheet: Application of the Fair Labor Standards Act to Domestic Service, Final Rule" provides a "Third Party Employer" is only clearly defined as "home care staffing agencies". There is no definition of "third party employer" provided in 29 U.S.C. § 203 of the Act, likely because Congress did not foresee needing one.

Defendants ask this Court to return to the *Lynn* case. Defendants' intention in returning to the *Lynn* case, is to point to the fact that in the *Lynn* case we saw a local administrative agency as the point of contact for families seeking someone to provide companionship services, and that administrative agency contracted a true

staffing agency (Arc) who then placed companionship services personnel (independent contractors) as needed. *Lynn*, 2018 U.S. Dist. LEXIS 155536 at *8-9.

Additionally, when WiCare employees were interviewed by the DOL it is clear they consider WiCare to be *the* employer. (Appx1057-1058). Employees of WiCare complete applications to work for WiCare, Hernandez or his office manager make the ultimate hiring decision based on those applications, WiCare then performs the legally required background checks, and then finally, WiCare trains the hired and approved employees on the requirements for home companionship services. Once the employee is hired, cleared, and trained, WiCare assigns the employee to a client. (Appx1048-1049). WiCare pays their employees with tax-deducted paychecks. (Appx1057-1058). If there is another employer or "<u>another</u> third party employer", the DOL has not informed Appellants. The DOL did not investigate any other employer or employers of Appellant's employees. (Appx1052, 1057).

Therefore, WiCare is not a "home care staffing agency" nor a third party employer within the meaning of the Third Party Regulation, but is the *only* employer their employees.

## IV. Liquidated damages are inappropriate

If an employer shows to the satisfaction of the court that the act or omission giving rise to violation of the Act was: (1) made in good faith, and; (2) that he had reasonable grounds for believing that his act or omission was not in violation of the

Act, the court may in its sound discretion, award no liquidated damages *See* 29 U.S.C. § § 259, 260. Neither Hernandez nor WiCare willfully violated the Act. Hernandez truly believed he was fully compliant. (Appx1051, Appx1056-1057, Appx1061-1064).

Hernandez reviewed the DOL's Fact Sheets, spoke with fellow business owners, and came to the reasonable and lawful conclusion that WiCare would not be required to pay overtime wages to its employees. (Appx1051, Appx1056-1057, Appx1061-1064). Good Faith may be established when the employer can show that it had reasonable grounds for believing that it was not violating the Act. *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 433 (3d Cir. 2017).

As discussed *supra*, Hernandez reviewed Fact Sheets that clearly, or unclearly given the context, indicated that employees employed in companionship services are exempt from overtime wages. *Supra*, Section 1, Subsection B. Hernandez did his utmost to remain compliant, and yet rather than willfully violate the Act he was instead led astray by the DOL's subpar "guidance". The DOL also failed to uncover any evidence or testimony that Defendants' conduct that alleged violated the Act was in any way willful or malicious.

Therefore, liquidated damages are inappropriate as WiCare and Hernandez both made a good faith effort and had reasonable grounds to believe he was in fact not in violation of the Act.

**V.** **Acting Secretary of Labor Julie A. Su, and agents acting on her behalf and under the cloak of her authority do not have standing nor the ability to deviate from the liquidated damages procedures promulgated under former Secretary Martin J. Walsh.**

The DOL, while led by Acting Secretary Julie Su (hereinafter "Ms. Su"), has no standing or actual authority to bring enforcement actions predicated upon a policy decision by Ms. Su. Anything Ms. Su does in an official capacity "shall have no force or effect". 5 U.S.C. § 3348(d)(1).[3] including Ms. Su's right to set or enforce policy when she was not confirmed by the Senate, and it is public record that she will *never* be confirmed. (Appx1066-1075). Ms. Su had no "official capacity" during the District Court proceedings the longer she remained unconfirmed. This Court may also take judicial notice that today is November 4, 2024, with General Elections taking place tomorrow – November 5, 2024. Juie Su remains unconfirmed by the Senate, and never will be.

On July 13, 2021, Ms. Su was confirmed as the *Deputy* Secretary of Labor under Secretary Martin J. Walsh. On March 11, 2023, then Secretary, Martin J. Walsh, resigned creating a vacancy. Ms. Was nominated for the vacant Secretary of Labor position by President Biden on February 28, 2023. Ms. Su, however, was

---

[3] (d)(1)An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect.

never confirmed by the Senate. Her first nomination expired at the end of 2023. She was then re-nominated by President Biden in the first week of January 2024. Further, it is a matter of official congressional and public record that she is never going to be confirmed. It has now been over 1-year since Ms. Su was nominated for the first time, and with a clear lack of Congressional support, Ms. Su's actions are unenforceable by this Court.

The most pressing concern as to this matter is Ms. Su's *apparent change* in internal DOL policies as related to the discretion to pursue liquidated damages previously promulgated by Martin J. Walsh – who was confirmed by the Senate. (Appx1068). Defendants attempted to settle this suit by proffering an offer to pay the internal audit's determination of $420,400.32[4] to settle claims related to alleged non-payment of overtime. (Appx1066-1067). Appellants were clear, however, that they would not pay liquidated damages and civil monetary penalties separately. (Appx1067). The offer was inclusive of both liquidated damages and civil monetary penalties. (Appx1067). Hernandez was "completely tapped out in terms of loans and credit" to come up with funding for this offer. The DOL summarily rejected Defendants' offer, and shortly after decided to change the look back period to three (3) years, which is only appropriate as a matter of law when there is a finding "willful violation". (Appx1067).

---

[4] This offer has since been rescinded.

At a settlement conference on November 8, 2023, the DOL maintained it had *no discretion* as whether to pursue liquidated damages. (Appx1068). This is a clear deviation from the interna policy on liquidated damages promulgated by Martin J. Walsh – who was confirmed by the Senate and did have the full authority of the Secretary of Labor. (Appx1068). Further, in response to Defendants interrogatory to the DOL that requested "[d]escribe the analysis and determinations that Plaintiff made prior to deciding whether seeking liquidated damages against Defendants was appropriate in the instant matter." The DOL provided a non-responsive Answer:

> Objection. This request seeks information protected from disclosure by the work product doctrine and the attorney-client privilege. Moreover, this request seeks information that is not relevant to the claims and defenses in this case – it does not matter why the Department of Labor is seeking liquidated damages, but rather whether such damages are warranted under the law. Without waiving these objections, Plaintiff refers Defendants to Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991) and similar case law which explains that liquidated damages are the norm in such matters and are intended to compensate employees for being deprived the use of their lawful wages.

(emphasis added). (Appx1068-69).

The DOL provided this Answer on June 14, 2023, while Ms. Su was Acting Secretary of Labor. (Appx1069). Thus, it is obvious that Ms. Su has taken steps to change internal policies and procedures for the DOL. It is unconstitutional for Ms.

Su to remain in a position of Acting Secretary in perpetuity, where she continues to alter, interpret and enforce law without being confirmed.

Thus, the Court should find that Ms. Su has no authority to deviate from the discretion-based internal guidance by Martin J. Walsh, and that Ms. Su's subordinates acting under the cloak of her authority have no authority to deny (or accept, for that matter) Defendants' offer of settlement.

**VI.  Acting Secretary of Labor Julie A. Su, and agents acting on her behalf and under the cloak of her authority do not have standing nor the ability to bring any enforcement action against Defendants.**

The DOL not only has no standing or actual authority to bring enforcement actions predicated on a policy decision by Ms. Su, but Ms. Su nor agents acting on her behalf and under the cloak of her authority have no present authority to bring nor continue any enforcement action against Defendants. As stated *supra*, Ms. Su has not been appointed and will *never* be appointed. (Appx1038-1045).

29 U.S.C. § 552 defines the powers of the Deputy Secretary. The statute permits the Deputy Secretary to fill in for the Secretary during certain vacancies: "death, resignation, or removal from office." 29 U.S.C. § 552. Vacancies, by nature, are temporary conditions, as is the Deputy's ability to wield the Secretary's power. Nothing in the statute purports to authorize the Deputy Secretary to assume the Secretary's role permanently. Taken any other way would result in a gaping loophole that would permit a Deputy Secretary to remain the Secretary regardless of the need

for advice and consent. *See* U.S. Const. art. II, § 2 (providing only two methods of appointment); *Buckley v. Valeo*, 424 U.S. 1, 124 (1976) (noting the clause was not simply an "abstract generalization in the minds of the Framers").

Looking to the wording of § 552, once the President has "appointed" a new Secretary, in this case more than once, then "by and with the advice and consent of the Senate" comes afterwards. 29 U.S.C. § 552. Ms. Su's appointment by President Biden certainly falls under the purview of the § 552 with her twice "appointment" now, but we lack continue to lack the "consent of the Senate. *Id.* Instead she appears to be permitted to act with the full force and powers of the Secretary of Labor despite a lack of the Senate's consent, which in turn seems to permit her to continue as acting Secretary in perpetuity all the way through to a General Election which will take place the day after the filing of this appellate brief.

There is an alternative provided by Congress in the event of such a conflict with the Federal Vacancies Reform Act ("FVRA"). The FVRA acknowledged that there were about 40 other statutes permitting individual executive branch departments to designate an officer to temporarily act as the head of the department. S. Rept. 105-250 – FEDERAL VACANCIES REFORM ACT OF 1998, S.Rept.105-250, pp. 16-17, 105th Cong. (2024). Section 552 is included in this list. *Id.* However, Congress provided the following as an alternative procedure within the FVRA:

> Most of these retained statutes do not place time
> restrictions on the length of an acting officer. The various

authorizing committees may choose in the future to reexamine whether these positions should continue to be filled through the existing procedure, or whether it would be advisable to repeal those statutes in favor of the procedures contained in the Vacancies Reform Act. The Committee believes that some of these statutes may have been passed without knowledge of the Vacancies Act. In any event, <u>even with respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office.</u>

*Id.* (Emphasis added).

The FVRA can clearly be applied as an alternative procedure in lieu of 29 U.S.C. § 552 as the way it currently functions is constitutionally offensive. The default rule under the FVRA is that the first assistant "shall perform the functions and duties of the office temporarily in an actin capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1). Under § 3346 of the FVRA, a person may serve in an acting capacity, "once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is still pending in the Senate" and for up to 210 days after the nomination is rejected, withdrawn, or returned. *Id.* § 3346(a)(2), (b).

The 210 day period set forth in 5 U.S.C. § 3346, sets forth some tangible dates for the Court's consideration here. Ms. Su was nominated for the second time by President Biden on January 4 or (8th), 2024. Ms. Su's first nomination sat for 281 days before it was returned without a vote. The second nomination continues to sit,

now surpassing the original 281 days and continuing to tick up as the days go by. Given Ms. Su's first nomination on March 14, 2023, she could potentially wield the power of the Secretary of Labor for a total of 785 days, or 2 years, 1 month , and 23 days.

The alternative procedure under the FVRA and interpretation of § 552 would render the appointments clause nugatory. In *Marbury v. Madison*, the Supreme Court found that a statute proliferated to let the Court have original jurisdiction over writs of mandamus over public officials was unconstitutional. 5 US 137 (1803). Congress could not give the Supreme Court original jurisdiction over writs of mandamus as this clashed directly with Article III of the Constitution which provided the Court with its original jurisdiction. U.S. Const. art. 3. To the extent that Congress or the DOL have passed laws and regulations that purport to instruct this Court that it must acknowledge Ms. Su's authority, the Court can and should engage in judicial review of those laws.

The Court should find that Ms. Su cannot continue to operate as Acting Secretary of Labor, and that Ms. Su's agents have no present authority to continue any enforcement actions against Defendants – including this litigation.

## CONCLUSION

For these reasons, the Court should (1) hold that the Third Party Regulation fails under both *Chevron* step one and *Loper Bright*, (2) reverse the district court's

order denying the Defendants' motion for summary judgment and granting the DOL's motion for summary judgment, (3) remand for entry of an order (a) vacating the Third Party Regulation and (b) permanently enjoining the DOL from from enforcing the Third Party Regulation within any State of the United States or the District of Columbia or any Territory or possession of the United States.

Respectfully submitted,

*/s/* John M. Nolan, III, Esq.
John M. Nolan, III Esq.
Grace Miller, Esq.
MARGOLIS EDELSTEIN
170 S Independence Mall W, Suite 400E
Philadelphia, PA 19106
(215) 931-5848

*Attorneys for Appellants/Defendants*

## CERTIFICATION OF ADMISSION TO BAR

I, John M. Nolan, III, Esq., certify as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

/s/ John M. Nolan, III
John M. Nolan III, Esq.

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C) I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 8,278 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in proportionally spaced typeface using the Microsoft 365 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: November 4, 2024.

/s/ John M. Nolan, III, Esq.
John M. Nolan, III, Esq.

## CERTIFICATE OF FILING AND SERVICE

I, Elissa Diaz, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

November 4, 2024, the foregoing Brief and Appendix for Appellant Volume 1 was

filed through the CM/ECF system and served electronically.

Unless otherwise noted, seven copies will be filed with the Court within the

time provided in the Court's rules via Federal Express.


