No. 24-2565

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————————

JULIE A. SU, ACTING SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

Plaintiff-Appellee,

v.

WICARE HOME CARE AGENCY, LLC; LUIS D. HERNANDEZ

Defendants-Appellants.

———————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania

———————————————

**BRIEF OF THE ACTING SECRETARY OF LABOR**

———————————————

SEEMA NANDA
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

SARAH KAY MARCUS
Deputy Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

MELISSA ANN MURPHY
Senior Attorney

AMELIA B. BRYSON
Senior Attorney
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
(202) 693-5336
bryson.amelia.b@dol.gov

## **STATEMENT REGARDING ORAL ARGUMENT**

Although the Acting Secretary of Labor will gladly participate in oral argument to answer questions the Court might have, she believes that oral argument is not necessary as the issues presented may be decided on the parties' briefs.

# TABLE OF CONTENTS

Page(s)

STATEMENT REGARDING ORAL ARUGMENT ............................................... ii

TABLE OF CONTENTS.......................................................................... iii

TABLE OF AUTHORITIES ...................................................................v

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................3

STATEMENT OF THE CASE...................................................................3

    A.    Legal Framework ................................................................3

    B.    Factual Background...............................................................5

    C.    Procedural History................................................................6

    D.    District Court's Summary Judgment Decision ...................8

SUMMARY OF THE ARGUMENT .......................................................13

STANDARD OF REVIEW ...................................................................15

ARGUMENT .....................................................................................15

I.    THE DISTRICT COURT PROPERLY CONCLUDED THAT WICARE AND ITS EMPLOYEES ARE COVERED BY THE FLSA .......................15

II.    THE REGULATION EXCLUDING THIRD-PARTY EMPLOYERS SUCH AS WICARE FROM CLAIMING THE COMPANIONSHIP SERVICES EXEMPTION IS VALID ..........................................................17

    A.    History of Domestic Service Employee Regulations...........18

  B.  This Regulation Remains Valid.............................................................21

III. WICARE IS INDISPUTABLY A THIRD-PARTY EMPLOYER AND
  THUS CANNOT CLAIM THE COMPANIONSHIP SERVICES
  EXEMPTION. ............................................................................................32

IV. THE DISTRICT COURT PROPERLY AWARDED LIQUIDATED
  DAMAGES..................................................................................................37

V. THE DISTRICT COURT CORRECTLY CONCLUDED THE ACTING
  SECRETARY CAN PROPERLY MAINTAIN THIS ENFORCEMENT
  ACTION AGAINST WICARE....................................................................41

CONCLUSION .....................................................................................................48

CERTIFICATE OF BAR MEMBERSHIP STATUS .............................................31

CERTIFICATE OF COMPLIANCE......................................................................50

CERTIFICATE OF SERVICE ...............................................................................51

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Bristol Excavating, Inc.*,
297 F.Supp.3d 523 (M.D. Pa 2017) ..................................................... 42

*Auer v. Robbins*,
519 U.S. 452 (1997) ............................................................................ 25

*CBOCS West, Inc. v. Humphries*,
553 U.S. 442 (2008) ............................................................................ 31

*Chao v. A-One Med. Servs.*,
346 F.3d 908 (9th Cir. 2023) ............................................................... 38

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ............................................................... 22, 30, 31

*Colt & Joe Trucking, LLC v. U.S. Dep't of Labor*,
2025 WL 56658 (D. N.M. Jan. 9, 2025) ............................................. 43

*Dep't of Labor v. Americare Healthcare Servs., LLC, et al.*,
2025 WL 71671 (S.D. Ohio Jan. 9, 2025) ................... 22, 24, 26, 28, 31

*Dole v. Haulaway Inc.*,
723 F. Supp. 274 (D.N.J. 1989) ..................................................... 38-39

*Freytag v. C.I.R.*,
501 U.S. 868 (1991) ............................................................................ 44

*Home Care Ass'n of Am. v. Weil*,
799 F.3d 1084 (D.C. Cir. 2015) .................................................. Passim

*Kansas v. Garland*,
2024 WL 3360533 (D. Kan. July 10, 2024) ....................................... 25

*Katzenbach v. McClung*,
379 U.S. 294 (1964) ............................................................................ 16

**Cases – Continued:**

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993)..................................................... 39

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024) ...................................................Passim

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) .......................................................Passim

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803).............................................. 47

*Marshall v. Brunner*,
   668 F.2d 748 (3d Cir. 1982)................................................ 38

*Martin v. Cooper Electric Supply Co.*,
   940 F.2d 896 (3d Cir. 1991)........................................... 12, 38

*Martin v. Selker Bros., Inc.*,
   949 F.2d 1286 (3d Cir. 1991).............................................. 37

*Mayfield v. Dep't of Labor*,
   117 F.4th 611 (5th Cir. 2024) ........................................ 25, 27

*N.L.R.B. v. SW Gen., Inc.*,
   580 U.S. 288 (2017) ........................................................ 46

*Pizzella v. Diner*,
   2022 WL 3452670 (E.D. Pa 2022) ...................................... 42

*Ruenkamol v. Stifel*,
   463 F. Supp. 647 (D.N.J. 1978) ......................................... 16

*Schaffner v. Monsanto Corp.*,
   113 F.4th 364 (3d Cir. 2024)............................................. 25

*Shoemaker v. United States*,
   147 U.S. 282 (1893) ........................................................ 44

Cases – Continued:

*Simmons v. City of Philadelphia*,
  947 F.2d 1042 (3d Cir. 1991)............................................... 39

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ......................................................... 31

*Stewart v. Picante Grille LLC*,
  2021 WL 5920812 (W.D. Pa. 2021) ................................... 42

*Su v. Comprehensive Healthcare Management Services, LLC.*,
  2023 WL 6518955 (W.D. Pa 2023) ..................................... 42

*Su v. Starbucks*,
  2023 WL 6461146 (W.D. Wash. Oct. 4, 2023) .................... 43

*Tennessee v. Becerra*,
  117 F.4th 348 (6th Cir. 2024) ............................................ 30

*U.S. Dep't of Labor v. American Future Systems, Inc.*,
  873 F.3d 420 (3d Cir. 2017)........................................15, 37, 38, 40-41

*United States v. Castillo*,
  772 F. App'x 11 (3d Cir. 2019) ......................................... 46

*United States v. Eaton*,
  169 U.S. 331 (1898) ......................................................... 46

*Weiss v. United States*,
  510 U.S. 163 (1994) ......................................................... 44

**Statutes**

5 U.S.C. § 3345(a)(1)......................................................... 45
5 U.S.C. § 3345(b)(1)......................................................... 45
5 U.S.C. § 3345(b)(2)......................................................... 45
5 U.S.C. § 3346(b)(2)......................................................... 45
5 U.S.C. § 3347(a) ............................................................ 45

**Statutes – Continued:**

28 U.S.C. § 1291 ............................................................................ 2
28 U.S.C. § 1331 ............................................................................ 2
28 U.S.C. § 1345 ............................................................................ 2

Fair Labor Standards Act,
    29 U.S.C. § 202(a) ............................................................ Passim
    29 U.S.C. § 203(b) .................................................................. 4, 15
    29 U.S.C. § 203(s)(1) .................................................................. 18
    29 U.S.C. § 203(s)(1)(A)(i) ........................................................ 18
    29 U.S.C. § 206 .......................................................................... 3
    29 U.S.C. § 206(a) .................................................................. 4, 18
    29 U.S.C. § 206(f) ...................................................................... 19
    29 U.S.C. § 207(a) ...................................................................... 3
    29 U.S.C. § 207(a)(1) ......................................................... 4, 15, 18
    29 U.S.C. § 207(l) ...................................................................... 19
    29 U.S.C. § 211(c) ...................................................................... 3
    29 U.S.C. § 213(a)(15) ....................................................... passim
    29 U.S.C. § 216 .......................................................................... 2
    29 U.S.C. § 216(b) .................................................................. 5, 37
    29 U.S.C. § 217 .......................................................................... 2
    29 U.S.C. § 255(a) ...................................................................... 5
    29 U.S.C. § 260 ...................................................................... 5, 38

Fair Labor Standards Amendments of 1974,
    Pub. L. No. 93-259, 88 Stat. 55 ................................................ 19
    Pub. L. No. 93-259, § 29(b), 88 Stat. 76 ................. 4, 19, 24, 25

29 U.S.C. § 551 ............................................................................ 44
29 U.S.C. § 552 ............................................................. 11, 15, 43, 44

**Code of Federal Regulations**

29 C.F.R. § 516.2 .......................................................................... 3

29 C.F.R. Part 552 ...................................................................... 33
    29 C.F.R. § 552.109 ............................................................. 10, 35
    29 C.F.R. § 552.109(a) ...................................................... Passim
    29 C.F.R. § 552.3 .................................................................. 16-17

**Code of Federal Regulations – Continued:**

29 C.F.R. § 552.6 ........................................................................... 35

29 C.F.R. § 552.109 (1975) ........................................................... 19

**Other Authorities**

*Application of the Fair Labor Standards Act to Domestic Service*,
    40 Fed. Reg. 7,404 (Feb. 20, 1975) ................................................ 19

*Application of the Fair Labor Standards Act to Domestic Service*,
    78 Fed. Reg. 60,454 (Oct. 1, 2013) ........................................... Passim

Appointment of a Senate-Confimed Nominee, 23 Op. O.L.C. 232 (1999) ............ 47

Fed. R. Civ. P. 56(a) ..................................................................... 15

Fed. R. App. P. 43(c)(2) ................................................................. 1

U.S. Const. art. II. § 2, cl. 2 .................................................. 42, 46-47

**No. 24-2565**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————————

JULIE A. SU, ACTING SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,[1]

Plaintiff-Appellee,

v.

