# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

MARTIN J. WALSH, Secretary of Labor,
United States Department of Labor,

*Plaintiff-Appellee*

v.

WICARE HOME CARE AGENCY, LLC;
LUIS D. HERNANDEZ

*Defendants-Appellants*

On Appeal from the U.S. District Court for the
Middle District of Pennsylvania (No. 1:22-cv-00224)
District Judge: Honorable Yvette Kane

## PETITION FOR PANEL REHEARING OR
## REHEARING EN BANC

John M. Nolan III
Margolis Edelstein
The Curtis Center
170 South Independence Mall West
Suite 400E
Philadelphia, Pennsylvania 19106
(215) 922-1100
Attorney for Appellants

Dated: January 20, 2026

# FED. R. APP. P. 40(B)(1) & (2) STATEMENT

The panel decision in this case conflicts with a decision of the United States Supreme Court, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Fifth Circuit, *Mayfield v. United States Department of Labor*, 117 F.4th 611 (5th Cir. 2024), and two decisions of the Sixth Circuit, *In re MCP No. 185*, 124 F.4th 993 (6th Cir. 2025); *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025). It also arrives at the wrong answer on a question of exceptional importance—whether the Department of Labor, or DOL, exceeded its authority by promulgating a regulation, 29 C.F.R. § 552.109(a), that makes the Fair Labor Standards Act's "companionship-services exemption," 29 U.S.C. § 213(a)(15), unavailable to third-party employers—more than 27,000 businesses, *Application of the Fair Labor Standards Act to Domestic Service*, 90 Fed. Reg. 28,976, 28,983 (July 2, 2025).

First, the panel decision conflicts with *Loper Bright*, *Mayfield*, *In re MCP No. 185*, and *Pickens* because it upholds an agency's exercise of delegated discretionary authority without analyzing it under the framework that *Loper Bright* requires and that *Mayfield*, *In re MCP No. 185*, and *Pickens* faithfully apply. Under *Loper Bright*, when a statute expressly delegates "discretionary authority to an agency," a court must do two things to assess whether an agency action exceeds the authority delegated; first, a court must "fix the boundaries of the delegated authority," *In re MCP No. 185*, 124 F.4th at 1012 (quoting *Loper Bright*, 603 U.S. at 395); and

second, it must "ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries," *Loper Bright*, 603 U.S. at 395 (cleaned up); *accord Pickens*, 133 F.4th at 588 (explaining that, when "a statute delegates authority to an agency to define general terms in the statute … we 'respect the delegation' by 'fixing the boundaries of the delegated authority' based on our independent view of the statute and 'ensuring that the agency acts within' those boundaries") (quoting *Loper Bright*, 603 U.S. at 395); *Mayfield*, 117 F.4th at 617 ("Here, because there is an uncontroverted, explicit delegation of authority, the question is whether the Rule is within the outer boundaries of that delegation."). As explained below, the panel decision here involved an express delegation of authority to an agency, but the panel failed to independently "fix the boundaries" of that authority. In fact, the panel gave no indication whatsoever of where those boundaries might lie. The panel's failure to follow *Loper Bright* is alone sufficient reason to grant rehearing.

But it is not the only reason. This case also addresses the exceptionally important question of whether DOL exceeded its authority by promulgating a regulation that denies the statutory "companionship-services exemption" to third-party employers. And the panel got this question wrong, holding that DOL's delegated authority to "define[]" and "delimit[]" "terms" in the exemption allows DOL, without purporting to interpret any of the exemption's "terms," to deny the companionship-services exemption to disfavored employers. Panel Op., Ex. A at 4

(quoting 29 U.S.C. § 213(a)(15)). As a result, DOL's unlawful regulation will inflict bankrupting liability on Appellants here and career DOL enforcement attorneys continue to threaten other small businesses in the Third Circuit with the same, *see, e.g.*, *Chavez-Deremer v. Intra-National Home Care, LLC*, No. 2:21-cv-01391 (W.D. Pa.) (pending DOL enforcement action under same regulation); *Su v. Agewell Home Helpers, Inc.*, No. 2:21-cv-00108 (W.D. Pa.) (same), even though DOL has proposed to rescind the regulation as being inconsistent with the FLSA's text, *Application of the Fair Labor Standards Act to Domestic Service*, 90 Fed. Reg. at 28,980, 28,984–85 (regulatory text).