/s/ Elissa Diaz
   Elissa Diaz

# APPENDIX 1

# TABLE OF CONTENTS

**Page**

**Volume I:**

Memorandum, filed July 31, 2024 .................................................................. Appx1

Order, filed July 31, 2024 .............................................................................. Appx49

Judgment, filed July 31, 2024 ....................................................................... Appx51

Notice of Appeal, filed August 20, 2024 ...................................................... Appx52

**Volume II:**

Docket Entries .............................................................................................. Appx54

Complaint, filed February 15, 2022 .............................................................. Appx64

     Schedule A ........................................................................................... Appx72

Order, dated October 3, 2023 ........................................................................ Appx79

Defendants' Motion for Summary Judgment, filed April 15, 2024 ............... Appx82

Plaintiff's Motion for Summary Judgment, filed April 15, 2024 .................. Appx88

Proposed Order, filed April 15, 2024 ........................................................... Appx90

Exhibit Table of Contents, filed April 15, 2024 ........................................... Appx92

Certificate of Nonconcurrence, filed April 15, 2024 .................................... Appx94

Plaintiff's Statement of Undisputed Material Facts, filed April 15, 2024 ....... Appx96

     Exhibit 1: Complaint ......................................................................... Appx112

     Exhibit 2: Defendants' Answer to the Complaint, dated April 29,
2022 .................................................................................................. Appx128

i

Exhibit 3: Defendants' Responses to Plaintiff's First Request for Admissions, dated September 22, 2022 .................................................... Appx135

Exhibit 4: Defendants' Answers to Plaintiff's First Set of Interrogatories Directed to Defendants, dated October 1, 2022 ............. Appx145

Exhibit 5: 2019 Tax Form of Luis D. Hernandez Schedule C.............. Appx156

Exhibit 6: WiCare Backwage Summary ................................................. Appx158

**Volume III:**

Exhibit 7: Luis David Hernandez's Deposition Testimony .................... Appx550

Exhibit 8: Employee Handbook and Contract ....................................... Appx677

Exhibit 9: Declaration of Maria Nunez.................................................. Appx697

Exhibit 10: WiCare Employee's Payroll Record Excerpts ..................... Appx704

Exhibit 11: Adelaida Soto Martinez's Payroll Record ......................... Appx905

Exhibit 12: Declaration of Edna Berrios ............................................... Appx912

Exhibit 13: Declaration of Parbatie Samaroo ....................................... Appx914

Exhibit 14: WiCare Time Record Excerpts ........................................... Appx916

Exhibit 15: Employee Contract with Overtime Premium Language ...... Appx965

Exhibit 16: Yvone Polanco's Payroll Records....................................... Appx966

Exhibit 17: Fact Sheet #25 Home Health Care ..................................... Appx968

Exhibit 18: Fact Sheet #25 Application of the Fair Labor..................... Appx970

Exhibit 19: Samaroo's Payroll Journey ................................................. Appx973

Exhibit 20: Samrooo's April 2020 Time Record ................................... Appx976

Exhibit 21: Polanco's December 20, 2020 Pay Stub .............................. Appx979

Exhibit 22: Edna Berrios' June 5, 2020 Paycheck................................. Appx980

Exhibit 23: Edna Berrios' August 15, 2020 Time Record...................... Appx981

Exhibit 24: Edna Berrios' August 15, 2020 Pay Stub ........................... Appx982

Memorandum of Law in Support of Plaintiff's Motion for Summary
    Judgment, filed April 29, 2024 ................................................... Appx983

Defendants' Revised Memorandum of Law, in Support of their Motion
    for Summary Judgment, dated May 22, 2024......................... Appx1016

Defendants' Statement of Undisputed Facts in Support of their Motion
    for Summary Judgment, dated May 22, 2024......................... Appx1047

Exhibit A: Complaint, filed February 15, 2022 ..................................... Appx1078

**Volume IV:**

Exhibit B: Video Conference Deposition of Luis David Hernandez,
    dated August 16, 2023................................................................. Appx1087

Exhibit C: WiCare Home Care Agency, LLC Employee and
    Company Polices Manual ....................................................... Appx1220

Exhibit D: U.S. Department of Labor Wage and Hour Division:
    Fact Sheet #25: Home Health Care and the Companionship Services
    Exemption Under the Fair Labor Standards ACT (FLSA)...................... Appx1239

Exhibit E: U.S. Department of Labor Wage and Hour Division:
    Fact Sheet #79A: Companionship Services Under the Fair Labor
    Standards Act (FLSA)................................................................. Appx1242

Exhibit F: U.S. Department of Labor Wage and Hour Division:
    Employee Personal Interview Statement ................................. Appx1246

Exhibit G:  Defendants' Answer to Plaintiff's First Set of
Interrogatories Directed to Defendants, dated October 1, 2022 .............. Appx1269

Exhibit H:  Letter from Senate to President Joseph R. Biden,
President, dated October 17, 2023 ......................................................... Appx1280

Exhibit I:  Email from Kevin Kiley........................................................ Appx1285

Exhibit J:  Letter from to Honorable Bernard Sanders, dated
February 13, 2024 ................................................................................. Appx1287

Exhibit K:  Congressional Record – House, dated March 11, 2024........ Appx1297

Exhibit L:  Letter from U.S. Senators to President Joseph R. Biden,
March 20, 2024 ..................................................................................... Appx1299

Exhibit M:  Administrative Conference of the U.S. Acting Agency
Officials and Delegations of Authority Revised Draft Report, dated
December 1, 2019 .................................................................................. Appx1302

Exhibit N:  News Article ....................................................................... Appx1434

Exhibit O:  Plaintiff's Response to Defendants' First Set of
Interrogatories, dated June 14, 2023 ...................................................... Appx1437

Exhibit P:  Field Assistance Bulletin No 2021-2, dated April 9, 2021.... Appx1452

Exhibit Q:  Letter from Bill Cassidy, M.D., to President Joseph R.
Biden, dated July 19, 2023 ..................................................................... Appx1454

Exhibit R.  Article from *Politico*, dated February 21, 2024 ................... Appx1457

Exhibit S:  U.S. Department of Labor Wage and Hour Division:
Fact Sheet: Application of the Fair Labor Standards Act to Domestic
Service, Final Rule ................................................................................ Appx1460

Exhibit T: Affidavit of Luis Hernandez, dated May 22, 2024................. Appx1465

Plaintiff's Brief in Opposition to Defendants' Motion for Summary
Judgment, dated June 11, 2024 .............................................................. Appx1469

Plaintiff's Counterstatement of Undisputed Facts, dated June 11, 2024 ......... Appx1493

Defendants' Reply to Plaintiff's Brief in Opposition to Defendants'
    Motion for Summary Judgment, dated June 25, 2024 ............................ Appx1563

Defendants' Reply to Plaintiff's Brief in Opposition to Defendants'
    Motion for Summary Judgment, dated June 25, 2024 ............................ Appx1583

Defendants' Reply to Plaintiff's Brief in Opposition to Defendants'
    Motion for Summary Judgment, dated June 25, 2024 ............................ Appx1603

    Exhibit A:  Defendants' Brief in Opposition to DOL's Motion for
    Summary Judgment, dated July 30, 2024 ................................................ Appx1623

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE A. SU, Acting Secretary of Labor, | : | |
| United States Department of Labor, | : | |
|     Plaintiff | : | No. 1:22-cv-00224 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| WICARE HOME CARE AGENCY, LLC, | : | |
| et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

This case arises out of the alleged violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by Defendants WiCare Home Care Agency, LLC ("Defendant WiCare"), and Luis D. Hernandez ("Defendant Hernandez") (collectively "Defendants"). Before the Court are cross motions for summary judgment filed by Defendants (Doc. No. 57) and Plaintiff Julie A. Su, the Acting Secretary of Labor at the United States Department of Labor ("Plaintiff") (Doc. No. 58). Also pending is Plaintiff's motion to strike "Exhibit T" and references to said exhibit in Defendants' summary judgment filings. (Doc. No. 77.) For the reasons that follow, the Court will grant Plaintiff's summary judgment motion and deny Defendants' motion for summary judgment. The Court will also deny Plaintiff's motion to strike "Exhibit T."

I. **BACKGROUND**[1]

---

[1] The following relevant facts of record are taken from Plaintiff's Statement of Undisputed Material Facts ("PSUMF") (Doc. No. 58-4), Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment ("DSUMF") (Doc. No. 76), and Plaintiff's Counter Statement of Undisputed Facts ("PCUMF") (Doc. No. 80), all of which contain specific citations to the record at each numbered paragraph. Defendants did not file any response to the PSUMF as required by Local Rule 56.1. See L.R. 56.1 (noting that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried"). Accordingly, the facts contained in PSUMF shall be deemed admitted as it pertains to Plaintiff's

The material facts of this case are generally undisputed.  Defendant WiCare is a corporation duly organized under the laws of the Commonwealth of Pennsylvania, registered at 906 Cumberland Street in Lebanon, Pennsylvania.  (Doc. No. 58-4 ¶ 1.)[2]  Defendant WiCare is a for profit entity that provides in-home care to clients by employing individuals who engage in domestic services.  (Id. ¶¶ 2–3.)  During the relevant period, which Plaintiff asserts is between the years 2019 and 2021, Defendant WiCare had an annual dollar volume in excess of five-hundred thousand ($500,000) dollars annually.  (Id. ¶ 4.)

Defendant WiCare is owned by Defendant Hernandez, who has served as the sole owner and President since 2018.  (Id. ¶¶ 5–6.)  Defendant Hernandez is responsible for hiring and firing employees, maintaining pay records, setting pay rates, deciding compensation policies, supervising employees, and promulgating work assignments and rules.  (Id. ¶¶ 7–9.)  Defendant WiCare's employees provide "in-home care services to WiCare's clients" and are "required to sign employment agreements prior to working for WiCare."  (Id. ¶¶ 11–12.)  The employee agreement sets out rules and responsibilities, provides each employee with a probationary period,

---

motion for summary judgment in accordance with Local Rule 56.1.  See id. (highlighting that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").  The following facts of record are undisputed unless otherwise noted.

The Court notes that, in their PSUMF and DSUMF, the parties promulgate several legal arguments explaining why summary judgment should be granted in their favor.  However, Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  See L.R. 56.1 (emphasis added).  Accordingly, such legal arguments are inappropriate in the statements of undisputed facts.  See Perez v. Great Wolf Lodge of the Poconos LLC, 200 F. Supp. 3d 471, 474 n.1 (M.D. Pa. 2016) (highlighting that statements of undisputed material facts should not contain "legal arguments or conclusions").  The Court will address the parties' legal arguments infra in the discussion section of this memorandum.

[2]  As the case caption states, WiCare Home Care Agency is a Limited Liability Company ("LLC").

2

Appx2

and contains a non-compete clause.  (<u>Id.</u> ¶ 13.)  Defendant WiCare also provides their direct care

worker employees with handbooks at the time of their hiring.  (<u>Id.</u> ¶ 14.)

It is undisputed that some of Defendants' direct care workers did not receive overtime

premiums when they worked more than forty (40) hours over the course of a week.  (<u>Id.</u> ¶¶ 16–

18.)  During this time, the direct care workers used timesheets to track their work hours, as well

as a mobile application, and Defendants concede that they would sometimes "manually remove

hours from the employee's timesheet when the Defendants suspected that the employees

overstated how much they worked."  (<u>Id.</u> ¶¶ 19–20 (citing Doc. No. 63-6).)  Plaintiff asserts that

Defendants have admitted that some direct care workers did not receive proper payment for

hours worked, and that there are discrepancies between the hours entered via time sheets and the

payments given to employees.  (<u>Id.</u> ¶¶ 21–24.)  It is further undisputed that Defendants were

"missing entire payroll records for at least two employees," and that more generally, some of the

time records reflect the start of the workweek on Saturday, while others show Sunday as the first

day of the workweek, thus evincing an inconsistency for which Defendants have not offered an

explanation.  (<u>Id.</u> ¶¶ 26–27.)

Plaintiff asserts that a review of Defendants' records shows that one hundred and eighty-

one (181) workers did not receive overtime premiums.  (<u>Id.</u> ¶ 32.)  Plaintiff notes that Defendants

owe four hundred and sixty-eight thousand, four hundred and fourteen dollars and twenty-five

cents ($468,414.25) in back wages to those one hundred and eighty-one (181) employees.  (<u>Id.</u> ¶

35.)  Plaintiff further maintains that Defendants owe sixty-one thousand, three hundred and fifty-

3

four dollars and eighty-four cents ($61,354.84) in minimum wage back wages to eighty-eight (88) employees. (Id. ¶ 37.)[3]

In their DSUMF, Defendants highlight several facts they find relevant to the Court's resolution of the pending motions. (Doc. No. 76.) Defendant WiCare was founded by Defendant Hernandez following a period where Defendant Hernandez and his family cared for his elderly father-in-law in their family home, until his father-in-law's passing. (Id. ¶ 2.) Defendant Hernandez, a pastor at a church in Lebanon, Pennsylvania, experienced a language barrier with companionship companies and caregivers during his time caring for his father-in-law, and as such, opened Defendant WiCare to provide companionship services to the community with the goal of giving Spanish speaking families a viable companion care option. (Id. ¶¶ 3–6.) Defendant WiCare provides companionship for elderly and infirm individuals and helps with the "tasks of daily living." (Id. ¶ 7.)