WICARE HOME CARE AGENCY, LLC; LUIS D. HERNANDEZ

Defendants-Appellants.

———————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania

———————————————

**RESPONSE BRIEF OF THE ACTING SECRETARY OF LABOR**

———————————————

Plaintiff-Appellee the Acting Secretary of Labor, United States Department

of Labor ("Department") submits this brief in response to the brief filed by

Defendants-Appellants WiCare Home Care Agency, LLC and Luis D. Hernandez

(collectively "WiCare"). This Court should affirm both the district court's

---

[1] Julie A. Su became Acting Secretary of Labor in March 2023 when Martin J.
Walsh resigned as the Secretary of Labor, and has been substituted as the
Plaintiff/Appellee pursuant to the Federal Rule of Appellate Procedure 43(c)(2).

1

conclusion that WiCare willfully violated the minimum wage and overtime pay requirements of the Fair Labor Standards Act ("FLSA" or "the Act"), and its award of over $529,000 in back wages and an equal amount in liquidated damages for 193 current and former WiCare home care workers. WiCare does not dispute that it did not pay its home care workers the required federal minimum wage or overtime compensation. Instead it advances several flawed arguments to avoid having to pay its employees the back wages it unlawfully withheld from them, none of which have merit. This Court should reject them all.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 29 U.S.C. §§ 216 and 217, as well as 28 U.S.C. §§ 1331 and 1345, and entered judgment on July 31, 2024. Appendix ("A")-1. WiCare appealed on August 20, 2024. A-52. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the district court correctly concluded that WiCare and its employees are covered by the FLSA.

2.      Whether the district court correctly concluded that the Department's 2013 regulation prohibiting third-party employers, such as home care agencies, from claiming the companionship services exemption to the FLSA's minimum wage and overtime compensation requirements, 29 C.F.R. § 552.109(a), is valid.

3.     Whether the district court correctly concluded that WiCare is a third-party employer of the home care workers it concedes it employs, and thus not eligible to claim the exemption for domestic service employees who provide companionship services, 29 C.F.R. § 552.109(a).

4.     Whether the district court properly awarded liquidated damages where WiCare failed to prove that it acted with a good faith and objectively reasonable basis to believe that it was not violating the FLSA.

5.     Whether the district court correctly concluded that Acting Secretary of Labor Julie Su can properly maintain this enforcement action against WiCare.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings.

## STATEMENT OF THE CASE

### A.     Legal Framework

1.  The FLSA requires that covered employees be paid a minimum hourly wage for all hours worked plus one-and-a-half times their regular rate for hours worked over 40 in a workweek.  29 U.S.C. §§ 206, 207(a).  The FLSA requires employers to keep accurate records of employees' hours worked and wages paid. 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2 (requiring employers to maintain accurate records of, among other things, daily and weekly hours worked, weekly wages, including overtime premiums paid).

These provisions apply to employers and employees who are, in relevant part, "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1).[2]  Congress has explicitly found that "the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a).

As relevant here, the FLSA excludes from its minimum wage and overtime pay requirements any employees employed in "domestic service employment to provide companionship services" to seniors or individuals with illnesses, injuries, or disabilities, "as such terms are defined and delimited by regulations of the Secretary [of Labor]."  29 U.S.C. § 213(a)(15) (commonly referred to as the "companionship services exemption").  The Fair Labor Standards Act Amendments of 1974 ("1974 Amendments"), which added 29 U.S.C. § 213(a)(15), included an express grant of rulemaking authority directing the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act."  Pub. L. No. 93-259, § 29(b), 88 Stat. 76. Pursuant to this delegated authority, the Department promulgated regulations in 2013, which among other things, provided that only an individual receiving

---

[2] "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

companionship services (the consumer) or members of the consumer's family or household may claim the companionship services exemption. 29 C.F.R. § 552.109(a); *see also Final Rule, Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60,454, 60,557 (Oct. 1, 2013) ("2013 Rule"). Third-party employers are not entitled to claim the exemption. 29 C.F.R. § 552.109(a).

2. An employer that fails to pay FLSA wages as required "shall be liable" for back wages plus "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]," a court has discretion to award no liquidated damages or a lower amount. 29 U.S.C. § 260.

3. Where an employer willfully violates the FLSA, a three-year statute of limitations applies instead of a two-year period. 29 U.S.C. § 255(a).

## B. Factual Background

WiCare is a for-profit Pennsylvania-based home care company that employs individuals to provide in-home care to WiCare's clients. A-97. Defendant Luis Hernandez is the sole owner of WiCare and founded the company in 2018. *Id*. WiCare's home care workers provide WiCare clients with supervision,

companionship, and assistance with tasks of daily living, including helping clients with bathing, cleaning, and meal preparation.  A-4, A-1495.

Between January 1, 2019 and May 6, 2021, WiCare did not pay its home care workers the required overtime premium when they worked over 40 hours in a workweek.  A-99.  WiCare also did not pay some employees for all hours that they worked, including by manually manipulating employees' time sheets to remove hours worked and therefore reduce the amount paid, resulting in a failure to pay the minimum wage owed for all hours worked.  A-100-101.  WiCare also created payroll and time records that did not accurately show the hours employees worked and the wages they received.  A-101-102.

## C.    Procedural History

On February 15, 2022, the Department filed a complaint with the District Court for the Middle District of Pennsylvania, alleging that WiCare: (1) willfully violated section 6 of the FLSA by failing to pay its home care workers the minimum wage for all hours worked; (2) willfully violated section 7 of the FLSA by failing to pay its home care workers one and one-half times the regular rate for hours worked in excess of 40 in a workweek; and (3) willfully violated section 11(c) of the FLSA by failing to make, keep, and preserve adequate and accurate records of its employees' hours worked and the wages it paid its employees.  A-66-68.

After the close of discovery, both parties moved for summary judgment on April 15, 2024. A-82, A-88. On April 29, 2024, the Department filed a brief in support of its motion for summary judgment. A-983. The Department argued that: (1) WiCare's employees are covered by the FLSA and entitled to minimum wage and overtime protections; (2) Luis Hernandez is an employer and individually liable for FLSA violations; (3) WiCare violated the FLSA's overtime pay requirements by failing to pay employees an overtime premium at the rate of at least one-and-one half times their regular rate for hours worked in excess of 40 in a workweek; (4) WiCare violated the FLSA's minimum wage requirements by failing to pay employees at least the required minimum wage of $7.25 per hour for all workweeks; (5) WiCare violated the FLSA's recordkeeping requirements as a result of its failure to maintain accurate payroll records; (6) WiCare's FLSA violations were willful; (7) WiCare owes $529,770.09 in back wages; (8) WiCare is liable for an equal amount of liquidated damages; and (9) the Department is entitled to injunctive relief. A-88.[3]

On May 22, 2024, WiCare filed a brief in support of its motion for summary judgment. A-1016. WiCare argued that: (1) WiCare does not engage in interstate commerce; (2) WiCare's employees are exempt from the right to overtime pay; (3)

---

[3] As with back wages, liquidated damages recovered by the Department will be paid to the employees.

the Department's regulation that prohibits third-party employers, such as home care agencies who place home care workers in the homes of those who need caregiving, from claiming the companionship services exemption and fact sheets summarizing that regulation are both "incoherent" and the regulation is not entitled to deference; (4) the Department's regulation that prohibits third-party employers from claiming the companionship services exemption is void for vagueness; (5) liquidated damages are inappropriate; (6) there is no evidence of willfulness; and (7) the Department lacks authority to continue to pursue this enforcement action. A-82.

On June 11, 2024, the Department timely filed a brief opposing WiCare's motion for summary judgment. A-1469. On July 30, 2024, WiCare filed a motion for leave to file an untimely brief opposing the Department's motion for summary judgment. A-7 n.5, A-1623. The district court did not grant that motion. A-7 n.5.