# TABLE OF CONTENTS

FED. R. APP. P. 40(B)(1) & (2) STATEMENT ........................................................ i

TABLE OF AUTHORITIES ..................................................................................v

ISSUES PRESENTED .........................................................................................1

STATEMENT OF THE CASE ...............................................................................1

    I.   Legal Background .........................................................................................1

      A.  The Companionship-Services Exemption ..................................................1

      B.  The 1975 Rule .........................................................................................2

      C.  *Long Island Care v. Coke* ......................................................................3

      D.  The 2013 Pen-and-Phone Rule .................................................................4

      E.  The Proposed Rule ...................................................................................5

    II.  Factual and Procedural Background ...............................................................6

REASONS FOR GRANTING THE PETITION ......................................................7

    I.   The Panel Decision Conflicts with Decisions of the Supreme Court and Fifth and Sixth Circuits. ..............................................................................................7

    II.  The Panel Incorrectly Answered the Exceptionally Important Question of Whether the FLSA Makes Its Companionship-Services Exemption Available to Third-Party Employers. ......................................................................................12

CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Def. Project v. FERC,*
  964 F.3d 1 (D.C. Cir. 2020) ................................................................ 11

*E.M.D. Sales, Inc. v. Carrera,*
  604 U.S. 45 (2025) ....................................................................... 1, 2

*Home Care Ass'n of Am. v. Weil,*
  76 F. Supp. 3d 138 (D.D.C. 2014) ................................................. 5, 10

*Home Care Ass'n of Am. v. Weil,*
  799 F.3d 1084 (D.C. Cir. 2015) .......................................................... 5

*Long Island Care at Home v. Coke,*
  551 U.S. 158 (2007) .......................................................................... 3

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) .............................................. ii, ii, 1, 5, 7, 8, 10

*Mayfield v. DOL,*
  117 F.4th 611 (5th Cir. 2024) .................................................. ii, ii, 1, 7

*In re MCP No. 185,*
  124 F.4th 993 (6th Cir. 2025) ..................................................... ii, 1, 7

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
  133 F.4th 575 (6th Cir. 2025) ............................................ ii, ii, 1, 7, 9

*Rest. L. Ctr. v. DOL,*
  120 F.4th 163 (5th Cir. 2024) ...................................................... 10, 11

*United States v. Scott,*
  14 F.4th 190 (3d Cir. 2021) .............................................................. 9

*West Virginia v. EPA,*
  597 U.S. 697 (2022) .......................................................................... 4

**Statutes**

29 U.S.C. § 206(a) ..................................................................................1

29 U.S.C. § 206(f)...................................................................................9

29 U.S.C. § 207(a)(1)..............................................................................2

29 U.S.C. § 207(*l*) ...............................................................................2, 9

29 U.S.C. § 213(a)(15)................................................................ ii, 2, 8, 10

**Regulations**

29 C.F.R. § 552.3 ...................................................................................9

29 C.F.R. § 552.101(a)............................................................................9

29 C.F.R. § 552.109 ............................................................................6, 9

29 C.F.R. § 552.109(a).............................................................. ii, 4, 11

40 Fed. Reg. 7,404 (Feb. 20, 1975) ....................................................2, 9

78 Fed. Reg. 60,454 (Oct. 1, 2023)........................................................4

90 Fed. Reg. 28,976 (July 2, 2025)........................................ ii, iii, 5, 13

**Other Authorities**

The White House, Press Release, *We Can't Wait: President Obama
 Will Announce Administrative Action to Provide Minimum Wage
 and Overtime Protections for Nearly 2 Million In-Home Care
 Workers* (Dec. 15, 2011), https://perma.cc/H8EM-H3QS ..................4