Defendants assert that approximately three quarters of their employees "are direct family members of WiCare clients," with thirty (30) to forty (40) percent of employees "residing in the same household as their client." (Doc. No. 76 ¶¶ 9–10.) Plaintiff denies these factual assertions, claiming that Defendant Hernandez has admitted to not knowing these data points precisely. (Doc. No. 80 ¶¶ 10–11.)[4] It is undisputed that Defendants remain in business today. (Doc. No. 58-4 ¶ 54.)

---

[3] As noted supra, as it pertains to Plaintiff's motion, these facts are deemed admitted due to Defendants' failure to file a response in accordance with Local Rule 56.1. The DSUMF (Doc. No. 76) does not address the payment of minimum wage or overtime wages because Defendants rest on the argument that they are not covered by the FLSA and thus not governed by the statutory requirements set forth therein.

[4] In Plaintiff's response to the DSUMF, Plaintiff challenges several of Defendants' assertions regarding the Department of Labor's investigation, the relevant fact sheets promulgated by the Department of Labor discussing the FLSA's application, as well as the purported good faith of

On February 15, 2022, Plaintiff initiated the instant action against Defendants, filing a complaint alleging that Defendants violated the following FLSA provisions: Section Six (6), the minimum wage provision; Section Seven (7), the overtime provision; Section Eleven (11), the recordkeeping provision; and Sections Fifteen (15)(a)(2) and (a)(5), the anti-retaliation provisions. (Doc. No. 1.) On April 29, 2022, Defendants filed an answer. (Doc. No. 7.) On

---

Defendant Hernandez in complying with the FLSA. (Doc. Nos. 76 ¶¶ 13–28; 80 ¶¶ 13–28.) Plaintiff also responds to Defendants' statements addressing: (a) whether Defendants engage in interstate commerce; (b) whether Defendants provide companionship services, and accordingly if they qualify for the Companionship Exemption to the FLSA; (c) if the Department of Labor fact sheets and final rule interpreting the Companionship Exemption are void for vagueness; (d) the appropriateness of liquidated damages; and (e) whether Plaintiff, Acting Secretary Su, has the authority to pursue this case in the first place. (Doc. Nos. 76 ¶¶ 28–131; 80 ¶¶ 28–131.) Simply put, these are not relevant material facts. They generally involve legal questions, or mixed questions of law or fact. While the Court will consider all these arguments in the discussion section of this memorandum, the Court is unpersuaded that highlighting the many objections and disputes raised in the cited paragraphs of these filings would serve any purpose but to confuse the reader. See, e.g., Guerrero-Lasprilla v. Barr, 589 U.S. 221, 238, (2020) (Thomas, J., dissenting) (noting that "[f]or well over a century, this Court has recognized questions of law, questions of fact, and mixed questions of law and fact as three discrete categories"); see also Walsh v. E. Penn Mfg. Co., 555 F. Supp. 3d 89, 130 (E.D. Pa. 2021) (holding that "[w]hether an employer's conduct under the FLSA was in good faith and reasonable is a mixed question of law and fact") (citing Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007)); Sloane v. Gulf Interstate Field Servs., Inc., No. 15-cv-01208, 2016 WL 878118, at *5 (W.D. Pa. Mar. 8, 2016) (stating that "federal courts have held that whether a plaintiff falls within a particular exemption under the FLSA overtime provision constitutes a mixed question of law and fact, and ultimately requires courts to examine the historical and record facts"); San Filippo v. Bongiovanni, 961 F.2d 1125, 1133 (3d Cir. 1992) (finding that the application of the "void for vagueness doctrine" is "purely an issue of law").

Pending before the Court is Defendants' motion (Doc. No. 92) to strike Plaintiff's PCUMF (Doc. No. 80). In the brief in support of their motion, Defendants argue that Plaintiff's PCUMF "is not short and concise" and contains improper legal conclusions. (Doc. No. 92-1 at 3–8.) Simply put, Defendants in the DSUMF, and Plaintiff in the PCUMF, each promulgate legal arguments and conclusions. The Court disregards these legal arguments in formulating the fact section of this memorandum, thus ensuring that the fact section contains only the material facts necessary to the resolution of the pending motions and instead addresses these arguments infra in the discussion section of this memorandum. Accordingly, the Court will deny Defendants' motion (Doc. No. 92) to strike.

5

June 29, 2022, following the filing of a case management plan, the Court set a close of fact

discovery date of December 30, 2022.  (Doc. Nos. 11, 13.)  On August 29, 2022, the Court

referred this case to Magistrate Judge Carlson for the purpose of conducting a settlement

conference.  (Doc. No. 15.)  When the case did not settle, the Court received and granted several

motions to extend the time to complete discovery.  (Doc. Nos. 17, 18, 19, 20, 23, 24, 25, 28, 29,

32, 33.)  On June 21, 2023, Defendant filed a Motion Upon Stipulation for a Protective Order

pursuant to Federal Rule of Evidence 502(d) (Doc. No. 34), and the Court granted this motion

(Doc. No. 35).  On August 31, 2023, the Court referred the parties to Magistrate Judge Schwab

for the purpose of conducting a settlement conference.  (Doc. No. 40.)  Following notification

that this case again did not settle (Doc. No. 47), the Court set a dispositive motion deadline of

April 1, 2024 (Doc. No. 49).

On March 29, 2024, the Court granted Defendants' unopposed motion to extend the

dispositive motion deadline to April 15, 2024, and permitted the parties to exceed the page limit

delineated in the Local Rules of this Court.  (Doc. No. 55.)  On April 15, 2024, both parties

moved for summary judgment.  (Doc. Nos. 57, 58.)  Plaintiff filed a Statement of Undisputed

Material Facts with her motion.  (Doc. No. 58-4.)  On April 17, 2024, Plaintiff filed twenty-four

(24) exhibits in support of her motion for summary judgment.  (Doc. Nos. 63 through 63-23.)

On April 29, 2024, Plaintiff filed a brief in support of her motion. (Doc. No. 64.)  On April 30,

2024, Defendants filed a Statement of Undisputed Facts (Doc. No. 67), as well as several

exhibits in support of their motion for summary judgment (Doc. Nos. 67-1 through 67-19).

Defendants also filed a brief in support of their motion for summary judgment (Doc. No. 68),

which was later stricken due to a failure to adhere to the page limit prescribed in the Court's

March 29, 2024 Order.  <u>See</u> (Doc. No. 74).  On May 22, 2024, Defendants filed a revised brief in

6

Appx6

support of their motion for summary judgment (Doc. No. 75), a new Statement of Undisputed

Facts (Doc. No. 76), and twenty (20) exhibits (Doc. Nos. 76-1 through 76-20).  On June 5, 2024,

Plaintiff filed a motion (Doc. No. 77) to strike any reference to "Exhibit T" (Doc. No. 76-20) in

Defendants' filings.  That same day, Plaintiff filed a brief in support of its motion to strike.  (Doc.

No. 78.)  On June 11, 2024, Plaintiff filed a brief opposing Defendants' motion for summary

judgment (Doc. No. 79), as well as an answer to Defendants' statement of facts (Doc. No. 80).

On June 18, 2024, Defendants filed a brief opposing Plaintiff's motion to strike "Exhibit T."

(Doc. No. 81.)   On June 25, 2024, Defendants filed an untimely brief in opposition to Plaintiff's

motion for summary judgment.  (Doc. No. 82.)[5]  On July 2, 2024, Plaintiff filed a reply brief in

---

[5]  In the Court's May 15, 2024 Order, the Court explicitly delineated that "[t]he parties shall have until June 11, 2024 to respond to the respective motions for summary judgment."  (Doc. No. 74 at 3.)  Defendants' brief, filed on June 25, 2024, is thus untimely.  In accordance with Local Rule 7.6, parties who fail to respond to motions in the time limits prescribed by the Local Rules or court orders "shall be deemed not to oppose such motion."  See L.R. 7.6.  The Court therefore rejects Defendants' filing as untimely, and Plaintiff's motion for summary judgment is deemed unopposed.  However, for the sake of a complete record, the Court has reviewed Defendants' opposition brief.  Nothing in the brief alters the analysis contained infra, and in fact, the brief largely contains arguments set forth in Defendants' briefing in support of their own motion for summary judgment.

The Court further observes that, on July 30, 2024, Defendants filed a motion for leave, seeking permission to file an untimely brief in opposition to Plaintiff's motion for summary judgment. (Doc. No. 94.)  Attached to that motion is a proposed brief (Doc. No. 94-1), as well as a proposed response to PSUMF (Doc. No. 94-2).  The Court notes that the arguments raised in the proposed brief (Doc. No. 94-1), are largely the same as those raised in the original untimely filed brief (Doc. No. 82).  Each of Defendants' substantive arguments are already addressed infra in the discussion section of this memorandum.  Defendants raise only one new line of argument, relating to the insufficiency of Plaintiff's back wage calculations, and the Court will address that infra, in the discussion of Plaintiff's motion for summary judgment.  However, nothing in the proposed brief alters the Court's analysis or conclusion in this case.

As it pertains to Defendants' proposed response to PSUMF (Doc. No. 94-2), the Court notes that Defendants filed this proposed response more than a month after the Court's Order instructing the parties to respond to the pending summary judgment motions by June 11, 2024 (Doc. No. 74 at 3).  To that end, in accordance with Local Rules 7.6 and 56.1, the Court will not permit the filing of Defendants' proposed response to PSUMF.  See L.R. 7.6 (providing that the "LR 56.1

Appx7

support of its motion to strike.  (Doc. No. 86.)  On July 8, 2024, Defendants filed a motion for a status conference.  (Doc. No. 87.)  On July 9, 2024, Plaintiff filed a brief opposing Defendants' motion for a status conference.  (Doc. No. 88.)  On July 18, 2024, Plaintiff filed a motion to amend her response to Defendants' DSUMF.  (Doc. No. 89.)  Plaintiff subsequently filed a brief in support of her motion.  (Doc. No. 90.)  On July 23, 2024, Defendants filed a motion (Doc. No. 92) to strike Plaintiff's counter statement of material facts (Doc. No. 80), and subsequently filed a brief in support of that motion (Doc. No. 93).  On July 30, 2024, Defendants filed a motion for leave to permit them to file their brief in opposition to Plaintiff's motion for summary judgment outside of the Court's prescribed deadlines.  (Doc. No. 94.)  Defendants also filed their proposed brief opposing Plaintiff's motion for summary judgment (Doc. No. 94-1), proposed response to PSUMF (Doc. No. 94-2), as well as a brief in support of their motion for leave (Doc. No. 95). Accordingly, the pending motions are fully briefed and ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49

---

responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief"); see also L.R. 56.1 (noting that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").

Appx8

(1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. See id. at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. See Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. See Anderson, 477 U.S. at 249–50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

Additionally, the "[c]oncurrent resolution of cross-motions for summary judgment can present a formidable task," because Federal Rule of Civil Procedure Fifty-Six (56) requires that the "court view all facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences."  See Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004).  To that end, while "[c]ourts are permitted to resolve cross-motions for summary judgment concurrently[,] . . . [w]hen doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion."  See Hawkins v. Switchback MX, LLC, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018) (citations omitted); see also Richman & Richman Real Est., LLC v. Sentinel Ins. Co., Ltd., No. 16-cv-01855, 2017 WL 4475963, at *2 (E.D. Pa. June 13, 2017) (noting that "[c]ourts treat cross-motions for summary judgment as if they were distinct, independent motions, and must rule on each party's motion on an individual and separate basis").

**B.    Motion to Strike Under Federal Rule of Civil Procedure 12(f)**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief."  Del. Health Care Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1292 (D. Del. 1995).  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  Cech v. Crescent Hills Coal Co., No. 96-cv-02185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002).  "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court."  Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988).  While courts are specifically empowered with the ability to invoke Rule 12(f) sua sponte, striking a pleading is a

10

Appx10

drastic remedy and should be used sparingly.  See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000).  "Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is 'clearly apparent.'"  Thomas v. Keystone Real Estate Grp., No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015) (quoting Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986)).  Therefore, as a general rule, motions to strike are disfavored, and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some significant form of prejudice to one of the parties to the action."  See Mifflinburg Tel., Inc. v. Criswell, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (citations omitted); Powell v. Wetzel, No. 12-cv-02455, 2014 WL 2472048, at *4 (M.D. Pa. Feb. 25, 2014) (citations omitted); Trivedi v. Slawecki, No. 11-cv-02390, 2013 WL 1767593, at *2 (M.D. Pa. Apr. 24, 2013) (citations omitted).

## III.    DISCUSSION

The Court first examines the applicable legal standards and relevant FLSA provisions, before addressing Plaintiff's motion for summary judgment.  The Court then examines Defendants' motion for summary judgment and the appropriate remedies, before addressing Plaintiff's motion to strike.