### D. District Court's Summary Judgment Decision

On July 31, 2024, the district court issued its decision granting the Department's motion for summary judgment in full and denying Petitioners' motion for summary judgment in full. A-1.[4]

_____

[4] Although the district court rejected WiCare's response to the Department's summary judgement as untimely, which left the Department's motion unopposed, the court nonetheless reviewed WiCare's brief "for the sake of a complete record" and commented that nothing in the brief altered the analysis in the district court's

1.  The district court first concluded that WiCare and its employees are covered under the FLSA because "Congress explicitly declared" in 29 U.S.C. § 202(a), "that domestic service workers affect commerce," and it is "undisputed" that WiCare "provides 'in-home care' and employs 'persons in domestic service for profit.'" A-16-17. Thus, the court found that WiCare and its employees are covered under the FLSA because they "perform domestic services and thus are 'engaged in commerce' pursuant to the FLSA." A-17; *see also* A-25 (rejecting WiCare's argument that it and its employees are not covered under the FLSA).

2.  The district court granted summary judgment to the Department that WiCare violated the FLSA's minimum wage and overtime pay requirements because WiCare is covered by the FLSA and thus subject to the statute's minimum wage and overtime pay provisions, and there was "no factual dispute" that WiCare did not pay all its employees the required minimum wages or overtime premiums owed. A-20-22. Indeed, the court noted that WiCare asserted "no argument on

---

decision. A-7 n.5. Additionally, WiCare failed to file a response to the Department's Statement of Undisputed Material Facts, as required under the local rules. A-1 n.1. On July 30, 2024, when WiCare sought leave of the district court to file an untimely response brief, WiCare also sought leave to file an untimely response to the Department's Statement of Undisputed Material Facts. A-7 n.5. In accordance with the local rules, the court denied that request and treated the Department's Statement of Undisputed Material Facts as admitted. A-1 n.1, A-7 n.5. On appeal, WiCare does not challenge these appropriate exercises of discretion by the district court.

whether [it] failed to adhere to the FLSA minimum wage [and] overtime …

provisions." A-24 n.10.[5]

The court rejected WiCare's arguments that its employees are exempt from the FLSA's minimum wage and overtime pay requirements under the companionship services exemption, that the Department's 2013 regulation and fact sheets regarding the companionship services exemption are "incoherent" and entitled to no deference, and that the 2013 regulation is "void for vagueness." A-24-34. The court concluded that WiCare raised "no genuine dispute of material fact as to [its] status as a third-party employer" under 29 C.F.R. § 552.109, and thus cannot avail itself of the companionship services exemption to the FLSA's minimum wage and overtime requirements. A-30-31. The court noted that the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), did not change its conclusion that WiCare cannot claim the companionship services exemption. A-31 n.12. The court explained that, consistent with *Loper Bright*, because Congress delegated authority in the FLSA to the Department regarding the companionship services exemption, the Department "has the authority to shape the parameters of the Companionship Exemption, and

---

[5] The district court also granted summary judgment to the Department that WiCare violated the FLSA's recordkeeping requirements and as to Hernandez's status as an employer under the FLSA. A-17-20; 22-24. WiCare does not challenge these conclusions on appeal.

this delegation is sufficiently unambiguous, such that the [c]ourt need not examine the appropriate level of deference to be given to this regulation." *Id.*

As to the fact sheets that discuss the home health care industry and the companionship services exemption, the court explained that these fact sheets are sub-regulatory guidance and do not have the force of law. A-28. Thus, to the extent WiCare relied "on either of these guidance documents to justify [its] non-compliance with the FLSA," the court found "such an argument unavailing." *Id*.

The court similarly rejected WiCare's argument that the 2013 regulation is void-for-vagueness, concluding that "the regulatory language clearly specifies those who are eligible for the Companionship Exemption and delineates that third-party employers of domestic service employees are not exempted from the FLSA's overtime requirement." A-33.

3. The court rejected WiCare's contention that Acting Secretary of Labor Julie A. Su lacks authority to maintain enforcement proceedings against WiCare. A-36. The court noted that "it is undisputed that no successor to Secretary Walsh has been confirmed by the United States Senate," and thus concluded that "because no successor has been 'appointed' pursuant to 29 U.S.C. § 552," "Acting Secretary Su can properly bring this enforcement action against [WiCare]." *Id*.

4. The court granted summary judgment to the Department that WiCare willfully violated the FLSA. A-38. The court explained that the undisputed facts

showed that WiCare failed to pay back wages "even after learning about [its] mistake in not making those payments," that WiCare paid some, but not all employees overtime premiums owed, and that Hernandez did not deny that he learned about the FLSA's overtime requirements prior to the Department's investigation and was informed that he was not properly paying overtime wages. A-39. The court explained that it was "especially telling" that WiCare included a waiver of overtime wages in its employee contracts, indicating that it knew of its obligation to pay overtime, but attempted to force employees to sign away their rights. *Id.* "Put simply," the court summarized, WiCare "cite[s] no evidence to establish a genuine dispute of material fact as to [its] willful disregard of the statute." *Id.*[6]

5. Finally, the court granted summary judgment to the Department that WiCare owed liquidated damages, concluding that WiCare failed to raise a genuine dispute of material fact as to either its subjective good faith or objective reasonableness in failing to comply with the FLSA. A-42. The court explained that "[d]ouble damages are the norm, single damages are the exception," citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991), and because WiCare failed to meet its burden to demonstrate subjective good faith and

_____

[6] WiCare has not challenged in this appeal the district court's conclusion that its violations were willful.

objective reasonableness, the Department is entitled to liquidated damages in the amount of $529,770.09. A-43.[7]

## SUMMARY OF THE ARGUMENT

1. WiCare and its employees are covered by the FLSA because Congress explicitly found that the employment of domestic service employees affects commerce under the FLSA. WiCare does not, nor could it, dispute that its employees fall within the definition of domestic service employees. As an employer of covered employees, WiCare must therefore pay its employees in accordance with the Act.

2. Pursuant to explicit congressional authority, the Department promulgated regulations implementing the companionship services exemption to the FLSA's minimum wage and overtime requirements. One of those regulations provides that only an individual receiving the companionship services or members of the individual's family or household may claim the companionship services exemption; third-party employers, like WiCare, may not avail themselves of this exemption. 29 C.F.R. 552.109(a). As recognized by the Supreme Court in *Long*

---

[7] The district court noted that the Department's back wage calculations, under which WiCare owed $529,770.09 for its minimum wage and overtime pay violations, were undisputed due to WiCare's failure to file a response to the Department's Statement of Undisputed Material Facts. A-3-4, n.3, 20-21. The district court also granted the Department permanent injunctive relief against future FLSA violations. A-45-46. WiCare does not challenge in this appeal either the amount of back wages it owes its employees or the permanent injunction.

*Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), the subject of the regulation is squarely within the Department's authority and, as recognized by the D.C. Circuit over a decade ago in *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1090 (D.C. Cir. 2015), the regulation is valid. Nothing in the Supreme Court's recent decision in *Loper Bright* undermines the validity of the regulation.

3. WiCare is a third-party employer within the meaning of the regulation because it is not an individual receiving companionship services or a member of the individual's family or household. As a home care agency, placing its employees in its client's homes to provide domestic service, WiCare is undisputedly a third-party employer under the relevant regulation. Because it is a third-party employer, it may not avail itself of the companionship services exemption.

4. The district court correctly awarded liquidated damages by relying on this Court's ample precedent recognizing that such damages are mandatory unless the employer shows that it acted in good faith and with a reasonable belief that its actions complied with the FLSA. The evidence supports the district court's conclusion that WiCare failed to meet its burden to show that it acted in good faith or that it reasonably believed it was complying with the FLSA. WiCare presented no evidence to the contrary that would satisfy its burden and permit it to avoid liquidated damages.

5.  Finally, the district court properly rejected WiCare's allegation that Acting Secretary Julie A. Su lacks authority to maintain this enforcement action. Acting Secretary Su was properly appointed Deputy Secretary of Labor, and consistent with her authority as Deputy Secretary under 29 U.S.C. § 552, lawfully began performing the duties of Secretary when Secretary Martin J. Walsh resigned in March 2023.  Because no successor to Secretary Walsh has been appointed, Acting Secretary Su is authorized to perform the duties assigned to the Secretary of Labor, like maintaining this enforcement action.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This Court employs a de novo standard of review of a district court's grant of summary judgment.  *U.S. Dep't of Labor v. American Future Systems, Inc.*, 873 F.3d 420, 424 (3d Cir. 2017).