The Obama White House, *President Obama on Ensuring Fair Pay for
 In-Home Care Workers* (YouTube, Dec. 15, 2011),
 https://www.youtube.com/watch?v=96mmOuNeWj4 ........................4

U.S. Gov't Accountability Off., GAO-21-72, *Observations on the
 Effects of the Home Care Rule* (Oct. 19, 2020),
 https://www.gao.gov/products/gao-21-72 ..................................12, 13

Wage and Hour Advisory Mem. No. 2005-1 (Dec. 1, 2005) ...................3

**ISSUES PRESENTED**

1.      Whether the panel decision violated *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) and conflicts with *Mayfield v. United States Department of Labor*, 117 F.4th 611 (5th Cir. 2024), *In re MCP No. 185*, 124 F.4th 993 (6th Cir. 2025), and *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025) by upholding an agency's purported exercise of delegated discretionary authority without ever "fixing the boundaries of the delegated authority," *Loper Bright*, 603 U.S. at 395 (cleaned up).

2.      Whether the Department of Labor's regulation excluding third-party employers from the Fair Labor Standards Act's "companionship-services exemption" from overtime and minimum wage requirements exceeds the Department's delegated authority under the Fair Labor Standards Act.

**STATEMENT OF THE CASE**

**I.      Legal Background**

**A.      The Companionship-Services Exemption**

"In 1938, Congress passed and President Franklin Roosevelt signed the Fair Labor Standards Act," or FLSA. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025). Among other things, the Act requires employers to pay covered employees a minimum wage, 29 U.S.C. § 206(a), and "not less than one and one-half times the

regular rate" for any hours worked in excess of forty hours per week, 29 U.S.C. § 207(a)(1), (*l*).

In 1974, Congress expanded the FLSA's coverage to employees in "domestic service." *Id.* But "Congress recognized that a minimum wage and overtime pay would be impractical or inappropriate for some" workers. *E.M.D. Sales, Inc.*, 604 U.S. at 48. Among other things, Congress exempted all employees providing "companionship services" to the elderly or infirm. The FLSA "shall not apply" to

> any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)[.]

29 U.S.C. § 213(a)(15). This is the FLSA's companionship-services exemption.

## B. The 1975 Rule

In 1975, the Department of Labor, or DOL, promulgated a rule interpreting the exemption for companionship services. 40 Fed. Reg. 7,404 (Feb. 20, 1975). DOL addressed whether the exemption should apply to employees who "are employed by an employer or agency other than the family or household using their services." *Id.* at 7,405. After "consideration," DOL "concluded that the[] exemption[] can be available to such third party employers since they apply to 'any employee' engaged 'in' the enumerated services. This interpretation is more consistent with the statutory language and prior practices concerning other similarly worded exemptions." *Id.*

For nearly four decades, DOL adhered to this reading. *See, e.g.*, Wage and Hour Advisory Mem. No. 2005-1 (Dec. 1, 2005) ("The text of the FLSA makes the applicability of the companionship exemption dependent upon the nature of an employee's activities and the place of their performance, without regard to the identity of the employer.").

### C.    *Long Island Care v. Coke*

Some thirty years after the 1975 rule, in *Long Island Care at Home, Ltd. v. Coke*, the Supreme Court entertained a challenge to the 1975 Rule in a private dispute concerning the meaning of the companionship-services exemption. 551 U.S. 158 (2007). The United States defended DOL's 1975 reading, arguing that the 1975 rule was "most consistent with the statutory text and Congress's intent," and that "there is no legal or policy justification for treating employees providing companionship services differently under the FLSA based on the identity of the employer." U.S. *Amicus* Br. 18, 23, No. 06-593, https://perma.cc/5MTQ-P355.