### A.    The FLSA's Coverage and Relevant Provisions

The FLSA was enacted in 1938 "to protect covered workers from substandard wages and oppressive working hours."  See Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992).  Pursuant to 29 U.S.C. § 206(a)(1)(C), employees "who, in any workweek, are engaged in commerce or the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce" must be paid at least seven dollars and twenty-five cents ($7.25) in hourly wages.  See Rui Tong v. Henderson Kitchen Inc., No. 17-cv-

11

01073, 2018 WL 4961622, at *3 (E.D. Pa. Oct. 12, 2018) (citing 29 U.S.C. § 206(a)(1)(C)).

"The FLSA's minimum wage provisions apply to those that fall under the statutory definition of

'employees' and 'employers.'" Burrell v. Staff, 60 F.4th 25, 43 (3d Cir. 2023). "When

determining whether someone is an employee under the FLSA, 'economic reality rather than

technical concepts is to be the test of employment.'" In re Enter. Rent-A-Car Wage & Hour

Emp. Pracs. Litig., 683 F.3d 462, 467 (3d Cir. 2012) (citation omitted). Because the FLSA was

"part of the large body of humanitarian and remedial legislation enacted during the Great

Depression," see Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987), courts generally

recognize the liberal definitions of employer and employee contained therein. See Burrell, 60

F.4th at 43.

To that end, the FLSA defines an employer as "any person acting directly or indirectly in

the interest of an employer in relation to an employee and includes a public agency, but does not

include any labor organization (other than when acting as an employer) or anyone acting in the

capacity of officer or agent of such labor organization," see 29 U.S.C.§ 203(d), and defines an

employee as "any individual employed by an employer." See 29 U.S.C. § 203(e)(1). "Because

of the breadth of the FLSA, the employer need not necessarily have ultimate control for an

employer-employee relationship to exist; even indirect control may be sufficient. In other words,

the alleged employer must exercise significant control." Solis v. A-1 Mortg. Corp., 934 F. Supp.

2d 778, 788 (W.D. Pa. 2013) (cleaned up). Additionally, in order to determine whether a joint

employment relationship exists under the FLSA, insofar as multiple entities can simultaneously

be classified as someone's "employer," the United States Court of Appeals for the Third Circuit

has set forth a four-part test in which courts should consider the alleged employer's "(1)

'authority to hire and fire' the relevant employees; (2) 'authority to promulgate work rules and

assignments' and to set the employees' conditions of employment; (3) 'involvement in day-to-day employee supervision, including employee discipline;' and (4) 'actual control of employee records, such as payroll, insurance, or taxes.'"  See Sec'y United States Dep't of Lab. v. Mosluoglu, Inc., No. 22-2749, 2023 WL 5972044, at *2 (3d Cir. Sept. 14, 2023) (citing In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469); see also Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 153 (3d Cir. 2014) (noting that "[a]side from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA").  When an employee is subject to FLSA coverage because they "are employed in an enterprise engaged in commerce or the production of goods for commerce," courts often refer to their employer as having "enterprise coverage."  See Quagliariello v. DiPasquale, No. 20-cv-00699, 2021 WL 2287426 at *6 (M.D. Pa. Feb. 9, 2021).

The FLSA minimum wage provision applies to employers and employees who are "engaged in commerce or the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce."  See 29 U.S.C. § 206(a).  Congress further specified that "the employment of persons in domestic service in households affects commerce," see 29 U.S.C § 202(a), and thus domestic service employers and their employees receive FLSA minimum wage protections.  Additionally, the FLSA defines an "[e]nterprise engaged in commerce or in the production of goods for commerce" as one who:

 (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

(B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted

13

children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit); or

(C) is an activity of a public agency.

<u>See</u> 29 U.S.C. § 203(s)(1).

Furthermore, as it pertains to overtime wages, 29 U.S.C. § 207(a)(1) provides that:

no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

<u>See</u> 29 U.S.C. § 207(a)(1).  Accordingly, the triggering language in the FLSA overtime provision is identical to that contained in the minimum wage provision: employers and employees engaged in commerce are subject to the FLSA's overtime provision.  <u>See id.</u>

However, as it pertains to overtime pay, Congress crafted an exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  <u>See</u> 29 U.S.C § 213(15).  In 2015, the Department of Labor clarified the application of the Companionship Exemption from the FLSA overtime requirement, stating that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services."  <u>See</u> 29 C.F.R. § 552.109.  The regulation further provides that "the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption, if the employee meets all of the requirements of § 552.6."  <u>See id.</u>  29 C.F.R. § 552.6 defines companionship services as the

14

Appx14

provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being.

See 29 C.F.R. § 552.6.

Besides establishing "baseline standards through 'federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract,'" see Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 329–30 (3d Cir. 2016) (citation omitted), the FLSA also includes robust recordkeeping requirements. 29 U.S.C. § 211(c) requires, in relevant part, that "[e]very employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." See 29 U.S.C. § 211(c). Further, regulations promulgated by the Department of Labor require an employer to "maintain and preserve payroll or other records . . . with respect to each employee to whom section 6 or both sections 6 and 7(a) of the [Fair Labor Standards] Act apply," and requires that those records contain the "[t]ime of day and day of week on which the employee's workweek begins," the "regular hourly rate of pay for any workweek in which overtime compensation is due," and the "[h]ours worked each workday and total hours worked each workweek." See 29 C.F.R. § 516.2(a)(5)–(7). The United States Court of Appeals for the Third Circuit further specified that 29 U.S.C. § 211(c) requires "employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked." See Williams v. Tri-Cnty. Growers, Inc., 747 F.2d 121, 128 (3d Cir. 1984) (emphasis added).

**B.    Plaintiff's Motion for Summary Judgment**

Plaintiff asks the Court to grant summary judgment in her favor as to nine issues: (1) Defendant WiCare and its direct care workers are covered by the FLSA; (2) Defendant Hernandez is individually liable as an employer under the FLSA; (3) Defendants violated the FLSA's minimum wage provision; (4) Defendants violated the FLSA's overtime provision; (5) Defendants violated the FLSA's recordkeeping provision; (6) Defendants' FLSA violations were willful; (7) Defendants are liable for five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages; (8) Defendants are liable for liquidated damages; and (9) Defendants are enjoined from further FLSA violations.  (Doc. No. 58-1.)

> **1.    Whether Defendant WiCare and its Employees are Covered by the FLSA**

Plaintiff asserts that Congress made a clear choice in enacting Section 2(a) of the FLSA, in which it specifically noted that "domestic service employees affect commerce."  (Doc. No. 64 at 11.)  Plaintiff argues that, because Defendants effectively concede that their employees are engaged in domestic service, it follows that said employees are subject to the FLSA's protections.  (Id.)  Plaintiff further asserts that, even if Defendants' employees are not explicitly covered under the FLSA, Section 3(s)(1)(A) covers Defendant Wicare as an employer, insofar as Defendant WiCare is engaged in providing domestic services and its annual dollar value exceeds five-hundred thousand ($500,000) dollars.  (Id.)

As an initial matter, Congress made a clear choice in 29 U.S.C § 202(a), delineating that "Congress further finds that the employment of persons in domestic service in households affects commerce."  See 29 U.S.C. § 202(a); see also Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959) (noting that "within the tests of coverage fashioned by Congress, the [FLSA] has been construed liberally to apply to the furthest reaches consistent with

16

Appx16

congressional direction").  As discussed <u>supra</u>, FLSA's minimum wage and overtime provisions apply to employers or employees "engaged in commerce or the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce."  <u>See</u> 29 U.S.C. § 206(a).  Since Congress explicitly declared that domestic service workers affect commerce, the Court next must determine whether Defendant WiCare and its employees are engaged in domestic service.  To that end, 29 C.F.R. § 552.3 specifically provides that:

> the term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as <u>companions</u>, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.

<u>See</u> 29 C.F.R. § 552.3 (emphasis added).  It is undisputed that Defendant WiCare provides "in-home care" and employs "persons in domestic service for profit."  (Doc. No. 58-4 ¶¶ 2–3); <u>see also</u> (Doc. No. 63-2 at 6 (containing Defendants' responses to Plaintiff's requests for admission, in which Defendants assert that their employees qualify for the "Companionship Services Exemption" to the FLSA).)  Considering the text of 29 C.F.R. § 552.3, the Court finds that Defendants and its employees perform domestic services and thus are "engaged in commerce" pursuant to the FLSA.  <u>See</u> 29 U.S.C. § 206(a).  Accordingly, the Court will grant Plaintiff's motion for summary judgment on the question of whether Defendant WiCare and its employees are covered under the FLSA.

**2.    Whether Defendant Hernandez is an "Employer" under the FLSA**

Plaintiff offers several arguments in support of her position that Defendant Hernandez is a covered "employer" and thus personally liable for damages under the FLSA.  Plaintiff asserts that Defendant Hernandez is the "sole owner and President of WiCare," manages "hiring, firing,

scheduling, supervising, disciplining, and setting the policies and conditions of employees," and requires all direct care workers to sign employee agreements before beginning work for WiCare. (Doc. No. 64 at 13.)  It follows, according to Plaintiff, that Defendant Hernandez is an employer under the relevant authority.  (Id. at 14.)  Defendants do not offer any timely arguments in response to Plaintiff's assertion as to Defendant Hernandez's personal liability.[6]

As discussed supra, the Third Circuit articulated a four-part test for courts to utilize when examining "a potential joint employment relationship under the FLSA."  See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469.[7]  This Court accordingly considers:

> (1) the alleged employers authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

See id. (hereinafter the "Enterprise" factors).

On the first factor, in PSUMF, Plaintiff notes that Defendant Hernandez is the "sole owner" of WiCare, has served in that role since 2018, and is responsible for decisions ranging from hiring and firing to compensation policies.  (Doc. No. 58-4 ¶¶ 5–8.)  Accordingly, there is no genuine dispute that Defendant Hernandez, as the sole owner of WiCare with operational

---

[6]  In their untimely brief opposing Plaintiff's motion for summary judgment, Defendants argue that "[t]he people acting in the interest of an employer are defined as part of . . . the employer," and thus Defendant Hernandez "is WiCare."  (Doc. No. 82 at 10.)  Defendants do not cite any authority in support of their position.

[7]  The question of whether a joint employment relationship exists is pertinent because the Court decided supra that Defendant WiCare is covered by the FLSA.  Accordingly, if Defendant Hernandez is found to be a joint employer with Defendant WiCare, Defendants together would be jointly liable for any FLSA violations.

responsibilities, possesses the authority to hire and fire employees.  This cuts in favor of finding that Defendant Hernandez is an employer pursuant to the FLSA.

As to the second factor—the alleged employer's authority to promulgate work rules and assignments and to set conditions of employment—it is undisputed that Defendant Hernandez "made decisions related to compensation policies affecting Defendant WiCare's employees." (Id. ¶¶ 7–8.)  It is further undisputed that "[d]uring the relevant period, Defendant Luis Hernandez's duties also included supervising employees and promulgating work rules and assignments."  (Id. ¶ 9 (citing Doc. No. 63-3 at 6).)[8]  Accordingly, Defendants raise no genuine dispute on the question of whether Defendant Hernandez exercised sufficient control over the work rules and employment conditions.  This factor also points towards a finding that Defendant Hernandez is an employer under the FLSA.

The third factor examines "the alleged employer's involvement in day-to-day supervision."  See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469. Because neither party discusses this element at any length as it pertains to Defendant Hernandez individually, the Court therefore finds that this factor is neutral.

Finally, in examining the fourth Enterprise factor, Plaintiff asserts that Defendant Hernandez "is in control of employee records."  (Doc. No. 64 at 11.)  It is undisputed that Defendant Hernandez was "responsible for . . . maintaining employees' pay records."  (Doc. No.

---

[8]  Docket Number 63-3 consists of interrogatory responses from Defendants.  In paragraph ten (10), which Plaintiff cites, Defendants concede that Defendant Hernandez was involving with "hiring, terminating employment, training, supervising, scheduling, timekeeping, setting rates of pay, maintaining employment records, assigning work, determining benefits, setting employment policies, reviewing or administering payroll, and signing or distributing paychecks."  See (Doc. No. 63-3 at 6).

58-4 ¶ 7.)  Accordingly, this factor also cuts in favor of finding a joint employment relationship, whereby Defendant Hernandez can be considered an employer under the FLSA.

The Third Circuit has stated that the four Enterprise factors are "not exhaustive."  See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469.  However, because the Court observes no other "indicia" which reflect that Defendant Hernandez does not have "significant control" over Defendant WiCare, and further observes that three of the four Enterprise Factors favor a finding of joint employment, the Court concludes that Defendant Hernandez is an employer and thus covered by the FLSA in his individual capacity.  See id.; see also Thompson, 748 F.3d at 153 (noting that "[a]side from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA").  Accordingly, because Defendants fail to provide evidence raising a genuine dispute of material fact on this issue, the Court will grant Plaintiff's motion for summary judgment as to the question of whether Defendant Hernandez is liable for his FLSA violations as an employer.