## ARGUMENT

**I.    THE DISTRICT COURT PROPERLY CONCLUDED THAT WICARE AND ITS EMPLOYEES ARE COVERED BY THE FLSA.**

The text of the FLSA expressly states that domestic service employees are covered by the Act, and the employees here are without question in that category. As noted above, the FLSA applies to employers and employees engaged in interstate commerce.  29 U.S.C. §§ 203(b), 206, 207(a)(1).  Congress explicitly

found that "the employment of persons in domestic service in households affects commerce" and amended the statute to include this finding. 29 U.S.C. § 202(a); *see also* A-16 (explaining that "Congress made a clear choice in enacting" section 202(a), "in which it specifically noted that 'domestic service employees affect commerce.'"); *see generally Katzenbach v. McClung*, 379 U.S. 294, 304 (1964) (courts defer to Congress's determination that a particular activity affects commerce, looking only at whether Congress had a rational basis for its determination); *Ruenkamol v. Stifel*, 463 F. Supp. 647, 648 (D.N.J. 1978) (concluding that Congress had a rational basis for its finding that "the employment of persons in domestic service in households affects commerce."). WiCare fails to cite, let alone address, the plain text of the statute explicitly extending coverage to domestic service employees such as the WiCare's home care workers. Although it discusses other provisions of the FLSA and attempts to outline some case law on FLSA coverage generally, it does not cite section 202(a) anywhere in its coverage argument. WiCare's Br. at 23-27.

WiCare and its employees fall squarely within the terms of coverage for employees employed in domestic service. Pursuant to congressionally delegated authority, the Department's regulations define the term "domestic service employment" to mean:

> services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services

> performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3.  WiCare does not dispute that it provides "in-home care" and employs "persons in domestic service for profit."  A-97 (Department's Statement of Undisputed Facts, to which WiCare did not object); *see also* WiCare's Br. at 7 ("WiCare's clients … require some level of supervision, companionship, and the occasional assistance with tasks of daily living.").  Thus, WiCare employs "persons in domestic service."  29 U.S.C. § 202(a).  Accordingly, the district court properly concluded that WiCare's employees are expressly "'engaged in commerce' pursuant to the FLSA" and must pay those employees in accordance with the Act's requirements.  A-17.  This Court should therefore reject WiCare's contention that it and its employees are not covered by the FLSA.

## II.     THE REGULATION EXCLUDING THIRD-PARTY EMPLOYERS SUCH AS WICARE FROM CLAIMING THE COMPANIONSHIP SERVICES EXEMPTION IS VALID.

As an employer employing FLSA-covered employees, WiCare can avoid the generally applicable minimum-wage and overtime pay requirements only if an exemption to those requirements applies.  WiCare invokes the companionship services exemption.  But under the applicable regulations, it is clear that WiCare may not claim this exemption.  WiCare therefore asserts that the relevant

regulation is contrary to law. WiCare's Br. at 9. It is not. The 2013 regulation was properly promulgated under an express statutory delegation of rulemaking authority that has been recognized by the Supreme Court, and the regulation was affirmed as valid by the D.C. Circuit Court of Appeals nearly a decade ago. This validity has not been called into question by recent Supreme Court caselaw.

## A. History of Domestic Service Employee Regulations

1. Before 1974, domestic service employees, including those providing personal care or home health assistance, were usually covered by the FLSA's minimum wage and overtime pay provisions if those employees were "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1) (1970). However, enterprise-wide coverage existed only if the employer had an annual gross volume of sales or business of $250,000 or more for enterprise coverage to apply. 29 U.S.C. § 203(s)(1) (1970).[8] Thus, domestic service workers working for a company that placed them in one or more private homes were covered by the FLSA only if they worked for a large enough company such that enterprise-wide coverage would apply.

---

[8] Today, enterprise-wide coverage requires, among other things, that the employer have an annual gross volume of sales or business of $500,000 or more. 29 U.S.C. § 203(s)(1)(A)(i).

2.  In 1974, Congress amended the FLSA to, among other things, explicitly extend FLSA protections to domestic service employees, 29 U.S.C. §§ 202(a), 206(f) (generally requiring that domestic service employees receive at least the minimum wage for all hours worked), 207(l) (generally requiring that domestic service employees receive overtime pay for hours worked over 40 in a workweek). But Congress exempted "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  29 U.S.C. § 213(a)(15) (the companionship services exemption); *see also* 1974 Amendments, Pub. L. No. 93-259, 88 Stat. 55.  As noted above, the 1974 amendments also included an express grant of rulemaking authority directing the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act."  1974 Amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. 76.

3.  In 1975, the Department exercised its substantive rulemaking authority by promulgating a regulation that (among other things) provided that the companionship services exemption could be claimed not only by an individual or family member who hired a worker directly, but also by third-party employers who assigned members of their workforce to provide in-home services to their clients. 40 Fed. Reg. 7,404, 7,407 (Feb. 20, 1975) (29 C.F.R. § 552.109 (1975)).

In 2007, the Supreme Court considered a challenge to the third-party employment regulation brought by an employee of a home care agency who contended that she was entitled to the FLSA's minimum wage and overtime pay protections. *Coke*, 551 U.S. at 164 (2007). The Supreme Court explained that "the text of the FLSA does not expressly answer the third-party-employment question," but it does "expressly instruct[] the agency to work out the details of th[e] broad definitions" of domestic service employment and companionship services, and concluded that "whether to include workers paid by third parties within the scope of the definitions is one of those details." *Id.* at 167-68. Because the Department's third-party employment regulation fell "within the statutory grant of authority," the Supreme Court rejected the employee's challenge. *Id.* at 173, 174.

4. The Department amended its regulations in 2013, through comprehensive notice-and-comment rulemaking. As explained in the 2013 rulemaking, home care had expanded dramatically over several decades, evolving from what were often casual relationships between neighbors into a lucrative, agency-based, largely government-funded industry employing a professionalized workforce. As relevant here and in view of the transformation of the home care industry that had occurred since the 1975 regulations, the 2013 regulation at 29 C.F.R. § 552.109(a) provides that third-party employers may not avail themselves of the FLSA's exemption for companionship services employees. 2013 Rule, 78 Fed. Reg. at 60,557.

Shortly after the 2013 Rule was promulgated, trade associations representing third-party employers challenged the 2013 Rule in an action brought under the Administrative Procedure Act ("APA"). The 2013 Rule was upheld by a unanimous panel of the D.C. Circuit in *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1090 (D.C. Cir. 2015). The D.C. Circuit explained that the Supreme Court had concluded, in considering the prior version of the regulations, that "the treatment of third-party employers under the exemption … had been 'entrusted [to] the agency.'" *Id.* at 1091 (brackets in original) (quoting *Coke,* 551 U.S. at 165). Moreover, the Supreme Court "explicitly contemplated that the full range of potential outcomes lay within the agency's discretion[,]" including whether the FLSA should apply to all companionship workers who work for third parties. *Weil*, 799 F.3d at 1092 (citing *Coke*, 551 U.S. at 167-68). The D.C. Circuit concluded that the 2013 Rule was "entirely reasonable." *Id.* at 1093.

## B.    This Regulation Remains Valid.

The applicable regulation forecloses WiCare from availing itself of the FLSA's exemption for employees providing companionship services. WiCare challenges the 2013 regulation as inconsistent with the FLSA's companionship services exemption and the Supreme Court's recent decision in *Loper Bright*. Those arguments are unavailing. Contrary to WiCare's assertion, WiCare's Br. at 15, the Supreme Court's decision in *Loper Bright* does not affect the validity of the

21

2013 regulation, which is a proper exercise of Congress's express delegation of authority to the Secretary to define the scope of the companionship services exemption. *See, Dep't of Labor v. Americare Healthcare Servs., LLC, et al.*, No. 2:21-cv-5076, 2025 WL 71671, at *11 (S.D. Ohio Jan. 9, 2025) (concluding that "excluding third-party employers from claiming the companionship exemption is a valid exercise of DOL's rulemaking authority").[9]

      1. In *Loper Bright*, the Supreme Court overruled the deference framework for interpreting statutes administered by federal agencies derived from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). 144 S. Ct. at 2273.[10] The Court held that "the APA requires" that courts "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* The Court recognized, however, that "[i]n a case involving an agency, … the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 2263. The Supreme Court explained that Congress "often" enacts such statutory authorizations, such as by "expressly

---

[9] To date, the district court in *Americare Healthcare Servs.* is the only court other than the district court in this case to have issued a decision addressing the validity of the Department's 2013 regulation after *Loper Bright*.

[10] Petitioners inexplicably devote several pages to arguing that the 2013 regulation is invalid under the *Chevron* framework. WiCare's Br. at 11-14. As *Chevron* is no longer good law, the Acting Secretary will not opine on the rule's validity under the now-obsolete doctrine.

delegat[ing] to an agency the authority to give meaning to a particular statutory term," "empower[ing] an agency to prescribe rules to fill up the details of a statutory scheme," or authorizing the agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 2263 & n. 5-6 (internal quotations and citations omitted).

The Court in *Loper Bright* further explained that "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency," the "role of the reviewing court" is to "identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Id.* at 2263, 2268. By "identify[ing] and respect[ing]" congressional delegations of authority to administrative agencies, courts "stay out of discretionary policymaking left to the political branches." *Id.* at 2268. And although courts should "not defer to an agency interpretation of the law simply because a statute is ambiguous," where "a particular statute delegates authority to an agency consistent with constitutional limits, courts *must* respect the delegation, while ensuring that the agency acts within it." *Id.* at 2273 (emphasis added).