On the other side, Evelyn Coke, the employee seeking backpay, argued that the 1975 Rule was unlawful. *See Coke*, 551 U.S. at 166. The Supreme Court "d[id] not find [Coke's] arguments convincing," *id.* at 167, and it upheld the 1975 Rule, *id.* at 168.

### D. The 2013 Pen-and-Phone Rule

In 2011, after failing to obtain legislation extending overtime pay to home-care providers, President Obama concluded that "we can't wait for Congress to act." The White House, Press Release, *We Can't Wait: President Obama Will Announce Administrative Action to Provide Minimum Wage and Overtime Protections for Nearly 2 Million In-Home Care Workers* (Dec. 15, 2011), https://perma.cc/H8EM-H3QS. During a "We Can't Wait" event, the president noted: "I'm sure many of you won't be surprised to know that Congress hasn't acted on this issue so far. Today, I will." The Obama White House, *President Obama on Ensuring Fair Pay for In-Home Care Workers*, at 4:40, 6:08 (YouTube, Dec. 15, 2011), https://www.youtube.com/watch?v=96mmOuNeWj4.

Following this directive, DOL promulgated a "pen-and-phone" rule used as a "substitute[] for laws passed by the people's representatives." *West Virginia v. EPA*, 597 U.S. 697, 753 (2022) (Gorsuch, J., concurring). This 2013 Rule abandoned the longstanding 1975 Rule and replaced it with the opposite rule—a third-party exclusion. Third parties such as home-care agencies "may not avail themselves" of the exemption, unless they are members of the same "family or household" as the individual receiving the services. 78 Fed. Reg. 60,454, 60,557 (Oct. 1, 2023) (codified at 29 C.F.R. § 552.109(a)). According to DOL, the 2013 Rule subjected 90% of home-care providers—currently more than 27,000 businesses—to the FLSA.

*Application of the Fair Labor Standards Act to Domestic Service*, 90 Fed. Reg. 28,976, 28,983 (July 2, 2025).

A trade association of home-care agencies challenged the 2013 Rule, and the district court held that DOL had acted "in defiance of the plain language of Section 213." *See Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 147–48 (D.D.C. 2014), *rev'd*, 799 F.3d 1084 (D.C. Cir. 2015). But the D.C. Circuit reversed, reviewing the rule "pursuant to the two-step *Chevron* framework." *Home Care*, 799 F.3d at 1090. The Court rejected the "challenge to the regulations at *Chevron* step one," and held that the regulation "passes muster at *Chevron* step two." *Id.* at 1093–94; *but see Loper Bright*, 603 U.S. at 412 ("*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

## E. The Proposed Rule

Following the Supreme Court's decision under *Loper Bright*, DOL has now proposed to restore the 1975 Rule. *See Application of the Fair Labor Standards Act to Domestic Service*, 90 Fed. Reg. at 28,980 ("Specifically, the Department proposes to restore the ability of third-party employers (including home care staffing agencies) to claim the FLSA's section 13(a)(15) companionship services exemption"); *see also id.* at 28,984–85 (regulatory text). DOL explains that, "[u]nder this proposal, some or all of the 3.7 million home care workers employed by third-party agencies could

become newly exempt under the FLSA as a consequence of the proposed changes [to the] third party employment [provisions] in section 552.109." *Id.* at 29,981. However, career enforcement lawyers in the DOL Solicitor's Office continue to prosecute enforcement actions under the 2013 Rule within the Third Circuit. *Chavez-Deremer v. Intra-National Home Care, LLC*, No. 2:21-cv-01391 (W.D. Pa.); *Su v. Agewell Home Helpers, Inc.*, No. 2:21-cv-00108 (W.D. Pa.); *see also Intra-National Home Care v. DOL*, No. 20-cv-01545, Dkt. 111 (W.D. Pa., Dec. 31, 2025).