### 3.    Whether Defendants Failed to Comply with FLSA's Minimum Wage Requirement

Plaintiff moves for summary judgment on the question of whether Defendants violated the FLSA's minimum wage provision, set forth at 29 U.S.C. § 206.  It is undisputed that eighty-eight (88) employees are owed sixty-one thousand, three hundred and fifty-four dollars and eighty-four cents ($61,354.84) due to Defendants' failure to pay them the minimum wage required by the FLSA.  (Doc. No. 58-4 ¶ 37.)  Accordingly, viewing the record as a whole, and construing all facts in the light most favorable to Defendants, the Court finds that summary judgment as to Plaintiff's minimum wage claim is proper.  As noted supra, Defendants filed an untimely brief opposing Plaintiff's motion for summary judgment and did not file a response to

PSUMF.  Instead, Defendants appear to rest on the argument that they and their employees are not covered by the FLSA.  However, the Court has determined that Defendant WiCare, its employees, and Defendant Hernandez, are covered by the FLSA and thus subject to the statute's minimum wage provision.  Because there is no factual dispute that Defendants did not pay all their employees minimum wages, the Court will grant Plaintiff's motion for summary judgment as to Defendants' violation of the FLSA's minimum wage provision.

      **4.**        **Whether Defendants Failed to Comply with FLSA's Overtime Requirement**

Plaintiff also moves for summary judgment as to Defendants' violation of the FLSA's overtime wage provision, set forth at 29 U.S.C. § 207(a)(1).  It is undisputed that one-hundred and eighty-one (181) workers are owed four hundred and sixty-eight thousand, four hundred and fourteen dollars, and twenty-five cents ($468,414.25) in back wages due to overtime violations. (Doc. No. 58-4 ¶ 35.)  Accordingly, viewing the record as a whole, and construing all facts in the light most favorable to Defendants, the Court finds that summary judgment as to Plaintiff's overtime claim is proper.  As noted <u>supra</u>, Defendants filed an untimely brief opposing Plaintiff's motion for summary judgment and did not file a response to PSUMF.  Instead, Defendants again rest on the argument that they and their employees are not covered by the FLSA.  However, the Court has determined that Defendant WiCare, its employees, and Defendant Hernandez, are covered by the FLSA and thus subject to the statute's requirement that workers receive one and half (1.5) times their normal wages for hours worked in excess of forty (40) hours in a week. Because there is no factual dispute that Defendants did not pay all their employees the proper

Appx21

overtime premiums, the Court will grant Plaintiff's motion for summary judgment as to Defendants' violation of the FLSA's overtime requirement.[9]

**5.    Whether Defendants Failed to Comply with FLSA's Recordkeeping Provision**

Plaintiff moves for summary judgment as to Defendants' alleged violation of the FLSA's recordkeeping provision, set forth at 29 U.S.C. § 211(c), maintaining that Defendants "submitted inaccurate payroll records," and "admitted that the hours on their payroll records are not consistent" with employee time records.  (Doc. No. 64 at 19.)  It is undisputed that "Defendant's payroll records and time records show inconsistencies between hours worked and hours paid. There were instances where an employee's time sheet reflected hours worked that did not appear in the corresponding payroll record."  (Doc. No. 58-4 ¶ 25.)  In PSUMF, she cites, as an example, the payroll document and time record for Ms. Adelaida Soto Martinez ("Ms. Soto Martinez").  (Id.)  Ms. Soto Martinez's time record indicates that she worked seventy-two (72) hours during the pay period running from January 26, 2020, to February 1, 2020, but was paid only for thirty-six (36) hours of work.  (Doc. No. 63-10.)  Plaintiff also cites the Declaration of Edna Berrios ("Ms. Berrios"), another of Defendants' employees.  (Doc. No. 58-4 ¶ 25 (citing Doc. No. 63-11).)  In her Declaration, Ms. Berrios asserted, under penalty of perjury, that she was "generally not paid time and a half" for hours worked over forty (40) in one work week.

---

[9]  In the proposed brief opposing Plaintiff's motion for summary judgment (Doc. No. 94-1), Defendants assert that Plaintiff has not provided admissible evidence regarding the basis for its damages computation (id. at 9–12), and further maintain that Plaintiff's damages calculations require expert testimony, which Plaintiff has not provided here (id. at 12–14).  However, the Court observes that Plaintiff submitted the Declaration of Department of Labor Investigator Maria Nunez (Doc. No. 63-8), in which Ms. Nunez outlines, at some length, how she calculated the back wages owed to Defendants' employees.  Additionally, Defendants fail to cite any binding authority which requires expert testimony in support of back wage calculations. Accordingly, Defendants' arguments on this point are unavailing.

Appx22

(Doc. No. 63-11.)  Plaintiff further cites the Declaration of Parbatie Samaroo, who stated under

penalty of perjury that Defendants "would routinely pay me for fewer hours than I actually

worked."  (Doc. No. 63-12.)  Finally, it is undisputed that Defendants "were missing entire

payroll records for at least two employees."  (Doc. No. 58-4 ¶ 26 (citing Doc. No. 63-8

(containing the Declaration of Investigator Maria Nunez of the United States Department of

Labor)).)

Viewing the record as a whole and in the light most favorable to Defendants as the non-

moving party, the Court concludes that there is no genuine dispute of material fact as to whether

Defendants violated FLSA's recordkeeping provision, and the Court will therefore grant

summary judgment for Plaintiff on that question.  As an initial matter, "an employer commits a

per se recordkeeping violation exists when its records are inadequate."  See Walsh v. E. Penn

Mfg. Co., 555 F. Supp. 3d 89, 113 (E.D. Pa. 2021).  Under the FLSA, an employer may not

"manipulate the records to reduce the number of hours worked."  See Solis, 934 F. Supp. 2d at

806.  Here, Plaintiff presents both payroll and time record evidence, as well as declarations from

multiple employees, in support of the fact that there are inexplicable discrepancies.  The

evidence of record indicates that several employees submitted timesheets reflecting their hours

worked, while the corresponding pay records indicate that they were not paid for all of these

hours.  See (Doc. Nos. 63-9; 63-13).  This necessarily implies the inaccuracy of some records.

Further, because 29 C.F.R. § 516.2 requires employers to "maintain and preserve payroll or other

records . . . with respect to each employee to whom section 6 or both sections 6 and 7(a) of the

Act apply," see 29 C.F.R. § 516.2, and in light of the Court's holding supra that sections six (6)

and seven (7) of the FLSA apply to Defendants and their employees, as well as the undisputed

facts indicating that many employees saw missing hours during pay periods, with others missing

entire weeks, (Doc. No. 58-4 ¶¶ 25–26), it follows that Defendants violated 29 U.S.C. § 211(c)'s accurate recordkeeping requirement.  Because Defendants offer no argument to the contrary, and considering the evidence of record, which clearly supports Plaintiff's position, the Court finds that no reasonable factfinder could conclude that Defendants complied with the FLSA recordkeeping provision and will accordingly grant Plaintiff's motion as to Defendants' FLSA recordkeeping violations.  Before addressing Plaintiff's arguments as to the appropriate remedies for Defendants' FLSA violations, the Court first evaluates Defendants' motion for summary judgment.

### B.    Defendants' Motion for Summary Judgment

In their brief in support of their motion for summary judgment, Defendants argue that: (1) they do not engage in interstate commerce (Doc. No. 75 at 3–8); (2) their employees are exempt from overtime (id. at 8–9); (3) the Department of Labor fact sheets and final rule (clarifying the scope of the Companionship Exemption) are "incoherent;" (id. at 7–17); (4) the Department of Labor fact sheets and rule interpreting the Companionship Exemption, 29 C.F.R. § 552.109, are entitled to no deference (id. at 17–19); (5) 29 C.F.R. § 552.109 is void for vagueness (id. at 19–21); (6) liquidated damages are inappropriate in this case (id. at 21); (7) the Court should not use a three (3) year lookback period for determining Defendants' alleged FLSA violations (id. at 21–23); and (8) the Department of Labor lacks the authority to pursue this litigation (id. at 23–30). To that end, the Court determines whether to grant Defendants' summary judgment on the question of whether they are covered under the FLSA, before discussing their argument that Acting Secretary Su lacks the authority to pursue this litigation.[10]

---

[10]  The Court will only examine these two (2) questions pertaining to Defendants' motion, because Defendants assert no arguments on whether they failed to adhere to the FLSA minimum

1.      **Whether Defendants and their Employees are Covered Under the FLSA**

In evaluating Defendants' motion for summary judgment as to their position that they, and their employees, are not covered by the FLSA and thus not subject to the statutory requirements contained therein, the Court views the record as a whole and construes all facts in the light most favorable to Plaintiff, as the non-moving party.

Defendants maintain that they do not engage in interstate commerce and thus the FLSA does not apply to them. (Doc. No. 75 at 4.) As it pertains to Defendant WiCare's enterprise coverage, Defendants assert that they do not act as "enterprise" pursuant to Section 203 of the FLSA. (Id. at 5.) Defendants further maintain that their employees are not covered by the FLSA, because their employees work in private homes, do not distribute, purchase, or sell goods in interstate commerce, and remain within the Commonwealth of Pennsylvania, never crossing state lines as part of their work. (Id. at 7.) Defendants assert that any materials utilized by employees in the performance of their duties "are provided by the client from within the client's household" and thus no interstate transactions occur. (Id. at 8.) In response, Plaintiff reiterates her arguments discussed supra, namely that Defendants and their employees are covered entities under the FLSA and that no FLSA exemption applies. (Doc. No. 79 at 2–5.)

In considering the foregoing, the Court reiterates that, as discussed supra in connection with Plaintiff's motion for summary judgment, there is no genuine dispute of material fact that Defendant WiCare and its employees are engaged in domestic service and therefore covered by the FLSA. However, Defendants offer alternative arguments in attempting to remove themselves from the FLSA's reach. Defendants maintain that the Department of Labor's fact sheets and final

---

wage, overtime, and recordkeeping provisions. Any arguments discussing the appropriate remedies will be addressed infra in the remedies section of this memorandum.

regulation do not clearly explain when an entity should be exempted from the FLSA's coverage. (Doc. No. 75 at 9–18.)  Defendants further argue that the final regulation clarifying the Department of Labor's Companionship Exemption, 29 C.F.R. § 552.109, is "void for vagueness."  (Id. at 19–21.)  The Court addresses each argument in turn.

### a.    Department of Labor Fact Sheets

Defendants rely heavily on two Department of Labor fact sheets interpreting the Companionship Exemption to the FLSA: Fact Sheet #25 and Fact Sheet #79A.  (Id. at 10.)  As discussed supra, Congress crafted a FLSA exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  See 29 U.S.C § 213(15).  In other words, the minimum wage and overtime provisions of the FLSA do not apply to those who engage in companionship services, subject to regulations promulgated by the Secretary of Labor.  The Secretary of Labor accordingly provided several pieces of guidance, including the cited fact sheets.

Defendants first cite Fact Sheet #25, which the Wage and Hour Division of the United States Department of Labor promulgated in September of 2013.  (Doc. No. 76-4.)  Fact Sheet #25A outlines how the FLSA Companionship Exemption applies to workers in the home health care industry.  The fact sheet states, in relevant part, as follows: "[a]n employee who performs companionship services in or about the private home of the person by whom he/she is employed is exempt from the FLSA's minimum wage and overtime requirements if all criteria of the exemption are met."  (Doc. No. 76-4 at 2.)  Defendants assert that Defendant Hernandez could have taken the language of this fact sheet to mean that his employees, who provide home

26

Appx26

companionship services, need not be paid minimum wage or overtime payments.  (Doc. No. 75 at 11.)

Defendants also cite Fact Sheet #79A, which the Wage and Hour Division of the United States Department of Labor also published in September of 2013.  (Doc. No. 76-5.)  Fact Sheet #79A further explains how companionship services are classified under the FLSA.  The document explains who can claim the Companionship Exemption, delineating that "the exemption is only available to the individual, family, or household solely or jointly employing the worker, and only if the companionship services duties test set forth above is met."  See (id.).  Referring to the "companionship services duties test," Fact Sheet #79A states:

> [u]nder the revised regulations, effective January 1, 2015, the term 'companionship services' means the provision of fellowship and protection for an elderly person or a person with an illness, injury, or disability who requires assistance in caring for himself or herself. Such individuals are sometimes referred to as 'consumers' in this fact sheet. The term 'companionship services' also includes the provision of care, when the care is provided attendant to and in conjunction with the provision of fellowship and protection, and does not exceed 20 percent of the total hours worked per consumer and per workweek.

See (id.).  Fact Sheet #79A further states that:

> [t]hird party employers of direct care workers (such as home care staffing agencies) are not permitted to claim the exemption for companionship services. Third party employers may not claim the exemption even when the employee performs companionship services and is jointly employed by the third party employer and the individual, family, or household using the services. Accordingly, third party employers must pay their workers the Federal minimum wage for all hours worked and overtime pay at time and one-half of the regular rate of pay for all hours worked over 40 in a workweek.