2. Here, Congress explicitly delegated to the Department the authority to promulgate regulations regarding the companionship services exemption. Indeed, the Court in *Loper Bright* specifically identified the companionship services

exemption as an example of an express delegation that afforded the agency discretionary authority. 144 S. Ct. at 2263 & n.5. In amending the FLSA in 1974 to cover domestic service employees generally and add the companionship services exemption, Congress expressly authorized the Department "to prescribe necessary rules, regulations, and orders with regard to the" 1974 amendments. 1974 Amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. 76. Additionally, as highlighted in *Loper Bright*, Congress instructed the Department to "define[] and delimit[]" the terms used in the statutory provision setting for the companionship services exemption. 29 U.S.C. § 213(a)(15); *see also Americare Healthcare Servs.*, 2025 WL 71671, at *9 ("[B]oth the 1974 Amendments and § 213(a)(15) of the FLSA unambiguously delegate authority to DOL to prescribe the rules and regulations to shape the parameters of the exemptions to the FLSA.").

The Supreme Court's decision in *Coke* confirms that Congress expressly delegated authority to the Department to implement the 1974 Amendments through legislative rules, including by defining the scope of the companionship services exemption. 551 U.S. at 167 (holding that the FLSA "expressly instructs the agency to work out the details" of the 1974 Amendments). In reaching this conclusion, the Supreme Court recognized that the power "to prescribe necessary rules, regulations, and orders with regard to" the 1974 Amendments "provides the Department with the power to fill [statutory] gaps through rules and regulations."

*Coke*, 551 U.S. at 165 (citing Pub. L. No. 93-259, § 29(b), 88 Stat. at 76); *see also Schaffner v. Monsanto Corp.*, 113 F.4th 364, 381 n.9 (3d Cir. 2024) (concluding that a statute authorizing the EPA Administrator "to prescribe regulations to carry out the provisions" of the statute is precisely the type of "express" delegation that "empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme"); *see also Kansas v. Garland*, 2024 WL 3360533 at *6 (D. Kan. July 10, 2024) (similar). Furthermore, the Court in *Coke* recognized that Congress granted the Department authority to "define[] and delimit[]" the term "companionship services," 29 U.S.C. § 213(a)(15), which is an additional source of authority to issue legislative rules specific to that exemption. *Coke*, 551 U.S. at 162; *Loper Bright*, 144 S. Ct. at 2263 n.5; *see also Mayfield v. Dep't of Labor*, 117 F.4th 611, 617-18 (5th Cir. 2024) (referring to "define and delimit" language related to the Act's exemption for employees employed in an executive, administrative, or professional capacity as an "uncontroverted, explicit delegation of authority"); *Auer v. Robbins*, 519 U.S. 452, 457-58 (1997) (FLSA provision granting the Department of Labor authority to "define[] and delimit[]" an exemption gives the Department broad authority to issue legally binding rules). The Supreme Court's analysis in *Coke* therefore makes clear that the Department's discretionary authority delegated by Congress with the FLSA's 1974 statutory amendments are precisely the type of delegations that "courts must respect" under *Loper Bright*.

144 S. Ct. at 2273; *see also Americare Healthcare Servs.*, 2025 WL 71671, at *9 (concluding that *Loper Bright* "does not impact the outcome" of a challenge to the 2013 Rule because "the delegation of statutory authority to [the Department] is clear and unambiguous").

3.  Having recognized this discretionary authority, the Supreme Court in *Coke* also "fix[ed] the boundaries" of those delegations. *Loper Bright*, 144 S. Ct. at 2263; *see also Coke*, 551 U.S. at 166 ("examin[ing]" the challenger's "claim[] that the regulation falls outside the scope of Congress' delegation"). The Supreme Court explained that when the 1974 Amendments were enacted, the FLSA's minimum wage and overtime requirements already applied to some, but not all domestic service workers paid by third parties. *Coke*, 551 U.S. at 167. "[I]n finding it within the Department's 'broad grant' of authority to decide 'whether to include workers paid by third parties within the scope' of the companionship services exemption, the Court explicitly contemplated that the full range of potential outcomes lay within the agency's discretion." *Weil*, 799 F. 3d at 1092 (citing *Coke*, 551 U.S. at 167-68). The Court questioned:

> Should the FLSA cover <u>all</u> companionship workers paid by third parties? Or should the FLSA cover <u>some</u> such companionship workers, perhaps those working for some (say, large but not small) private agencies, or those hired by a son or daughter to help an aged or infirm mother living in a distant city? Should it cover <u>none</u>? How should one weigh the need for a simple, uniform application of the

exemption against the fact that some (but not all) third-party employees were previously covered?[11]

*Coke*, 551 U.S. at 167 (Court's emphases). The Court held that it is "consequently reasonable to infer (and we do infer) that Congress intended its broad grant of definitional authority to the Department to include the authority to answer these kinds of questions." *Id.* at 168. And the Court explicitly recognized the agency's discretion to determine that "<u>none</u>" of the domestic service workers paid by third parties are exempt from the FLSA's protections. *Id.* at 167. (Court's emphasis).

Accordingly, pursuant to *Loper Bright*, the 2013 regulation must be upheld because the Department acted within "the outer statutory boundaries" of those express statutory delegations and consistent with the APA. *See Loper Bright*, 144 S. Ct. at 2268; *see also Mayfield*, 117 F.4th at 617 (explaining that where there is a clear delegation of authority, "the question is whether the Rule is within the outer boundaries of that delegation").[12]

---

[11] As explained in the 2013 Rule, prior to 1974, domestic service employees who worked for an FLSA-covered third-party employer, but who were assigned to work in someone's private home were entitled to FLSA protections via enterprise-wide coverage. 2013 Rule, 78 Fed. Reg. at 60,481-82. However, the Department's 1975 regulations, by allowing those covered enterprises to claim the newly instituted companionship services exemption, denied those employees the Act's minimum wage and overtime protections even though they had previously been entitled to those protections. *Id.*

[12] To the extent WiCare is arguing that the regulation's prohibition on third parties claiming the companionship services exemption is contrary to the text of 29 U.S.C.

The 2013 regulation is well within the bounds of the Department's discretionary authority. *See Americare Healthcare Servs.*, 2025 WL 71671, at *9 ("[The Department]'s authority to promulgate [the 2013 home care] regulations was within the bounds of its statutory authority, as contemplated by Congress."). In 2013, after comprehensive notice and comment rulemaking, the Department amended its 1975 regulations in view of the transformation of the home care industry that had occurred over the ensuing decades. Under the 2013 Rule, the exemption for companionship services employees can be claimed by an individual (or family member) who hires a worker directly, but not by third-party employers such as home care agencies that assign members of their workforce to particular homes. 78 Fed. Reg. at 60,557; 29 C.F.R. § 552.109(a). In other words, the 2013 Rule expressly adopted one of the potential options identified by the Supreme Court in *Coke*. 551 U.S. at 167-68. The Department explained that the exclusion of home care workers employed by third parties was "an inequity that has increased over time" as the industry grew tremendously between 1975 and 2013. 78 Fed. Reg. at 60,482. The Department's determinations had ample support in the

---

§ 213(a)(15), which refers to "<u>any employee</u> employed in domestic service employment to provide companionship services," WiCare's Br. at 15-16 (WiCare's emphasis), such an argument is misplaced. The D.C. Circuit in *Weil* rejected this same argument, explaining that the Supreme Court found that it is "within the Department's 'broad grant' of authority to decide 'whether to include workers paid by third parties within the scope' of the companionship-services exemption." *Weil*, 799 F.3d at 1092 (quoting *Coke*, 551 U.S. at 167-68).

administrative record, including data from the 15 states that already provided minimum wage and overtime protections to all or most home care workers employed by third parties, as well as comments from consumer representatives such as the AARP and disability rights advocates. *Id.* at 60,483-84. Moreover, the 2013 Rule included a comprehensive analysis of the economic impact of the regulatory changes on a wide array of constituencies, including consumers, workers, employers, and the public programs (such as Medicare and Medicaid) that pay for most home care services. *Id.* at 60,454. Based on that analysis, the Department rejected industry claims that the amended regulations would harm consumers by denying them access to home care services or reducing the quality of their care. To the contrary, the Department found that FLSA coverage would benefit not only the affected workers, "but also consumers because supporting and stabilizing the direct care workforce will result in better qualified employees, lower turnover, and a higher quality of care." *Id.* at 60,459-60.

The D.C. Circuit unanimously upheld the 2013 Rule, concluding that it was a proper exercise of the Department's delegated authority. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1087 (D.C. Cir. 2015), *cert. denied*, 579 U.S. 927 (2016). In *Weil*, the D.C. Circuit underscored that the "[Supreme] Court invoked the precise terms of § 29(b)'s general grant of implementation authority—the authority 'to prescribe necessary rules, regulations, and orders with regard to the

amendments made by this Act'—in the portion of its opinion holding that the third-party employment question had been delegated to the Secretary." *Weil*, 799 F.3d at 1092 (citing *Coke*, 551 U.S. at 165).  The D.C. Circuit further explained that the 2013 regulation was consistent with Congress's intent to include within the FLSA's protections all employees whose vocation is domestic service, *id.* at 1094, and that there was "ample support" in the administrative record for the Secretary's determination that the recipients of home care "would be benefitted, not harmed, by the new regulations," *id.* at 1095.