## II.   Factual and Procedural Background

Appellant WiCare is a small Pennsylvania home care agency employing in-home caregivers who provide companionship services to elderly and infirm individuals. In 2022, the Secretary of the Department of Labor sued WiCare under the 2013 Rule, alleging FLSA violations for failing to pay overtime and minimum wages from 2019 to 2021. The District Court granted summary judgment, awarding $1,059,540.18 in back wages and liquidated damages. On appeal, WiCare argued primarily that the 2013 Rule's denial of the companionship-services exemption to third-party employers (the third-party exclusion) conflicts with the best reading of the FLSA.

The panel disagreed and affirmed summary judgment against WiCare, holding that "the Secretary's decision to" invent the third-party exclusion "was a lawful

exercise of its [sic] expressly delegated authority under the FLSA." Panel Op., Ex. A at 4.

**REASONS FOR GRANTING THE PETITION**

**I.    The Panel Decision Conflicts with Decisions of the Supreme Court and Fifth and Sixth Circuits.**

The panel departed from Supreme Court precedent and two courts of appeals by failing to analyze the case under the framework set forth in *Loper Bright Enterprises. v. Raimondo*, 603 U.S. 369 (2024). Under that framework, courts interpreting a statute that expressly "delegates discretionary authority to an agency" must do two things to determine whether an agency action comports with the statute; a court must first "fix the boundaries of the delegated authority," *In re MCP No. 185*, 124 F.4th at 1012 (quoting *Loper Bright*, 603 U.S. at 395); and second, "ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries," *Loper Bright*, 603 U.S. at 395 (cleaned up); *accord Pickens*, 133 F.4th at 588 (explaining that, when "a statute delegates authority to an agency to define general terms in the statute … we 'respect the delegation' by 'fixing the boundaries of the delegated authority' based on our independent view of the statute and 'ensuring that the agency acts within' those boundaries") (quoting *Loper Bright*, 603 U.S. at 395); *Mayfield*, 117 F.4th at 617 ("Here, because there is an uncontroverted, explicit delegation of authority, the question is whether the Rule is within the outer boundaries of that delegation.").

7

The panel skipped the first step. It recognized that the FLSA's companionship-services exemption expressly delegates to DOL limited interpretative authority because it "allows that its 'terms' may be 'defined and delimited by regulations of the Secretary.'" Panel Op., Ex. A at 4 (quoting *Loper Bright*, 603 U.S. at 395 n.5 and 29 U.S.C. § 213(a)(15)). But rather than first "fixing the boundaries of the delegated authority" before determining whether "the agency" acted "within those boundaries," as *Loper Bright* required, 603 U.S. at 395 (cleaned up), the panel jumped to the *non sequitur* conclusion that, because the FLSA delegated DOL some interpretive authority, DOL acted within that authority when it promulgated the third-party exclusion. Panel Op., Ex. A at 4. In the panel's words, "the Secretary chose to 'delimit[]' the scope of the companionship services exemption by excluding third-party employers." *Id.* But, as the first step of the *Loper Bright* framework would have revealed had the panel performed it, the boundaries of DOL's delegated authority do not extend to delimiting the exemption's scope in the abstract; the text only gives DOL discretion to "delimit[]" the exemption's "terms." U.S.C. § 213(a)(15). And DOL made no attempt, in the third-party exclusion or elsewhere, to delimit (or define) any term that appears in the companionship-services exemption.

The power to delimit is the inverse of the power to define: it is the power to say what a term does not mean or include, so as "to fix or mark boundaries or limits"

on a particular term. *Pickens*, 133 F.4th at 588. For example, in the 1975 Rule, DOL marked the boundaries of the term "companionship services" by excluding employees who spend more than 20% of their time on household work typically performed by maids such as cooking and cleaning, rather than caring for the elderly or infirm. 40 Fed. Reg. at 7,405. That rule thus set forward a "workable method" of identifying who does not work in "domestic service employment," and therefore delimited the exemption. *Pickens*, 133 F.4th at 588–89. The rule at issue here, 29 C.F.R. § 552.109, doesn't do anything like that.