See (id.).  As it pertains to Fact Sheet #79A, Defendants assert that the language explaining who can claim the exemption is "word salad" and further maintain that the "only available" language, in which the Department of Labor specified that "the exemption is only available to the individual, family, or household solely or jointly employing the worker, and only if the companionship services duties test set forth above is met," contradicts the plain language of the

27

Appx27

FLSA.  (Doc. No. 75 at 12–13.)  Defendants maintain that the reference to "home care staffing agencies" is confusing because the language appears to restrict the universe of potential exemption claimants.  See (id. at 14).  Further, Defendants claim that the rest of the paragraph "could be interpreted in 10 different ways."  (Id. at 14.)

In response, Plaintiff asserts that: (1) Defendants conflate sub-regulatory guidance, which lacks the force of law, with 29 C.F.R. § 552.109, the final regulation clarifying the parameters of the Companionship Exemption, which underwent notice and comment rulemaking; and (2) the fact sheets are sufficiently clear as to the application of the Companionship Exemption, and Defendants only allege confusion to attempt to justify their non-compliance.  (Doc. No. 79 at 13–14.)

The Court observes that the cited fact sheets promulgated by the Department of Labor are both pieces of sub-regulatory guidance, insofar as they did not go through notice and comment rulemaking and thus do not have the force of law.  See Hayes v. Harvey, 903 F.3d 32, 46 (3d Cir. 2018) (holding that "guidance documents lack the force of law" in discussing the level of deference given to said documents).  Both Fact Sheet #25 and #79A also contain the same disclaimer at bottom, which reads: "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public in any way.  This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies." (Doc. Nos. 76-4 at 3; 76-5 at 4.)  To the extent that Defendants rely on either of these guidance documents to justify their non-compliance with the FLSA, the Court finds such an argument unavailing.

### b.     The Companionship Exemption

As discussed supra, in drafting the FLSA, Congress crafted an exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." See 29 U.S.C § 213(15).  In 2015, the Department of Labor clarified the application of the Companionship Exemption from the FLSA overtime requirement, providing that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services." See 29 C.F.R. § 552.109.

Relevant here, the employer bears the burden of proving that they qualify for a FLSA exemption.  See Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991) (holding that "[t]he burden of proving these [FLSA] exemptions is upon the employer, and if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden").  Additionally, in evaluating the parties' arguments, the Court must give "considerable weight to the Department of Labor's regulations.  See Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 138 n.7 (3d Cir. 1999) (holding that "unlike interpretive bulletins, regulations are given 'considerable and in some cases decisive weight'" (cleaned up) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

Defendants assert that: (1) they are not a third-party employer; (2) the FLSA explicitly exempts their employees from overtime regulations; and (3) the fact sheets and 29 C.F.R. § 552.109 are "contradictory, confusing, and open to a multitude of interpretations."  (Doc. No. 75

29

Appx29

at 17.)  Responding to these arguments, Plaintiff asserts that Defendants' employees are entitled

to overtime pursuant to 29 C.F.R. § 552.109.  (Doc. No. 79 at 3.)  Plaintiff claims that "a cursory

review of Defendants' employee handbook and the Defendants' website shows that WiCare is a

third-party employer."  (Id. at 5.)  Plaintiff further maintains that, even adopting Defendants'

cramped definition of a third-party employer, the regulation is clear that only individuals or

members of the family household qualify for the Companionship Exemption.  (Id.)  Additionally,

Plaintiff asserts that, even if Defendants could claim the exemption, which they cannot,

"WiCare's own employee handbook, and Defendant's deposition testimony, strongly suggest[]

that its employees spend more than twenty (20) precent of their time assisting clients with daily

living activities during a workweek," and it follows that Defendant WiCare's employees would

fail the "duties test" and still not qualify for the exemption. (Id.)[11]

Upon review of the cited materials and relevant authority, the Court concludes that

Defendants fail to raise a genuine dispute of material fact as to whether Defendant WiCare is a

third-party employer.  The Court accordingly finds that Defendant WiCare is a third-party

employer and thus not eligible to claim the Companionship Exemption.  See Tagaeva v. BNV

Home Care Agency, Inc., No. 16-cv-06869, 2018 WL 1320661 at *1 (E.D.N.Y. Mar. 13, 2018)

(discussing the relevant regulation and noting that someone is employed by a third-party

employer when they do not work directly for "the person to whom they provide their services").

The evidence of record and the parties' filings clearly reflect that Defendant WiCare is a limited

liability company which provides companionship services to clients.  (Doc. No. 58-4 ¶¶ 2–4.)

---

[11]  The "Duties Test" originated in 29 C.F.R. § 552.6(b) and states that, if more than twenty (20)
percent of an employee's time is spent providing care related to the "tasks of daily living," such
as feeding, dressing, meal preparation, or assistance with the taking of medications, then the
Companionship Exemption does not apply to said employee.  See 29 C.F.R. § 552.6(b).

30

Defendant WiCare's employee handbook confirms as much.  See (Doc. No. 63-7 (providing that Defendant WiCare is the employer)).  Accordingly, Defendants raise no genuine dispute of material fact as to their status as a third-party employer.  Defendants assert, in the DSUMF, that roughly three-quarters of their employees "are direct family members of WiCare clients" (Doc. No. 76 ¶ 10), but even assuming this is true, it would not change the fact that Defendants have presented no evidence upon which a reasonable finder of fact could conclude that they are not a third-party employer within the meaning of 29 C.F.R. § 552.109 and thus eligible for the Companionship Exemption.[12]

**c.    Whether the DOL's Rule Clarifying the Companionship Exemption is Void for Vagueness**

---

[12]  The Court notes that also pending before the Court is Defendants' motion for a status conference.  (Doc. No. 87.)  In their motion, Defendants assert that there are outstanding issues to discuss with the Court, namely the impact of the United States Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo ("Loper Bright") on the pending motions for summary judgment.  In Loper Bright, the Supreme Court of the United States overruled Chevron v. Natural Resources Defense Council, holding that courts should no longer give deference to agency interpretations of ambiguous statutes.  See Loper Bright Enter., v. Raimondo, 603 U.S. ___ (2024).  However, the opinion notes that "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it."  See id. at 35.  In this case, the delegation of statutory authority to the Secretary of Labor is clear.  29 U.S.C. § 213(15) states, "any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  See 29 U.S.C. § 213(15) (emphasis added).  Defendants do not argue, nor does the Court find any reason to conclude, that this delegation of power to the Secretary of Labor is unconstitutional.  See Gundy v. United States, 588 U.S. 128, 135 (2019) (holding that a delegation of authority to an agency is constitutional so long as "Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform'") (citation omitted).  Accordingly, the Secretary has the authority to shape the parameters of the Companionship Exemption, and this delegation is sufficiently unambiguous, such that the Court need not examine the appropriate level of deference to be given to this regulation.  Since Defendants' motion for a status conference is based on the alleged impact of Loper Bright on the pending motions, and the Court concludes that Loper Bright does not impact the Court's decision on said motions, no such status conference is necessary, and the Court will therefore deny Defendants' motion.

31

Appx31

As an alternative argument, Defendants assert that 29 C.F.R. § 552.109 is "void for vagueness." (Doc. No. 75 at 19.)  Defendants maintain that applying this regulation against them would deprive them of due process of law, asserting that when the meaning of a regulation is so unclear that people of "common intelligence" must speculate as to its meaning, then it follows that said regulation should be "deemed vague and void." (Id. at 20–21 (citation omitted).) Arguing to the contrary, Plaintiff claims that 29 C.F.R. § 552.109 clearly prohibits Defendants from utilizing the Companionship Exemption. (Doc. No. 79 at 11.)  Plaintiff cites the evidence of record in arguing that it is undisputed that the home care employees denied overtime compensation are employed by Defendants, further arguing that because Defendants are not "the individual receiving care nor a member of that individual's family or household," it follows that Defendants are third-party employers and thus the regulation does not permit them to claim the Companionship Exemption. (Doc. No. 79 at 12–13.)

As an initial matter, "in the civil context, statutes need not be as precise as in the criminal context and are, therefore, less likely to be invalidated under a void-for-vagueness challenge." See Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 167 (3d Cir. 2008).  However, "[a] statute or regulation is void for vagueness if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." See Via v. Taylor, 224 F. Supp. 2d 753, 766 (D. Del. 2002) (citing Zwickler v. Koota, 389 U.S. 241, 248 (1967)).  "There are two different void for vagueness challenges: facial or as-applied." Dailey v. City of Philadelphia, 417 F. Supp. 3d 597, 616 (E.D. Pa. 2019), aff'd, 819 F. App'x 71 (3d Cir. 2020).  "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" Heffner v. Murphy, 745 F.3d 56, 65 (3d Cir. 2014).  "By contrast, '[a]n as-applied attack . . . does not

32

contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" Id. (citation omitted).  Defendants do not specify the nature of their attack on the regulation.

In considering the foregoing, the Court concludes that it is irrelevant whether Defendants launch an as-applied or facial challenge to 29 C.F.R. § 552.109.  Regarding a facial challenge, Defendants have not presented any argument that there is "no set of circumstances" under which 29 C.F.R. § 552.109 would be valid.  To the contrary, the regulation is sufficiently clear, insofar as it lays out how the Companionship Exemption applies and to whom it applies.  The regulation states that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15)."  See 29 C.F.R. § 552.109(a) (emphasis added).  There is nothing vague in this regulatory language, as it clearly spells out that third party employers cannot claim the Companionship Exemption.

Even construing Defendants' attack as an as-applied challenge, the Court finds that Defendants do not cite any authority for the proposition that someone "of common intelligence" would need to "guess" at the meaning of the regulation.  See Taylor, 224 F. Supp. 2d at 766.  To the contrary, as highlighted supra, the regulatory language clearly specifies those who are eligible for the Companionship Exemption and delineates that third-party employers of domestic service employees are not exempted from the FLSA's overtime requirement.  Accordingly, the Court is unpersuaded by Defendants' position that 29 C.F.R. § 552.109 is void for vagueness.

In sum, 29 U.S.C § 202(a) delineates that "Congress further finds that the employment of persons in domestic service in households affects commerce," see 29 U.S.C. § 202(a), and since the FLSA minimum wage and overtime provisions apply to employers and employees who are

33

"engaged in commerce," it follows that Defendant WiCare and its employees, who perform domestic service, are covered by the FLSA and subject to the minimum wage, overtime, and recordkeeping provisions contained therein.[13]  Defendants provide no evidence permitting a reasonable finder of fact to conclude that there is a genuine dispute as to the applicability of the FLSA to Defendant WiCare and its employees, and because Defendants' attempts to remove themselves from the FLSA's coverage are unavailing, the Court will deny Defendants' motion for summary judgment on the question of whether Defendant WiCare and its employees are covered under the FLSA.

   **2.    Authority of the Acting Secretary of Labor to Initiate Enforcement Proceedings**

   Additionally, Defendants advance the novel argument that Plaintiff, Julie A. Su, the Acting Secretary of the United States Department of Labor, lacks the authority to pursue these enforcement proceedings against them.  (Doc. No. 75 at 23–30.)  Defendants argue that the Department of Labor "has no standing or actual authority to bring enforcement actions," especially when they involve policy decisions, such as the decision to pursue liquidated damages, because Acting Secretary Su has not been confirmed by the Senate "and it is public record that she will never be confirmed by the Senate."  (Id. at 23.)  Defendants urge the Court to

---

[13]  The Court finds it worth noting that the power of Congress to regulate interstate commerce is broad and includes the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  See Gonzales v. Raich, 545 U.S. 1, 17 (2005).  Although Defendants do not challenge the constitutionality of the FLSA, they do argue that because they do not explicitly engage in interstate commerce, the FLSA does not apply to them.  (Doc. No. 75 at 4.)  However, Congress, in acting pursuant to its Commerce Clause power, explicitly enumerated that "Congress further finds that the employment of persons in domestic service in households affects commerce."  See 29 U.S.C. § 202(a).  Therefore, the Court's finding supra that Defendants are engaged in domestic service places Defendants' activities within the reach of the FLSA.

find that Acting Secretary Su cannot rely on 29 U.S.C. § 552, which outlines the powers of the

Deputy Secretary when filling in for the Secretary, because the statute delineates powers on a

temporary basis and does not "authorize the Deputy Secretary to assume the Secretary's role

permanently."  (Id. at 24.)  Defendants maintain that the text of 29 U.S.C. § 552 precludes Acting

Secretary Su from continued service in her position.  (Id.)  Additionally, Defendants cite the

Federal Vacancies Reform Act ("FVRA"), arguing that: (1) the FVRA sets a two hundred and ten

(210) day limit on an official serving in acting capacity; (2) the FVRA would permit Acting

Secretary Su to serve for more than two years, unconfirmed by the Senate; and (3) reliance on

the FVRA is thus inappropriate and to permit Acting Secretary Su to continue serving under this

statute would be constitutionally problematic.  (Id. at 26–27.)  Defendants ask the Court to find

that:

> Ms. Su cannot continue to operate as Acting Secretary of Labor, had no authority
> to deviate from the discretion-based internal guidance promulgated by Martin J.
> Walsh, that Ms. Su's subordinates acting under the cloak of her authority have no
> authority to deny (or accept, for that matter) Defendants' offers of settlement, and
> indeed that Ms. Su's agents have no present authority to continue any
> enforcement actions against Defendants.