4. Even though the analyses in *Coke* and *Weil* did not have the benefit of the Court's instructions in *Loper Bright* regarding delegations of discretionary authority, there should be no question that references in *Coke* and *Weil* to deference principles that *Loper Bright* overruled do not detract from the precedential value of those cases.  WiCare's arguments to the contrary, WiCare's Br. at 14, are incorrect.  The Supreme Court explicitly stated in *Loper Bright* that it was "not call[ing] into question prior cases that relied on the *Chevron* framework," and that such prior cases "are still subject to statutory *stare decisis* despite our change in interpretive methodology."  144 S. Ct. at 2273; *see also Tennessee v. Becerra*, 117 F.4th 348, 363 (6th Cir. 2024) (noting that the Supreme Court in *Loper Bright* "cautioned litigants hoping to rehash or relitigate previously settled issues decided on *Chevron* that '[m]ere reliance on *Chevron* cannot constitute a

special justification for overruling such a holding'") (quoting *Loper Bright*, 144 St. Ct. at 2273); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (recognizing that *stare decisis* principles "demand respect for precedent whether judicial methods of interpretation change or stay the same"). The Supreme Court's admonition that courts should adhere to the principle of statutory *stare decisis* has particular force here, as both the Supreme Court and the D.C. Circuit Court of Appeals concluded, relying on analysis that answers the questions posed in *Loper Bright*, that the Department had authority to promulgate the current third-party regulation.[13] *See Americare Healthcare Servs.*, 2025 WL 71671, at *10 ("[T]he mere fact that the D.C. Circuit relied on *Chevron* does not cast doubt on that court's holding in [*Weil*]."); *id.* at 23 (rejecting Defendants argument that "*Coke* cannot survive *Loper Bright* and continue to protect the companionship exemption"). Indeed, as noted *supra*, the Court in *Loper Bright* specifically

---

[13] Even when Congress does not delegate to an agency the discretionary authority to issue substantive regulations, *Loper Bright* reaffirms that courts may "seek aid from the interpretations of those responsible for implementing particular statutes," under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Thus, even had Congress not expressly delegated discretion to the Department to make the choices reflected in the 2013 Rule, under *Skidmore*, deference would be warranted to that Rule based on both the "validity" of the Department's "reasoning" and the "thoroughness" of its "consideration." 323 U.S. at 140. The Department issued its 2013 Rule through the notice-and-comment rulemaking procedures of the APA. As explained above, the Department's preamble to the rule detailed the dramatic changes in the home care industry as well as conducted an in-depth analysis of the legislative history and responded to the substantive issues raised by thousands of comments, and as such, thoroughly considered the relevant issues.

identified the companionship services exemption as an example of an express

statutory delegation of authority that granted discretion to the agency.  144 S. Ct. at

2263 & n.5.

## III.    WICARE IS INDISPUTABLY A THIRD-PARTY EMPLOYER AND THUS CANNOT CLAIM THE COMPANIONSHIP SERVICES EXEMPTION.

WiCare contends, without support, that even if the 2013 regulation is valid,

it may still claim the exemption from the FLSA's minimum wage and overtime

requirements for employees engaged in companionship services because it is not a

third-party employer.  WiCare's Br. at 27-28.  This is incorrect.  The Department's

regulations make clear that home care agencies like WiCare are third-party

employers and thus are prohibited from availing themselves of the minimum wage

and overtime exemption in section 13(a)(15) of the FLSA.  *See e.g.,* 78 Fed Reg. at

60,455 ("[T]he new regulatory text precludes third party employers (*e.g.*, home

care agencies) from claiming the exemption for companionship services.")

(emphasis added).

The Department's regulation at 29 C.F.R. § 552.109(a) is straightforward: it

states that "[t]hird party employers of employees engaged in companionship

services … may not avail themselves of the minimum wage and overtime

exemption provided by section 13(a)(15) of the Act, even if the employee is jointly

employed by the individual or member of the family or household using the

services." It further explains that "the individual or member of the family or household … is still entitled to assert the exemption." 29 C.F.R. § 552.109(a). Thus, if the employer of an employee engaged in companionship services is the individual receiving the services or a member of that individual's family or household, the employer may assert the exemption. If the employer is not in that limited category, it is a third-party employer and may not assert the exemption. 78 Fed. Reg. at 60,454 (explaining that for purposes of 29 C.F.R. Part 552, third-party employers are "employers of home care workers other than the individuals receiving care or their families or households"). Indeed, home care agencies are a quintessential third-party employer, and the preamble and all guidance documents associated with the 2013 Rule repeatedly use home care agencies such as WiCare as examples of third-party employers. *See, e.*g., 78 Fed. Reg. at 60,454 ("[I]n addition, third party employers, such as home care agencies, will not be able to claim [the companionship services exemption]."); *id.* at 60,455 ("[T]he new regulatory text precludes third party employers (*e.g.*, home care agencies) from claiming the exemption for companionship services."); A-970 (2013 Rule Fact Sheet) (the rule "prohibit[s] third party employers, such as home care agencies, from claiming the companionship [] exemption") (emphases added).

While WiCare contends that it is not a "home care staffing agency," WiCare's Br. at 20-21, it does not dispute it is a home care agency that places its

workers in clients' homes to provide domestic service. A-30-31 (the undisputed evidence "clearly reflect[s]" that WiCare "is a limited liability company which provides companionship services to clients"), A-2 ("WiCare is a for profit entity that provides in-home care to clients by employing individuals who engage in domestic service."). Indeed, its name, WiCare Home Care Agency, admits as much. In any event, whether WiCare describes itself as a "home care staffing agency" or a "home care agency" is ultimately irrelevant as it is undisputed that it employs domestic service employees and places them in WiCare's clients' homes to engage in domestic service work—and WiCare admits as much in its opening brief when it states that after WiCare hires and trains an employee, "WiCare assigns the employee to a client," WiCare Br. at 28. WiCare does not contend, nor could it, that it is the individual receiving services or a member of that individual's family or household. Because it is not the individual receiving services or a member of that individual's family or household, it necessarily is a third-party employer.[14]

---

[14] WiCare seems to confuse a situation where an employee has multiple, or joint, employers, with the concept of a third-party employer, though nevertheless reaffirms that it is the employer of these workers responsible for compliance with the FLSA. *See* WiCare Br. at 28 (asserting that Wicare is not "another" third-party employer under the regulation, "but is the *only* employer" of its employees) (emphasis in original). The concept of a third-party employer has nothing to do with whether the employer is one of multiple employers of the employee. Rather, an employer is a third-party employer based solely on whether the employer is the

WiCare's focus on a district court decision in *Lynn v. ARC of Fayette Cty.*, No. 17-474 (W.D. Pa. Sept. 11, 2018), WiCare's Br. at 21-22, 27-28, is inapposite because the issue there was the employment status of the home care workers, slip op. at 17-27, whereas it is undisputed that the home care workers here were WiCare's employees.[15] The *Lynn* case did not concern whether the home care agency was a third-party employer under the regulation. Accordingly, the district court properly concluded WiCare is a third-party employer for purposes of 29 C.F.R. § 552.109 and must comply with the FLSA's minimum wage and overtime compensation requirements. A-31.[16]

---

individual receiving the services or a member of the individual's family or household—if not, the employer is necessarily a third-party employer.

Moreover, contrary to WiCare's insinuation otherwise, WiCare's Br. at 7, it is irrelevant to WiCare's status as a third-party employer that some of WiCare's employees are family members of the WiCare clients for whom the employees provide care.

[15] WiCare's *Lynn* citation is to the Report & Recommendation issued by a magistrate judge, not the district court decision. The district court affirmed the Report and Recommendation in a separate order. Memorandum Order (Nov. 30, 2018).

[16] Even if WiCare were not a third-party employer, it still could not claim the companionship services exemption because it has presented no evidence that its employees perform "companionship services" as defined at 29 C.F.R. § 552.6. *See* 29 C.F.R. § 552.109(a) (cross-referencing section 552.6 for the companionship services exemption).