Indeed, DOL's interpretation of the statutory term "domestic service employment" says nothing about third parties, noting that the term covers all "home health aides" so long as the employee performs services "in or about a private home," as the companionship-services employees here do. 29 C.F.R. § 552.3; *see also id.* § 552.101(a) (similar). That is unsurprising because the opposite approach of excluding employees of third parties from the term "domestic service employment" would, ironically, mean that the FLSA's minimum wage and overtime coverage provisions would not apply to Appellants' workers in the first place. To explain: the FLSA's coverage provisions also contain the term "domestic service," 29 U.S.C. §§ 206(f), 207(*l*), and, if that term had been delimited to exclude employees of third parties from the companionship-services exemption, then it would also exclude them from the minimum wage and overtime pay provisions. *See United States v. Scott*, 14

F.4th 190, 197 (3d Cir. 2021) (explaining that "we read identical words used in different parts of the same act to have the same meaning") (cleaned up). DOL rejects this interpretation in its complaint against Appellants by asserting that WiCare is a third-party employer that "employ[s] persons in domestic service" and that these workers fall under the FLSA's minimum wage and overtime provisions. *Walsh v. WiCare Home Care Agency, LLC*, No. No. 1:22-cv-00224 (M.D. Pa.), ECF No. 1, ¶¶2, 6, 8, 10. In short, once DOL defined and delimited "domestic service employment" broadly to include employees of third parties doing work in a private home, "the statutory loop was closed." *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 145 (D.D.C. 2014).

Moreover, the third-party exclusion is also beyond the "boundaries" of DOL's delegated authority at the second step of the *Loper Bright* framework because it rests upon an unreasonable reading of the companionship-services exemption. *See* 603 U.S. at 395. The exemption applies to the "employee," not to the employer. 29 U.S.C. § 213(a)(15). Under DOL's third-party exclusion, however, an employee is exempt and not exempt at the same time. This "creates a paradox that is not obviously capable of resolution." *Rest. L. Ctr. v. DOL*, 120 F.4th 163, 173 (5th Cir. 2024).

To explain: under DOL's third-party exclusion, third parties that are joint employers "may not avail themselves" of the companionship-services exemption.

29 C.F.R. § 552.109(a). But "the individual or member of the family or household, even if considered a joint employer, is still entitled to assert" it. *Id.* That means that under DOL's third-party exclusion, the same employee can be exempt, and not exempt, at the same time, for some employers and not others. Nothing in the exemption, however, allows DOL to treat employees as "akin to Schrödinger's cat: both [exempt] and [not exempt] at the same time," for some employers but not others. *Allegheny Def. Project v. FERC*, 964 F.3d 1, 10 (D.C. Cir. 2020) (en banc).

Of course, DOL atextually gerrymandered the exemption to avoid an unpopular consequence: subjecting relatives who are joint employers to liability and criminal sanctions. That is understandable and would be a fine choice for Congress to make. But DOL cannot create favored and disfavored employers by fiat. The agency can only avoid that result by reading the law reasonably. And a rule that creates an interpretative paradox and rests upon fiat divorced from text is, by definition, not a reasonable interpretation. *Rest. L. Ctr.*, 120 F.4th at 173.

So, *Loper Bright*'s framework reveals that DOL's third-party exclusion is simply a ukase canceling a legislative exemption for a group of disfavored employers, not an exercise of the definitional authority Congress expressly delegated. But the panel missed all of this and upheld an unlawful regulation because it did not follow the framework that *Loper Bright* mandates and that the Fifth and Sixth Circuits followed in *Mayfield*, *In re MCP No. 185*, and *Pickens*.