(Id. at 30.)

In response, Plaintiff asserts that Acting Secretary Su was confirmed as Deputy Secretary

of Labor, began serving as Acting Secretary upon the resignation of former Secretary Martin J.

Walsh, and then lawfully began to perform the Secretary's duties pursuant to 29 U.S.C. § 552.

(Doc. No. 79 at 15–16.)  Plaintiff maintains that 29 U.S.C. § 552 permits Acting Secretary Su to

serve as Acting Secretary and make the attendant policy and enforcement decisions.  (Id. at 16.)

Finally, Plaintiff asserts that, pursuant to the Appointments Clause, Acting Secretary Su has been

nominated, not appointed, and therefore nothing in the text of that clause precludes her from

remaining Acting Secretary and exercising the powers of that office.  (Id. at 19–20.)

As an initial matter, 29 U.S.C. § 552 states that

> [t]he Deputy Secretary shall perform such duties as may be prescribed by the
> Secretary of Labor or required by law.  The Deputy Secretary shall (1) in case of
> the death, resignation, or removal from office of the Secretary, perform the duties
> of the Secretary until a successor is <u>appointed</u>, and (2) in case of the absence or
> sickness of the Secretary, perform the duties of the Secretary until such absence or
> sickness shall terminate.

<u>See</u> 29 U.S.C. § 552 (emphasis added).  Put simply,

> 29 U.S.C. § 552 allows for a Deputy Secretary of Labor to perform the duties of
> the Secretary of Labor if the Secretary dies, resigns or is removed. The Senate
> confirmed Acting Secretary Su as the Deputy Secretary on July 13, 2021 and she
> began serving as Acting Secretary of Labor on March 11, 2023, when Secretary of
> Labor Martin Walsh resigned.

<u>See</u> <u>Su v. Starbucks Corp.</u>, No. 23-cv-00045, 2023 WL 6461146, at *2 (W.D. Wash. Oct. 4,

2023).  It is undisputed here that no successor to Secretary Walsh has been confirmed by the

United States Senate.  (Doc. Nos. 75 at 23; 79 at 6.)[14]  Accordingly, because no successor has

been "appointed" pursuant to 29 U.S.C. § 552, the Court finds that Acting Secretary Su can

properly bring this enforcement action against Defendants and will deny Defendants' motion for

summary judgment on this question.[15]

### D.    Remedies

Because the Court granted Plaintiff's motion for summary judgment on the questions of

whether: (1) Defendants are covered under the FLSA; (2) Defendant Hernandez is covered as an

---

[14]  Pending before the Court is Plaintiff's motion (Doc. No. 89) to amend PCUMF as it relates to
this point.  Because the Court did not rely on Plaintiff's admission in making this determination,
the Court finds it unnecessary to permit Plaintiff to amend PCUMF and will accordingly deny
the motion.

[15]  The Court will follow the "usual practice" of "avoid[ing] the unnecessary resolution of
constitutional questions," <u>see</u> <u>Nw. Austin Mun. Util. Dist. No. One v. Holder</u>, 557 U.S. 193, 197
(2009), and will not opine as to the constitutionality of the FVRA.

Appx36

employer under the FLSA; (3) Defendants violated FLSA's minimum wage provision; (4) Defendants violated FLSA's overtime provision; and (5) Defendants violated FLSA's recordkeeping provision, while denying Defendants' motion for summary judgment on the question of whether they were covered under the FLSA and on the issue of Acting Secretary Su's authority to pursue this litigation, the Court must assess the appropriate remedies for the violations.  The Court first determines the appropriate statute of limitations for the calculation of damages, and then assesses Plaintiff's entitlement to liquidated damages and injunctive relief.

### 1.    Willfulness Inquiry

As a general matter, the statute of limitations for the initiation of claims for "unpaid minimum wages" and "unpaid overtime compensation, or liquidated damages" is two (2) years. See 29 U.S.C. § 255.  However, the statute expressly provides that, when a cause of action arises from a "willful violation" of the FLSA, the statute of limitations increases to three (3) years.  See id.  An employer willfully violates the FLSA when they "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Further, a claimant need not show that the employer acted egregiously to establish the employer's willfulness.  See Stone v. Troy Constr., LLC, 935 F.3d 141, 149 (3d Cir. 2019) (discussing how "Supreme Court case law and our own precedent counsel against a standard for willfulness that requires a showing of egregiousness"). However, "[a]cting only 'unreasonably' is insufficient—some degree of actual awareness is necessary."  See Souryavong v. Lackawanna County, 872 F.3d 122, 126 (3d Cir. 2017) (citation omitted).

a.    **Plaintiff's Motion for Summary Judgment on the Question of Willfulness**

In the instant case, Plaintiff pursues three (3) years' worth of damages, for the years 2019, 2020, and 2021, thus requiring her to demonstrate that Defendants willfully violated the FLSA. (Doc. No. 1); see also Marcy v. Select Med. Corp., No. 23-cv-00469, 2023 WL 9074622 at *2 n.4 (M.D. Pa. Nov. 1, 2023) (discussing the three-year lookback period for willful FLSA violations).  Plaintiff asserts that Defendants willfully violated the FLSA and accordingly the statute of limitations should be three (3) years.  (Doc. No. 64 at 23–25.)  In support of her position, Plaintiff maintains that there is no genuine dispute of material fact that Defendants attempted to have workers sign away their rights to earn overtime wages, and chose to pay some, but not all, workers the proper overtime premiums.  (Id. at 24.)  Plaintiff further claims that the undisputed facts of record show that Defendants "knew about the requirement to pay an overtime premium prior to DOL's investigation," and additionally notes that Defendant Hernandez has conceded that many workers have still not received back wages, which Plaintiff asserts is indicative of his willfulness in violating the FLSA.  (Id. at 24–25.)  Finally, Plaintiff maintains that Defendants' reliance on the Department of Labor fact sheets is only further proof of their willful violations of the FLSA, because those fact sheets clearly recognize that third-party employers must pay home care workers minimum wages and overtime premiums for hours worked in excess of forty (40) hours in a week.  (Id. at 24.)

Upon consideration of the foregoing, and viewing the record evidence in the light most favorable to Defendants as the non-moving party, the Court will grant Plaintiff's motion for summary judgment as to Defendants' willfulness.  To reiterate, an employer willfully violates the FLSA when they "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  See Richland Shoe Co., 486 U.S. at 133.  Here, it is undisputed

38

that: (1) Defendants paid some, but not all, of their employees' overtime premiums; (2) Defendant Hernandez did not deny that he learned about the FLSA's overtime requirements prior to the commencement of the Department of Labor investigation and was even informed that he was not appropriately paying overtime wages; and (3) Defendant Hernandez admitted in his deposition that many employees are still missing payment for hours worked during the years 2019 through 2021. (Doc. No. 58-4 ¶¶ 41–42.) The Court finds that Defendants' continued failure to pay back wages, even after learning about their mistake in not making those payments, in addition to the fact that Defendants paid some, but not all, employees overtime premiums, demonstrates that Defendants cannot meet their burden of establishing a genuine dispute of material fact on the question of whether they showed a "reckless disregard" for the FLSA. See Richland Shoe Co., 486 U.S. at 133. The Court finds especially telling the fact that Defendants' employee contract includes a waiver of overtime wages. See (Doc. Nos. 63-6 at 87 (Defendant Hernandez's deposition explaining the policy); 63-14 (the employee contract)). Defendants offer no explanation as to why employees would be required to sign away rights to overtime payments, if they did not know they had the obligation to make such payments, as they argue. Put simply, Defendants cite no evidence to establish a genuine dispute of material fact as to their willful disregard of the statute. The Court finds that no reasonable factfinder, viewing the evidence of record in the light most favorable to Defendants, could find that this attempt to have workers sign away overtime premium rights, in direct contravention of the FLSA, was anything other than a knowing or reckless disregard for the FLSA's overtime requirement. See Richland Shoe Co., 486 U.S. at 133; see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013) (holding that the FLSA "overtime guarantees . . . cannot be modified by contract").

Accordingly, the Court will grant Plaintiff's motion as to Defendants' willful violations of FLSA, thus permitting a three-year statutory lookback period.

### b.    Defendants' Motion for Summary Judgment on the Question of Willfulness

In Defendants' motion for summary judgment, Defendants assert that their violations of the FLSA were not willful because Defendant Hernandez "consulted Fact Sheets 25 and 79 and spoke with another companionship services company owner to ensure that Wicare complied with FLSA's overtime exemptions." (Doc. No. 75 at 22–23.) In response, Plaintiff repeats many of the arguments made in support of her own motion for summary judgment on this question, discussed supra. (Doc. No. 79 at 6–7.)

The Court again finds that, viewing the evidence of record in the light most favorable to the non-moving Plaintiff, no reasonable factfinder could find for Defendants on this question. In other words, Defendants have not raised a genuine dispute of material fact as to their willful disregard of the FLSA's overtime provisions. The Court again observes that the fact that Defendants induced employees to sign away the right to receive the proper overtime premiums, is indicative of a "knowing" or "reckless disregard" for the FLSA's overtime requirement. See Richland Shoe Co., 486 U.S. at 133. Accordingly, the Court will deny Defendants' motion for summary judgment on the question of willfulness and will permit a three (3) year lookback period to determine the appropriate damages.

### 2.    Award of Liquidated Damages

The award of liquidated damages is mandatory under the FLSA, should a plaintiff prevail. See 29 U.S.C. § 260. To avoid liquidated damages, "an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act." See Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc., 873 F.3d 420, 433 (3d Cir.

40

Appx40

2017).  "The good faith requirement is 'a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the Act.'"  Id. (citing Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991)).  However, the reasonableness inquiry is objective, insofar as the employer must provide evidence permitting a reasonable finder of fact to conclude that that the employer objectively believed they complied with the FLSA.  See Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982) (discussing the objective nature of the reasonableness inquiry).  The Third Circuit has held that "a defendant employer bears the 'plain and substantial' burden of proving he is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision" which generally requires an employer to show that "he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions."  See Cooper Elec. Supply Co., 940 F.2d at 907–08.  Defendants bear a heavy burden, because upon a finding of liability "[d]ouble damages are the norm, single damages the exception."  See id. at 908 (citing Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986)).

> a.    **Plaintiff's Motion for Summary Judgment as to Liquidated Damages**

Plaintiff argues that she is entitled to summary judgment as to the issue of Defendants' lack of good faith compliance with the FLSA.  (Doc. No. 64 at 26–30.)  First, Plaintiff asserts that Defendants cannot carry their burden of proving subjective good faith, because they did not take affirmative steps to ascertain the FLSA's requirements.  (Id. at 27.)  Plaintiff asserts that, even if Defendants took steps to comply with the FLSA after the Department of Labor initiated their investigation, such steps would be irrelevant to the good faith inquiry.  (Id. at 28.)  Plaintiff further notes that Defendants required employees "to sign contracts that stated that they would only receive one rate for all hours worked," thus waiving their right to overtime wages, and also

41

Appx41

declined to consult counsel until after the Department of Labor investigation was well underway. (Id.)

Plaintiff also asserts that Defendants cannot satisfy the objective test, examining whether their belief that they were complying with the FLSA was reasonable. (Doc. No. 64 at 29.) Plaintiff maintains that no reasonable employer could believe that FLSA's overtime requirements would be satisfied by "paying straight time" and not the statutorily mandated wage. (Id.)[16] Plaintiff also asserts that Defendants intentionally paid some direct care workers for fewer hours then required by the statute, and further maintains that Defendants cannot offer any plausible or verifiable rationale for this choice. (Id. at 29–30.)[17]

Upon review of the record evidence and construing all facts in the light most favorable to the non-moving Defendants, and after consulting the relevant authority, the Court finds that Defendants fail to raise a genuine dispute of material fact on the issue of their subjective good faith or objective reasonableness in failing to comply with the FLSA. First, as it pertains to good faith, the Court finds that Defendants have not cited sufficient evidence to permit a reasonable finder of fact to conclude that they subjectively believed that their actions complied with the FLSA. See Am. Future Sys., Inc., 873 F.3d at 433 (discussing how an employer must have "an honest intention to ascertain and follow the dictates" of the FLSA). There is nothing in the

---

[16] For reference, the employment contract, which can be viewed at Docket Number 63-14, specifies that workers are to be paid a straight ten dollar and fifty cent ($10.50) wage, even for hours worked excess of forty (40) hours in a week.

[17] To reiterate, Defendants filed only an untimely brief in response to Plaintiff's motion, and the contents contained therein would not change the Court's conclusion, as Defendants fail to point to evidence supporting their subjective good faith or objective reasonableness in attempting to comply with the FLSA.

Appx42

record indicating that Defendants attempted to contact anyone at the Department of Labor, or even hire an attorney until after the Department of Labor's investigation commenced.