WiCare appears to argue, as it did to the district court, that the Department's Fact Sheet #25, Fact Sheet #79A, and the 2013 Rule Fact Sheet somehow create such confusion that WiCare "could understandably conclude" that it need not pay its employees the required minimum wage and overtime premiums. WiCare's Br. at 16-23. This argument is disingenuous at best, and the district court properly rejected it. A-28. The relevant fact sheets explain the law as it applies to home care agencies like WiCare. A-1242 (Fact Sheet #79A: Companionship Services Under the Fair Labor Standards Act) ("[T]he exemption is only available to the individual, family, or household solely or jointly employing the worker .... Third party employers of direct care workers (such as home care staffing agencies) are not permitted to claim the exemption for companionship services."); A-970 (2013 Rule Fact Sheet) ("Under the Final Rule, third party employers of direct care workers (such as home care staffing agencies) are not permitted to claim ... the exemption for companionship services ....").[17] That WiCare appears to intentionally misread the fact sheets, including by suggesting it is hopelessly confused by the reference to a home care staffing agency as an example of a third-

---

[17] Fact Sheet #25 is not even relevant here because it describes the Department's regulations that were effective *prior to* January 1, 2015. A-968 (stating in the first paragraph that "[t]he following information applies to the home health care industry until January 1, 2015" because "[a]s of that date, revised regulations ... become effective"). WiCare's liability in this case started in 2019.

party employer as well as the reference to joint employment with an individual, family, or household, does not, as the district court properly concluded, change its obligation to pay its employees minimum wage and overtime owed under the FLSA. A-28 ("To the extent that Defendants rely on either of these guidance documents to justify their non-compliance with the FLSA, the Court finds such an argument unavailing.").[18]

## IV.   THE DISTRICT COURT PROPERLY AWARDED LIQUIDATED DAMAGES.

When an employer violates the minimum wage and overtime provisions of the FLSA, it is liable for both the payment of unpaid wages and an additional equal amount of mandatory liquidated damages. 29 U.S.C. § 216(b); *see also Am. Fut. Sys., Inc.*, 873 F.3d at 433. Liquidated damages are compensatory, not punitive, because they "compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991).

---

[18] WiCare repeatedly conflates the Department's regulations, which were promulgated pursuant to notice-and-comment rulemaking and therefore have the force of law, with its fact sheets, which are sub-regulatory guidance that plainly state that "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public in any way." A-1242; *see also* A-28 ("[T]he cited fact sheets promulgated by the Department of Labor are both pieces of sub-regulatory guidance, insofar as they did not go through notice and comment rulemaking and thus do not have the force of law.").

To avoid mandatory liability for liquidated damages, an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act.  29 U.S.C. § 260; *see also Am. Fut. Sys., Inc.*, 873 F.3d at 433.  To carry its burden on the good faith requirement, the employer must show that it "took affirmative steps" "to ascertain and follow the dictates of the Act." *Cooper Elec. Supply*, 940 F.2d at 907-08 (internal quotation marks omitted). The reasonableness requirement is an objective standard, which ignorance alone will not satisfy.  *Id.* at 907-08.

"If the employer fails to carry its burden …, the award of liquidated damages is <u>mandatory</u>." *Selker Bros., Inc.*, 949 F.2d at 1299 (emphasis added); *see Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982) (district court has discretion to lessen the amount of or not award liquidated damages "<u>if, and only if</u>" the employer meets its burden) (emphasis added).  Thus, it is well established in this Circuit that liquidated damages are the norm, single damages the exception. *Cooper Elec. Supply*, 940 F.2d at 908.

Because WiCare's FLSA violations were willful, it cannot have acted in good faith.  Where an employer has willfully violated the FLSA, it necessarily follows that the employer cannot have acted in good faith.  *Chao v. A-One Med. Servs.*, 346 F.3d 908, 920 (9th Cir. 2003) ("Of course, a finding of good faith is plainly inconsistent with a finding of willfulness."); *see also Dole v. Haulaway*

*Inc.*, 723 F. Supp. 274, 288 (D.N.J. 1989) (same), *aff'd*, 914 F.2d 242 (3d Cir.

1990). Thus, the district court's well supported conclusion that WiCare willfully

violated the FLSA, A-37-40, necessarily forecloses any argument that WiCare

acted in good faith.[19]

Even apart from the unchallenged conclusion that WiCare willfully violated

the FLSA, the district court's conclusion that WiCare failed to meet its burden of

proving that it acted in good faith and with a reasonable belief that its conduct did

not violate the FLSA is well supported by the undisputed facts in the record. First,

the district court correctly concluded that WiCare failed to raise a genuine dispute

of material fact regarding its subjective good faith to comply with the FLSA. A-

42-43 ("There is nothing in the record indicating that Defendants attempted to

contact anyone at the Department of Labor, or even hire an attorney until after the

---

[19] As noted above, WiCare has not challenged the district court's conclusion that
its violations were willful. WiCare's Br. at 3-4 (statement of issues, none of which
identify the district court's willfulness conclusion). Though WiCare makes
passing references to willfulness in its opening brief, *id.* at 5, 29, such passing
references cannot overcome the fact that WiCare has challenged only the district
court's liquidated damages conclusion, not its willfulness conclusion. *See Kost v.
Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) ("[A]ppellants are required to set forth
the issues raised on appeal and to present argument in support of those issues in
their opening brief …. It is well settled that if an appellant fails to comply with
these requirements on a particular issue, the appellant normally has abandoned and
waived that issue on appeal and it need not be addressed by the court of appeals.");
*see also id.* ("It is also well settled … that casual mention of an issue in a brief is
cursory treatment insufficient to preserve the issue on appeal.") (citing *Simmons v.
City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991)).

Department of Labor's investigation commenced."); *see also Am. Fut. Sys., Inc.*, 873 F.3d at 433 (explaining that an employer must have "an honest intention to ascertain and follow the dictates" of the FLSA). Similarly, the district court correctly concluded that WiCare failed to present any evidence that it objectively believed it was complying with the FLSA. A-43. As the district court noted, the record clearly demonstrates that WiCare "paid some, but not all employees the proper overtime," and "had employees sign away their right to the proper overtime premium." *Id.*

WiCare raises on appeal the same arguments that it raised to the district court; that its supposed misreading of the Department's fact sheets somehow establishes its subjective good faith efforts to comply with the FLSA and that its alleged belief it was complying with the Act was reasonable. WiCare's Br. at 29. This Court should reject those arguments, as the district court correctly did. Given the straightforward language in 29 C.F.R. § 552.109(a), and the fact sheets state that third-party employers, including home care agencies like WiCare, cannot avail themselves of the companionship services exemption, there is no basis upon which a fact finder could find that WiCare subjectively had a good faith belief that it need not pay its employees the minimum wage or overtime, or that any such belief would have been objectively reasonable. *See Am. Fut. Sys.*, 873 F.3d at 434 ("[s]elective interpretation of [case law and DOL's website] may establish wishful

thinking or obstinacy, but it certainly does not establish" that an employer acted in good faith and reasonably).  Moreover, as the district court noted, the undisputed fact that WiCare had employees sign away their right to overtime compensation and paid some but not all employees overtime compensation belies any assertion that it acted in good faith and with a reasonable basis to believe that it was not violating the FLSA.[20]

## V.    THE DISTRICT COURT CORRECTLY CONCLUDED THE ACTING SECRETARY CAN PROPERLY MAINTAIN THIS ENFORCEMENT ACTION AGAINST WICARE.

On appeal, WiCare reiterates its extraordinary position that the Department must cease all enforcement to remedy FLSA violations—including the instant action—based on unfounded allegations that the Appointments Clause prohibits a duly appointed Deputy Secretary of Labor ("Deputy Secretary"), currently Julie

---

[20] WiCare's references to the discussion of the parties' settlement efforts, WiCare's Br. at 31-32, are irrelevant to the liquidated damages determination that WiCare did not present evidence of good faith or reasonableness.  WiCare's references to Acting Secretary Su's alleged "deviation from the interna [sic] policy on liquidated damages promulgated by Martin J. Walsh," WiCare's Br. at 32, is similarly irrelevant to the liquidated damages determination here and is also an incorrect statement of fact. The "interna policy" WiCare references is Field Assistance Bulletin 2021-2, A-1453, issued by the Department's Wage and Hour Division Administrator Jessica Looman (not Secretary Walsh) and it remains in effect. WiCare has pointed to no evidence demonstrating that the Wage and Hour Division deviated from this Bulletin, which directs Wage and Hour Division field staff to consult with the Department's Solicitor's Office prior to making a demand for liquidated damages.  A-1453.