**II.    The Panel Incorrectly Answered the Exceptionally Important Question of Whether the FLSA Makes Its Companionship-Services Exemption Available to Third-Party Employers.**

Not only is the panel wrong that the FLSA's companionship-services exemption authorizes DOL to deny it to third-party employers, but getting that question right is exceptionally important because DOL's third-party exclusion harms everyone. The effect of the third-party exclusion, compounded by other aspects of the 2013 Rule, has been to reduce the supply and quality of care, while doing nothing to help home-care workers. Home-care agencies cannot pay for overtime without going insolvent because the Medicaid waiver programs they rely on to reimburse care are based upon fixed hourly rates. The result has been shortages and cuts in hours of continuous home care.

The Government Accountability Office found that following the 2013 Rule, states "restricted home care workers' hours to limit overtime costs in their Medicaid programs in response to the" [2013] Rule." *See* U.S. Gov't Accountability Off., GAO-21-72, *Observations on the Effects of the Home Care Rule* 13 (Oct. 19, 2020), https://www.gao.gov/products/gao-21-72. Some states cut entire home care programs, such as programs "for 24/7 live-in care," recognizing that "workers would have exceeded 40 hours by the second day of the week." *Id.* at 15. Agencies "capped their workers' weekly hours to limit overtime … because they have limited funding and consumers cannot afford price increases to cover those costs." *Id.* at 16. Private

agencies cut "services." *Id.* And "Medicaid reimbursement rates" limited continuity of care for the elderly and infirm. *Id.* at 21.

This has done nothing to increase the wages of home-care workers. "[H]ome care workers were less likely to work overtime following implementation" of the 2013 Rule "when compared to occupations with similar entry requirements." *Id.* at 18. But despite cuts in hours, wages "did not significantly increase," *id.*, and "weekly earnings did not change significantly" compared to similar jobs, *id.* at 20 & fig. 3. The panel's erroneous decision will exacerbate this dismal situation and, unless the full Court corrects the panel decision, career enforcement attorneys in the DOL Solicitor's Office will continue trying to use the unlawful rule to shutter small third-party home-care businesses in the Third Circuit. *See Chavez-Deremer v. Intra-National Home Care, LLC*, No. 2:21-cv-01391 (W.D. Pa.); *Su v. Agewell Home Helpers, Inc.*, No. 2:21-cv-00108 (W.D. Pa.). These enforcement actions show that DOL is taking inconsistent positions, enforcing the rule while at the same time proposing to repeal it as unlawful. *Application of the Fair Labor Standards Act to Domestic Service*, 90 Fed. Reg. at 28,978, 28,984–85 (regulatory text). The Court should not allow DOL to continue subjecting third-party home-care businesses to liability under a rule that DOL itself is in the process of repudiating.

## CONCLUSION

For these reasons, the Court should grant panel rehearing or rehearing en banc, vacate the panel opinion, and reverse the District Court's judgment.

Dated: January 20, 2026           Respectfully submitted,

*/s/ John M. Nolan III*
John M. Nolan III, Esquire
MARGOLIS EDELSTEIN
170 S Independence Mall W
Suite 400E
Philadelphia, PA 19106
Phone: (215) 931-5848
Fax: (215) 931-5848
jnolan@margolisedelstein.com
*Counsel for Appellants,*
*WiCare Home Care Agency, LLC*
*and Luis D. Hernandez*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,704 words, excluding exempted parts. It complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ John M. Nolan III
John M. Nolan III.

Dated: January 20, 2026

# LOCAL RULE 35.1 STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to a decision of the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, i.e., the panel's decision is contrary to the decision of the Supreme Court in:

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)

AND, that this appeal involves a question of exceptional importance, i.e., whether the Department of Labor's regulation excluding third-party employers from the Fair Labor Standards Act's "companionship-services exemption" from overtime and minimum wage requirements exceeds the Department's delegated authority under the Fair Labor Standards Act.

/s/ John M. Nolan III
John M. Nolan III.

Dated: January 20, 2026

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, I filed the foregoing petition via the Court's

CM/ECF system, which will serve all counsel of record.


<u>/s/ John M. Nolan III</u>
John N. Nolan III