However, even if Defendants could satisfy their burden of demonstrating subjective good faith, the Court further finds that Defendants have failed to present evidence that they objectively believed that they were complying with the FLSA. As discussed supra, the reasonableness inquiry requires an employer to provide evidence permitting a reasonable finder of fact to conclude that that the employer objectively believed they complied with the FLSA. See Brunner, 668 F.2d at 753. Even viewing the facts in the light most favorable to Defendants, the Court still finds that Defendants have not carried their burden. The evidence of record indicates that Defendants paid some, but not all, employees the proper overtime, and further shows that Defendants had employees sign away their right to the proper overtime premium. See (Doc. Nos. 63-6 at 504; 63-14); see also Genesis Healthcare Corp., 569 U.S. at 69 (holding that the FLSA "overtime guarantees . . . cannot be modified by contract"). Accordingly, because Defendants have not met their burden, and observing that "[d]ouble damages are the norm, single damages the exception," see Cooper, F.2d at 908 (citation omitted), the Court will grant Plaintiff's motion for summary judgment on the question of Plaintiff's entitlement to liquidated damages in the amount of five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09).[18]

---

[18] Defendants' total backpay owed is as follows: sixty-one thousand three hundred and fifty-four dollars and eighty-four cents ($61,354.84) in minimum wage back wages and four hundred and sixty-eight thousand, four hundred and fifteen dollars and twenty-five cents ($468,415.25) in overtime premium back wages, for a total amount of five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09). Accordingly, Defendants owe five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages and five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in liquidated damages, for a total of one million, fifty-nine thousand, five hundred and forty dollars and eighteen cents ($1,059,540.18).

**b.    Defendants' Motion for Summary Judgment as to Liquidated Damages**

As to Defendants' motion for summary judgment on the issue of liquidated damages, upon review of the record evidence and construing all facts in the light most favorable to the non-moving Plaintiff, the Court concludes that Defendants have not met their burden and their motion for summary judgment will be denied.  Defendants assert that "neither Hernandez nor WiCare willfully violated the FLSA" because Defendant Hernandez reviewed the Department of Labor Fact Sheets and "spoke with a fellow business owner, and came to the reasonable and lawful conclusion that WiCare would not be required to pay overtime wages to its employees." (Doc. No. 75 at 21.)  Plaintiff responds that Defendants cannot meet their burden of establishing that liquidated damages should not be awarded here, because they cannot cite record evidence revealing that they subjectively believed that they were complying with the FLSA in good faith, nor that they had objectively reasonable grounds for so doing.  (Doc. No. 79 at 7–8.)

For the reasons discussed supra, the Court finds that Defendants have failed to carry their evidentiary burden as to the issue of liquidated damages, as no reasonable finder of fact could conclude that they subjectively believed that they complied with FLSA in good faith, or that such a belief was objectively reasonable in light of the evidence of record.  Accordingly, the Court will deny Defendants' motion for summary judgment on the issue of liquidated damages.

**3.    Permanent Injunctive Relief**

---

The Court observes that Defendants assert, in several filings, that Plaintiff seeks one million, one hundred and eighty-one thousand, one-hundred and thirty-six dollars and eighteen cents ($1,181,136.18) in damages.  See (Doc. No. 94-1 at 2).  However, this number is inconsistent with Plaintiff's requested relief.  See (Doc. No. 58-1 (proposed order seeking five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages and five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in liquidated damages, for a total of one million, fifty-nine thousand, five hundred and forty dollars and eighteen cents ($1,059,540.18))).

44

The question of whether injunctive relief is warranted "rests within the Court's sound discretion." See Walsh v. E. Penn Mfg. Co., 555 F. Supp. 3d 89, 137 (E.D. Pa. 2021) (citing 29 U.S.C. § 517). "Factors that district courts consider in deciding whether to issue an injunction include the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future." Mosluoglu, Inc., 2023 WL 5972044, at *5 (citing A-1 Mortg. Corp., 934 F. Supp. 2d at 815). Accordingly, the Court may permanently enjoin Defendants from violating the FLSA pursuant to 29 U.S.C. § 517. "Some courts have recognized that FLSA violations should be enjoined when the court is not fully convinced that a recurrence of the violation is not probable." Solis, 934 F. Supp. 2d at 815.

As to the appropriateness of permanent injunctive relief, Plaintiff asserts that "Defendants wantonly violated the FLSA for years. Defendants made no effort to comply with the law prior to the start of the Department of Labor's investigation, and even after the investigation started, Defendants failed to fix what they claim were 'clerical errors' years after the 'errors' occurred." (Doc. No. 64 at 31.) Plaintiff maintains that Defendants committed several deliberate acts, namely including a waiver of appropriate overtime wages in its employment contract, and even after being told of their violations, still have not paid employees the appropriate back wages. (Id. at 31–32.) Plaintiff claims that a "permanent injunction is necessary to ensure that [Defendants] current workers are protected." (Id. at 32.) Defendants' untimely brief opposing Plaintiff's motion for summary judgment fails to address Plaintiff's argument on this point.

The Court is persuaded by Plaintiff's argument that permanent injunctive relief is warranted here. In undertaking this inquiry, the Court considers "the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future." See Mosluoglu, Inc., 2023 WL 5972044, at *5. Here, the employer's

45

Appx45

past conduct is troublesome. Defendants disregarded the FLSA's overtime and minimum wage requirements, and the undisputed evidence of record reflects that they even tried to get employees to sign away their statutory rights to the appropriate overtime premiums. <u>See</u> (Doc. No. 63-14). Although the Court is unaware of Defendants' current conduct, the fact that Defendants still have not paid some employees the proper back wages compels the Court to find that Defendants cannot "be counted on to comply with the FLSA in the future." <u>See</u> <u>Mosluoglu, Inc.</u>, 2023 WL 5972044, at *5. Accordingly, injunctive relief is warranted, and the Court will grant Plaintiff's motion on this issue. The Court next addresses Plaintiff's motion to strike.

### E.    Plaintiff's Motion to Strike

Plaintiff asserts that the Court should strike Defendants' "Exhibit T" (Doc. No. 70-20) from the docket of this case and any reference to this exhibit in Defendants' summary judgment filings. (Doc. No. 78 at 1.) In so arguing, Plaintiff maintains that, when the Court ordered Defendants to refile its summary judgment brief in compliance with the designated page limit, the Court "did not authorize Defendants to include additional evidence." (<u>Id.</u> at 2.)

Defendants respond to Plaintiff's argument by asserting that they added "Exhibit T" in good faith and after consulting with the Local Rules of this Court. (Doc. No. 81 at 6.) Defendants maintain that this exhibit is merely an affidavit in which Defendant Hernandez swears that he told the truth, referring to statements he made in Defendants' original statement of undisputed facts. (<u>Id.</u>) Defendants maintain that Plaintiff never explains why the affidavit should be stricken, and further claims that said affidavit is admissible as a matter of law. (<u>Id.</u> at 9.)

Upon consideration of the foregoing, the Court will deny Plaintiff's motion to strike "Exhibit T." Although motions to strike are authorized pursuant to Federal Rule of Civil

Procedure 12(f), that rule provides no basis for striking material like that at issue here, as Rule 12(f) applies specifically to pleadings.  See Fed. R. Civ. P. 12(f) ("[t]he court may strike from a pleading"); 2 Moore's Federal Practice §12.37[2] (Matthew Bender 3d Ed.) (stating that "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly").  Accordingly, the Court declines to strike "Exhibit T" and any references to "Exhibit T" in Defendants' summary judgment filings.  Rather, because the Court instructed Defendants to refile "a brief in support of their motion for summary judgment" (Doc. No. 74 at 3), and did not authorize the filing of new exhibits in support of said motion, the Court is persuaded that the better approach is to simply disregard "Exhibit T" and any references to said exhibit, which are improperly before the Court.  See Sfakianos v. Shelby County Gov't, No. 08-cv-02172, 2010 WL 4791680, at *2 (W.D. Tenn. Aug. 2, 2010) (recognizing that the federal rules do not provide a means to strike exhibits filed in connection with an opposition brief and therefore choosing to exclude from consideration any portions of exhibits not properly before the court); Lombard v. MCI Telecom. Corp., et al., 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) (same); see also Dillon v. Village of Piketon, Ohio, et al., No. 10-cv-00888, 2011 WL 2632802, at *2 (S.D. Ohio July 5, 2011) (declining to strike affidavit submitted in opposition to 12(b)(6) motion but instead disregarding all matters not properly before the court).

Therefore, in accordance with the above discussion, the Court will deny Plaintiff's motion to strike while disregarding "Exhibit T" (Doc. No. 70-20) and references to "Exhibit T" in Defendants' summary judgment filings.

Appx47

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment

in its entirety and will deny Defendants' motion for summary judgment in its entirety.

Furthermore, the Court will deny Plaintiff's motion to strike.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

48

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE A. SU, Acting Secretary of Labor,** | : | |
| **United States Department of Labor,** | : | |
| **Plaintiff** | : | No. 1:22-cv-00224 |
| | : | |
| **v.** | : | (Judge Kane) |
| | : | |
| **WICARE HOME CARE AGENCY, LLC,** | : | |
| <u>et al.</u>, | : | |
| **Defendants** | : | |

### <u>ORDER</u>

**AND SO**, on this 31st day of July 2024, upon consideration of Defendants WiCare Home Care Agency, LLC and Luis Hernandez (collectively "Defendants")' motion for summary judgment (Doc. No. 57), and Plaintiff Julie A. Su, Acting Secretary of Labor at the United States Department of Labor ("Plaintiff")'s motion for summary judgment (Doc. No. 58), Plaintiff's motion to strike (Doc. No. 77), Defendants' motion for a status conference (Doc. No. 87), Plaintiff's motion to amend (Doc. No. 89), Defendants' motion to strike (Doc. No. 92), as well as Defendants' motion for leave (Doc. No. 94), and in accordance with the accompanying memorandum, **IT IS ORDERED THAT**:

1. Plaintiff's motion (Doc. No. 58) for summary judgment is **GRANTED** as follows:

    (a)    Defendant WiCare and its direct care workers are covered under the Fair Labor Standards Act ("FLSA");

    (b)    Defendant Luis Hernandez is liable as an employer under the FLSA;

    (c)    Defendants violated the FLSA minimum wage provision, 29 U.S.C. § 206(a)(1)(C);

    (d)    Defendants violated the FLSA overtime provision, 29 U.S.C. §207(a)(1);

Appx49

(e)    Defendants violated the FLSA recordkeeping provision, 29 U.S.C. § 211(c);

(f)    Defendants' conduct was willful;

(g)    Defendants are liable for one million, fifty-nine thousand, five hundred and forty dollars and eighteen cents ($1,059,540.18), consisting of five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages and five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in liquidated damages due to the employees identified in Schedule A (Doc. No. 1-1) of the complaint; and

(h)    Defendants are **PERMANENTLY ENJOINED** from violating the FLSA;

2.    Defendants' motion for summary judgment (Doc. No. 57) is **DENIED**;

3.    Plaintiff's motion to strike (Doc. No. 77) is **DENIED**;

4.    Defendants' motion for a status conference (Doc. No. 87) is **DENIED**;

5.    Plaintiff's motion to amend (Doc. No. 89) is **DENIED**;

6.    Defendants' motion to strike (Doc. No. 92) is **DENIED**;

7.    Defendants' motion for leave (Doc. No. 94) is **DENIED**; and

8.    The Clerk of Court shall enter judgment in favor of Plaintiff and against Defendants and **CLOSE** this case.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

2

Appx50

AO 450 (Rev. 11/11)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania

| | | |
|---|---|---|
| Julie A. Su, Acting Secretary of Labor, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:22-cv-00224 |
| Wicare Home Care Agency, LLC., et al., | ) | |
| *Defendants* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏ the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☑ other:   Judgment is entered in favor of Plaintiff and against Defendants.  See Memorandum and Order (Docs. 97
and 98).

This action was *(check one)*:

❏ tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

❏ tried by Judge _____ without a jury and the above decision
was reached.

☑ decided by Judge   Yvette Kane, U.S. District Judge _____

Date:   7/31/2024 _____

CLERK OF COURT

_____ s/ Dawn McNew _____
*Signature of Clerk or Deputy Clerk*

| Print | Save As... | | Reset |

Appx51

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

– – – – – – – – – – – – – – – – – – – – – – – –

|   |   |   |
|---|---|---|
| JULIE A. SU, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | : : : : : | Civil Action No. 1:22-cv-00224-YK |
| DOL, | : : | |
| v. | : : : | (Judge Yvette Kane) |
| WICARE HOME CARE AGENCY, LLC, and LUIS HERNANDEZ, | : : : : | |
| Defendants. | : | |

– – – – – – – – – – – – – – – – – – – – – – – –

## NOTICE OF APPEAL

Notice is hereby given that Defendants WiCare Home Care Agency, LLC and Luis Hernandez appeal to the United States Court of Appeals for the Third Circuit from the Order and Memorandum entered in this action on July 31, 2024, (Doc. No.'s 97-99), granting Plaintiff's Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment.

Appx52

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of August 2024, a copy of Defendants WiCare Home Care Agency, LLC and Luis Herndandez's Notice of Appeal will be sent to all counsel of record via the Court's CM/ECF system.


<u>/s/ John M. Nolan III</u>
John M. Nolan III

*Attorneys for Defendants*


2

Appx53