Su, from serving as Acting Secretary of Labor. WiCare's Br. 33-36. The district court properly rejected these arguments below and they remain entirely without merit, as there can be no Appointments Clause violation when a Senate-confirmed official exercises power Congress explicitly vested in the office to which she has been duly appointed. Notably, WiCare fails to cite a single case in support of its view that the Department of Labor may not continue an enforcement action with an Acting Secretary of Labor as the plaintiff.[21]

1. WiCare's challenge rests on a profoundly mistaken understanding of the Constitution. Under the Appointments Clause, the President nominates, and "by and with the Advice and Consent of the Senate," appoints officers of the United States to positions that are "established by Law." U.S. Const. art. II. § 2, cl. 2. Here, the President appointed Julie Su (after obtaining the advice and consent of the Senate) to a position—Deputy Secretary—with statutorily-defined duties that include acting as the Secretary of Labor ("Secretary") in the event the Secretary resigns. *See* A-1039 (acknowledging Ms. Su's appointment as Deputy Secretary); (PN 122) Nomination of Julie A. Su for Department of Labor, 117th Cong. (2021-

---

[21] Of course, courts routinely hear and decide cases brought or continued by Acting Secretaries of Labor. *See, e.g. Pizzella v. Diner,* 2022 WL 3452670 (E.D. Pa 2022); *Su v. Comprehensive Healthcare Management Services, LLC.,* 2023 WL 6518955 (W.D. Pa 2023); *Stewart v. Picante Grille LLC,* 2021 WL 5920812 (W.D. Pa. 2021); *Acosta v. Bristol Excavating, Inc.,* 297 F.Supp.3d 523 (M.D. Pa 2017), *aff'd in part*, *rev'd in part,* 935 F.3d 122 (3d. Cir 2019).

2022), https://www.congress.gov/nomination/117th-congress/122. Specifically,

Congress "established in the Department of Labor the office of the Deputy

Secretary of Labor, which shall be filled by appointment by the President, by and

with the advice and consent of the Senate." 29 U.S.C. § 552. Congress further

directed that "[t]he Deputy Secretary shall … in case of the death, resignation, or

removal from office of the Secretary, perform the duties of the Secretary until a

successor is appointed." *Id.* Consistent with this authority, after Secretary Martin

J. Walsh, who initiated this matter, resigned in March 2023, Ms. Su began lawfully

performing the duties of the Secretary, as two other federal courts and the

congressional Government Accountability Office have confirmed. *Su v. Starbucks*,

2023 WL 6461146, *5 (W.D. Wash. Oct. 4, 2023) (order enforcing subpoena and

finding 29 U.S.C. § 552 authorized Acting Secretary Su to perform an investigative

duty assigned to the Secretary of Labor); *Su v. Coway USA, Inc.*, No. 2:24-cv-

08156-JLS-AJR, 2024 WL 5275528, at *3-5 (C.D. Cal. Dec. 4, 2024) (finding 29

U.S.C. § 552 authorized Acting Secretary Su to bring enforcement action under the

FLSA); Legality of Service of Acting Secretary of Labor, B-335451 (Gov't

Accountability Office Sept. 21, 2023); *cf. Colt & Joe Trucking, LLC v. U.S. Dep't

of Labor*, No. 24-cv-00391-KWR-GBW, 2025 WL 56658, at *15 (D. N.M. Jan. 9,

2025) (Acting Secretary Su authorized to promulgate challenged regulation).

A key assumption underlying WiCare's argument is that the Constitution permits only a duly appointed Secretary—and not a duly appointed Deputy Secretary—to take or authorize certain actions. But there is no such restriction in the Constitution. The Appointments Clause indisputably affords Congress wide latitude to "establish[]" offices "by Law" and determine the "duties, salary, and means of appointment" for each office. *Freytag v. C.I.R.*, 501 U.S. 868, 881 (1991); *see also Weiss v. United States*, 510 U.S. 163, 172-73 (1994) (rejecting Appointments Clause challenge to statute that allowed Senate-confirmed commissioned officers of the Armed Forces to be detailed or assigned to serve as military judges without an additional appointment to that office); *Shoemaker v. United States*, 147 U.S. 282, 301 (1893) (rejecting Appointments Clause challenge and holding that Congress may add germane duties to an existing office without requiring the incumbent officers to be re-appointed and re-confirmed). Here, Congress established two offices, that of the Secretary and Deputy Secretary of Labor—and specified that, in the event the Secretary resigns, then the Deputy Secretary shall perform the Secretary's duties until a successor is appointed. 29 U.S.C. §§ 551, 552.

2. That the Acting Secretary is also the nominee for the vacant Secretary position does not change this analysis. Section 552 does not limit the Deputy Secretary's authority to serve as Acting Secretary if she is also the nominee for the

vacant position. And even if Ms. Su's nomination were subject to limitations of the Federal Vacancies Reform Act ("FVRA")—which it is not—her acting service would still fall well within the FVRA's limits.[22] Ms. Su, as Deputy Secretary, is the presidentially appointed, Senate-confirmed "first assistant" to the Secretary of Labor, and her service as Acting Secretary during the pendency of her second nomination would be consistent with the FVRA, including its timing provisions. *See* 5 U.S.C. § 3345(a)(1); *id.* at (b)(1) and (b)(2) (providing that the prohibition on a nominee's acting in the position for which she is nominated does not apply to a first assistant whose appointment as first assistant was made by the President, by and with the advice and consent of the Senate); *id.* at § 3346(b)(2) (authorizing acting service while a second nomination is pending in the Senate).

WiCare also seeks to engraft onto section 552 an atextual time limit of indeterminate length. *See, e.g.*, WiCare's Br. at 34-36. While WiCare asserts such a time limit is constitutionally compelled, nothing in the Constitution limits the length of time that a Senate-confirmed official like Ms. Su can perform one of the duties of the office to which she was confirmed. WiCare goes even more awry to the extent that it argues that any acting service under section 552 or the FVRA

---

[22] 5 U.S.C. § 3347(a) (providing that the FVRA procedures "are the exclusive means for temporarily authorizing an acting official … unless [ ] a statutory provision expressly" provides alternative procedures). Section 552 is precisely the type of express statutory alternative that the FVRA preserves.

would be constitutionally impermissible, WiCare's Br. at 36. Indeed, 200 years of precedent makes clear that even someone who (unlike Ms. Su) was never confirmed by the Senate to any office may temporarily exercise the duties of a vacant office. *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 294 (2017) ("Since President Washinton's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant [office requiring Presidential appointment and Senate confirmation] without first obtaining Senate approval."); *United States v. Eaton*, 169 U.S. 331 (1898) (holding even an official who, unlike Ms. Su, was not Senate confirmed could exercise the duties of a vacant office without violating the Constitution); *United States v. Castillo*, 772 F. App'x 11, 13 & n.5 (3d Cir. 2019) (collecting cases holding that an official who did not occupy an office requiring Senate confirmation properly served as Acting Attorney General).

3. Perhaps recognizing the futility of its constitutional arguments, WiCare further alleges that section 552 no longer authorizes Ms. Su to serve as Acting Secretary because the President has already "appointed" a "successor," allegedly Ms. Su, WiCare's Br. at 34. But that is incontrovertibly false. WiCare erroneously conflates Ms. Su's *nomination* for Secretary with the President's final *appointment* of a Secretary after Senate confirmation. WiCare's position cannot be reconciled with the process set forth in the Appointments Clause, which makes clear that,

absent circumstances not relevant here, appointments of principal officers are made only after obtaining the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2 (providing that the President "shall *nominate*, and by and with the Advice and Consent of the Senate, shall *appoint*" certain Officers of the United States) (emphasis added); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 155 (1803) (describing the Constitutional process as involving three distinct steps— nomination, appointment, and commission—and explaining that appointment is "the act of the President … though it can only be performed by and with the advice and consent of the [S]enate."); *see also* Appointment of a Senate-Confimed Nominee, 23 Op. O.L.C. 232 (1999) (explaining that, in the case of a Senate-confirmed official, an appointment is made after obtaining the advice and consent of the Senate and is customarily evidenced by the President's signing of a commission). Because Ms. Su is validly exercising the powers of her office, the district court properly concluded that Acting Secretary Su has authority to maintain this enforcement action against Petitioners. A-36.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's grant of summary judgment to the Department in its entirety and its denial of summary judgment to WiCare in its entirety.

Dated: January 15, 2025

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

MELISSA ANN MURPHY
Senior Attorney

JENNIFER S. BRAND
Associate Solicitor

AMELIA B. BRYSON
Senior Attorney
U.S. Department of Labor

SARAH KAY MARCUS
Deputy Associate Solicitor

200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210

RACHEL GOLDBERG
Counsel for Appellate Litigation

(202) 693-5336
bryson.amelia.b@dol.gov

## CERTIFICATE OF BAR MEMBERSHIP STATUS

Pursuant to Local Appellate Rule 28.3(d), the undersigned counsel hereby certifies that as a federal government attorney, I am exempt from the requirement to be a member of the bar of the United States Court of Appeals for the Third Circuit.

/s/Amelia B. Bryson
AMELIA B. BRYSON

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(g), the undersigned certifies that this brief complies with the applicable type-volume limitation, typeface requirements, and type-style requirements.

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 11,246 words, excluding exempt portions.

2. The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font in text and footnotes.

3. The text of the hard copy and electronic copy of this brief are identical.

4. The electronic copy of this brief has been virus scanned using Microsoft Defender Antivirus (last updated January 15, 2025) and no virus was detected.

Dated: January 15, 2025

/s/ Amelia B. Bryson
AMELIA B. BRYSON

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2025, a true and correct copy of the foregoing brief was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: January 15, 2025

/s/ Amelia B. Bryson
AMELIA B. BRYSON